## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                   )

**CAROLINE HERRON**          )
                                   )

    **Plaintiff,**            )
                                   )

    **v.**                     )     **Civil Action No. 1:10-CV-00943-RMC**
                                   )

**FANNIE MAE,** *et al.,*      )
                                   )

    **Defendants.**          )
_____)

### Plaintiff's Initial Disclosures

Plaintiff Caroline Herron, through undersigned counsel and pursuant to Rule 26(a)(1), Fed. R. Civ. P., and Local Civil Rule 26.2, hereby submits her Initial Disclosures.  Plaintiff reserves the right to supplement her Initial Disclosures, up to and through trial.

    **I.**    **Individuals with discoverable information.**[1]

    1.    Herb Allison, Assistant Secretary for Financial Stability, Department of the Treasury.  Mr. Allison has knowledge of Treasury's control of Fannie Mae, including directives made from Treasury to Fannie Mae, and Treasury's reviews and approvals of Fannie Mae policies.

    2.    Sarah Apsel, Policy Advisor, Domestic Finance, Department of the Treasury.  Ms. Apsel has knowledge that Ms. Herron's projects at Fannie Mae had not ended as of the date of her termination, and that Ms. Herron was still working with Treasury on 2MP, FHA-HAMP and Borrower Portal policy and implementation.  Ms. Apsel also has knowledge of Ms. Herron's attempts to obtain employment at Treasury.

---

[1] The order of witness is alphabetical.  Many of the witnesses are current or former employees of Fannie Mae, the U.S. Department of the Treasury, or other government agencies, and Plaintiff does not have their home addresses.

3.      Leslie Arrington, Office of Investigations, Fannie Mae.  Ms. Arrington has knowledge of the investigation that Michael Bromwich and his colleagues conducted into Ms. Herron's allegations, the report that Mr. Bromwich issued on June 17, 2010 to Fannie Mae setting forth the results of the investigation, and the actions taken by Fannie Mae in response to Mr. Bromwich's investigation and report.

4.      Neil Barofsky, Special Inspector General for the Troubled Asset Relief Program (SIGTARP).  Mr. Barofsky, and his colleagues at SIGTARP, have knowledge of SIGTARP's investigations and oversight of Fannie Mae, and of Ms. Herron's reports to SIGTARP about waste and misconduct at Fannie Mae.  Mr. Barofsky and his colleagues also have knowledge of Treasury's and FHFA's control of Fannie Mae, including directives made from Treasury or FHFA to Fannie Mae, and Treasury's and FHFA's reviews and approvals of Fannie Mae policies.

5.      Michael Barr, formerly Assistant Secretary of Financial Institutions, Department of Treasury.  Mr. Barr has knowledge of Ms. Herron's reports to him and other senior managers at Treasury, including her objection to changing the borrower incentive structure under the Second Lien Modification Program, Mr. Guttentag's criticism of Fannie Mae's work on the Borrower Portal, and directives made from Treasury to Fannie Mae or policy reviews/approvals demonstrating the government's control of Fannie Mae.

6.      John Bauer, Director of Making Home Affordable Project Management Office, Fannie Mae.  Mr. Bauer has knowledge of Ms. Herron's expertise and her employment at Fannie Mae, of Mr. Schuppenhauer's recruitment of Ms. Herron, of Ms. Herron's work on the Making Home Affordable Program, and of Ms. Herron's reports about waste and misconduct in Fannie Mae's projects, including her reports during the 8:30 a.m. management meetings, and of the fact

that Ms. Herron's projects had not ended as of the date of her termination, and Mr. Bauer and his

team were expecting deliverables, meetings, and feedback from Ms. Herron on projects at the

time Ms. Herron was terminated.

7.      Tommy P. Beaudreau, Esquire, formerly employed at Fried Frank LLP,

Washington, D.C.  Mr. Beaudreau has knowledge of the investigation that he, Mr. Bromwich,

and their colleagues conducted into Ms. Herron's allegations, and the report issued on June 17,

2010 to Fannie Mae setting forth the results of the investigation.

8.      Michael R. Bromwich, Esquire, formerly employed at Fried Frank LLP,

Washington, D.C.  Mr. Bromwich has knowledge of the investigation that he and his colleagues

conducted into Ms. Herron's allegations, and the report that he issued on June 17, 2010 to Fannie

Mae setting forth the results of the investigation.

9.      Alanna Scott Brown.  Defendant Brown, Director of Government Programs and

New Initiatives at Fannie Mae, has knowledge of Ms. Herron's work on the Making Home

Affordable Program, of Ms. Herron's reports about waste and misconduct in Fannie Mae's

projects, including her reports during the 8:30 a.m. management meetings, of her efforts to

interfere with Ms. Herron's efforts to obtain employment at Treasury and elsewhere, and of the

fact that Ms. Herron's projects had not ended as of the date of her termination, and that it was

necessary to assign other Product Management Leads from her team to cover all of Ms. Herron's

projects.

10.     Marcel Bryar, Vice President of the MHA Program Management Office, Fannie

Mae.  Mr. Bryar has knowledge of Ms. Herron's expertise and her employment at Fannie Mae,

of her work on the Making Home Affordable Program, of her participation in the 8:30 a.m.

meetings where Ms. Herron reported on issues at Fannie Mae, and of her attempts to obtain

employment at Treasury and elsewhere, including the proposal that he initially supported in which Ms. Herron would work on-site at Treasury as a Fannie Mae contractor.

11.     Phyllis Caldwell, Chief of the Homeownership Preservation Office, U.S. Department of the Treasury.  Ms. Caldwell has knowledge of Ms. Herron's reports to her and other senior managers at Treasury about Fannie Mae's operations, including reports about waste and misconduct at Fannie Mae, and has knowledge of Ms. Herron's attempts to obtain employment at Treasury.  Ms. Caldwell also has knowledge that Ms. Herron's projects at Fannie Mae had not ended as of the date of her termination, and that Ms. Herron was still working with Treasury on 2MP, FHA-HAMP and Borrower Portal policy and implementation.  Ms. Caldwell also has knowledge of Treasury's control of Fannie Mae, including directives made from Treasury to Fannie Mae, and Treasury's reviews and approvals of Fannie Mae policies.

12.     Joy Cianci, Senior Vice President Communications, Fannie Mae.  Ms. Cianci has knowledge of Ms. Herron's work on the Making Home Affordable Program, of Ms. Herron's reports about waste and misconduct in Fannie Mae's projects, including her reports during the 8:30 a.m. management meetings, and of the fact that Ms. Herron's projects had not ended as of the date of her termination, and Ms. Cianci and her team were expecting deliverables, meetings, and feedback from Ms. Herron on projects at the time Ms. Herron was terminated.

13.     Edward DeMarco, Acting Director of the Federal Housing Finance Agency (FHFA).  Mr. DeMarco has knowledge of FHFA's control, oversight, and investigations of Fannie Mae, and of Fannie Mae's investigation of Ms. Herron's allegations.

14.     Terry Edwards, Executive Vice President Credit Portfolio Management, Fannie Mae.  Mr. Edwards has knowledge of Ms. Herron's work on the Making Home Affordable Program, of Ms. Herron's reports about waste and misconduct in Fannie Mae's projects, and of

defendants' efforts to interfere with Ms. Herron's efforts to obtain employment at Treasury and elsewhere.

15.     Christine Eldarrat, Executive Advisor, Federal Housing Finance Agency.  Ms. Eldarrat has knowledge of the termination of Ms. Herron's employment, that Ms. Herron's projects at Fannie Mae had not ended as of the date of her termination, and that Ms. Herron was still working with FHFA on 2MP, FHA-HAMP and Borrower Portal policy and implementation, including clarifying the roles and responsibilities of Fannie Mae in each project, developing project scope and budget estimates to help FHFA determine its policy regarding Fannie Mae's involvement in these projects, and the scope and compensation of Fannie Mae's work.

16.     Malloy Evans, Vice President of Policy for MHA Programs, Fannie Mae.  Mr. Evans has knowledge of Ms. Herron's work on the Making Home Affordable Program, of Ms. Herron's reports about waste and misconduct in Fannie Mae's projects, including her reports during the 8:30 a.m. management meetings, and of the fact that Ms. Herron's projects had not ended as of the date of her termination, and Mr. Evans and his team were expecting deliverables, meetings, and feedback from Ms. Herron on projects at the time Ms. Herron was terminated.

17.     Terrance Evans, Executive Vice President for Credit Initiatives, Fannie Mae.  Mr. Evans, who was the supervisor of Defendant Schuppenhauer, has knowledge of Ms. Herron's work on the Making Home Affordable Program, of her reports during the 8:30 a.m. management meetings, and of the termination of her employment.

18.     Patricia Fulcher, Vice President of NSO Technology Management and Operations, Fannie Mae.  Ms. Fulcher has knowledge of Ms. Herron's expertise and her employment at Fannie Mae, has knowledge of Ms. Herron's work on the Making Home Affordable Program, of Ms. Herron's reports about waste and misconduct in Fannie Mae's

projects, and of her discussions with Ms. Herron and others about having her work on National Servicing Organization technology projects for Fannie Mae.

19.     Cindy Gertz, Director of Operations for the Homeownership Preservation Office, U.S. Department of the Treasury.  Ms. Gertz has knowledge of Ms. Herron's reports to her and other senior managers at Treasury about Fannie Mae's operations, including reports about waste and misconduct at Fannie Mae, and has knowledge of Ms. Herron's attempts to obtain employment at Treasury.  Ms. Gertz also has knowledge that Ms. Herron's projects at Fannie Mae had not ended as of the date of her termination, and that Ms. Herron was still working with Treasury on 2MP, FHA-HAMP and Borrower Portal policy and implementation.  Ms. Gertz also has knowledge of Treasury's control of Fannie Mae, including directives made from Treasury to Fannie Mae, and Treasury's reviews and approvals of Fannie Mae policies.

20.     Jack Guttentag, University of Pennsylvania Wharton School of Business, Philadelphia, Pennsylvania.  Professor Guttentag has knowledge of his communications with Treasury Assistant Secretary Michael Barr that criticized Fannie Mae's work on the Borrower Portal, and of Treasury's and Fannie Mae's responses to those criticisms.

21.     Sara Hanks, General Counsel for Congressional Oversight Panel (COP).  Ms. Hanks, and her colleagues on the COP, have knowledge of COP's oversight of TARP and Fannie Mae as the Making Home Affordable Administrator under TARP, and of Ms. Herron's reports to COP about waste and misconduct at Fannie Mae.  Ms. Hanks and her colleagues also have knowledge of Treasury's and FHFA's control of Fannie Mae, including directives made from Treasury or FHFA to Fannie Mae, and Treasury's and FHFA's reviews and approvals of Fannie Mae policies.

22.     Shane Hartzler, Senior Product Manager for MHA Programs, Fannie Mae.  Mr.

Hartzler has knowledge of Ms. Herron's work on the Making Home Affordable Program, of Ms. Herron's reports about waste and misconduct in Fannie Mae's projects, including her reports during the 8:30 a.m. management meetings, and of the fact that Ms. Herron's projects had not ended as of the date of her termination, and that it was necessary to assign other Product Management Leads from Ms. Brown's team, including himself, to cover all of Ms. Herron's projects.

23.     Caroline Herron.  Plaintiff has knowledge of her employment background, her work at Fannie Mae, her reports of misconduct, fraud, and waste to her supervisors and to senior managers at Treasury, and her attempts to obtain employment at Treasury and elsewhere.

24.     Nancy Jardini, Vice President for Enterprise Compliance and Chief Privacy Officer, Fannie Mae.  Ms. Jardini has knowledge of Ms. Herron's attempts to obtain employment at Treasury and elsewhere, and of her attempts to interfere with Ms. Herron's efforts to obtain employment at Treasury and elsewhere.

25.     Brian Kanefield, Director MHA Program Communications and Call Center, Fannie Mae.  Mr. Kanefield has knowledge of Ms. Herron's work on the Making Home Affordable Program, and of the fact that Ms. Herron's projects had not ended as of the date of her termination, and Mr. Kanefield and his team were expecting deliverables, meetings, and feedback from Ms. Herron on projects at the time Ms. Herron was terminated.

26.     Kathleen Keller, Vice President for Operations and Technology for MHA Programs, Fannie Mae.  Ms. Keller has knowledge of Ms. Herron's work on the Making Home Affordable Program, of Ms. Herron's reports about waste and misconduct in Fannie Mae's projects, including her reports during the 8:30 a.m. management meetings, and of the fact that Ms. Herron's projects had not ended as of the date of her termination, and Ms. Keller and her

team were expecting deliverables, meetings, and feedback from Ms. Herron on projects at the time Ms. Herron was terminated.

27.     Tom Macdonald, former Project Manager, Borrower Portal Project, Fannie Mae. Mr. Macdonald has knowledge of Ms. Herron's work on the Borrower Portal Project, including the Request for Proposals for potential vendors, and of Fannie Mae's objections to this project. Mr. Macdonald also has knowledge of Ms. Herron's termination and his own termination in January 2010, and of the fact that Ms. Herron's projects had not ended as of the date of her termination, and that other Fannie Mae managers were expecting deliverables, meetings, and feedback from Ms. Herron on projects at the time Ms. Herron was terminated.

28.     Laurie Maggiano, Director of Policy, Homeownership Preservation Office, Department of the Treasury.  Ms. Maggiano has knowledge of Ms. Herron's reports to her and other senior managers at Treasury, including Ms. Herron's requests that Treasury pressure Fannie Mae to ensure that Fannie Mae account managers were communicating appropriately with servicers.  Ms. Maggiano also has knowledge that Ms. Herron's projects at Fannie Mae had not ended as of the date of her termination, and that Ms. Herron was still working with Treasury on 2MP, FHA-HAMP and Borrower Portal policy and implementation.  Ms. Maggiano also has knowledge of Treasury's control of Fannie Mae, including directives made from Treasury to Fannie Mae, and Treasury's reviews and approvals of Fannie Mae policies.

29.     Judy Majors, Senior Product Manager for MHA Programs.  Ms. Majors has knowledge of Ms. Herron's work on the Making Home Affordable Program, and of the fact that Ms. Herron's projects had not ended as of the date of her termination, and that it was necessary for her and other Product Management Leads from Ms. Brown's team to cover all of Ms. Herron's projects.

30.     Richard McGhee, Senior Vice President of Credit Portfolio Management Technology, Fannie Mae.  Mr. McGhee has knowledge of Ms. Herron's expertise and her employment at Fannie Mae, and of his discussions with Ms. Herron and others about having her work on National Servicing Organization technology projects for Fannie Mae.

31.     Gail Pinkepank, Federal Housing Finance Agency.  Ms. Pinkepank has knowledge of the termination of Ms. Herron's employment, that Ms. Herron's projects at Fannie Mae had not ended as of the date of her termination, and that Ms. Herron was still working with FHFA on 2MP, FHA-HAMP and Borrower Portal policy and implementation, including clarifying the roles and responsibilities of Fannie Mae in each project, developing project scope and budget estimates to help FHFA determine its policy regarding Fannie Mae's involvement in these projects, and the scope and compensation of Fannie Mae's work.

32.     Eric Schuppenhauer.  Defendant Schuppenhauer, formerly Senior Vice President of Credit Initiatives at Fannie Mae, has knowledge of Ms. Herron's work on the Making Home Affordable Program, of Ms. Herron's reports about waste and misconduct in Fannie Mae's projects, including but not limited to her reports during the 8:30 a.m. management meetings, and of his efforts to interfere with Ms. Herron's attempts to obtain employment at Treasury and elsewhere, after initially supporting the proposal that she work on-site at Treasury as a Fannie Mae contractor.

33.     David Troia, Fannie Mae Account Manager at ICon Professional Services.  Mr. Troia has knowledge of Ms. Herron's employment at Fannie Mae, of defendants' termination of her employment in January 2010, of defendants' proffered explanations for terminating her employment, and of defendants' refusal to re-hire Ms. Herron in any capacity.

34.     Jack Welch, Treasury Homeownership Program Specialist, Office of Financial

Accountability, Department of the Treasury.  Mr. Welch has knowledge of his work with Ms. Herron in preparing a project briefing about implementing the Borrower Portal for the review and approval of the Treasury Budget Committee and has knowledge of Ms. Herron's attempts to obtain employment at Treasury.  Mr. Welch also has knowledge of Treasury's control of Fannie Mae, including directives made from Treasury to Fannie Mae, and Treasury's reviews and approvals of Fannie Mae policies.

35.      Seth Wheeler, Senior Policy Advisor, Domestic Finance, Department of the Treasury.  Mr. Wheeler has knowledge of Ms. Herron's reports to him and other senior managers at Treasury, including her objection to changing the borrower incentive structure under the Second Lien Modification Program and has knowledge of Ms. Herron's attempts to obtain employment at Treasury.  Mr. Wheeler also has knowledge that Ms. Herron's projects at Fannie Mae had not ended as of the date of her termination, and that Ms. Herron was still working with Treasury on 2MP, FHA-HAMP and Borrower Portal policy and implementation.  Mr. Wheeler also has knowledge of Treasury's control of Fannie Mae, including directives made from Treasury to Fannie Mae, and Treasury's reviews and approvals of Fannie Mae policies.

36.      John Wilhelmy, Fannie Mae.  Mr. Wilhelmy has knowledge of Ms. Herron's work on the Making Home Affordable Program, including responding to Professor Guttentag's allegations about the borrower portal project, and in discussions with Treasury and FHFA regarding Fannie Mae's role in the HAMP projects and the borrower portal.  Mr. Wilhelmy also has knowledge of defendants' termination of Ms. Herron's employment at Fannie Mae, the Fiscal Agency Agreement between Treasury and Fannie Mae, and of defendants' interference with Ms. Herron's efforts to obtain employment at Treasury and elsewhere.  Mr. Wilhelmy also has knowledge of Treasury's and FHFA's control of Fannie Mae, including directives made from

Treasury or FHFA to Fannie Mae, and Treasury's and FHFA's reviews and approvals of Fannie Mae policies.

37.     Michael Williams, Chief Executive Officer of Fannie Mae.  Mr. Williams has knowledge of Ms. Herron's expertise and her employment at Fannie Mae, Ms. Herron's work on the Making Home Affordable Program, defendants' efforts to interfere with Ms. Herron's efforts to obtain employment at Treasury and elsewhere, and internal functions and processes of Fannie Mae.  Mr. Williams also has knowledge of Treasury's and FHFA's control of Fannie Mae, including directives made from Treasury or FHFA to Fannie Mae, and Treasury's and FHFA's reviews and approvals of Fannie Mae policies.

38.     Any individual named in Defendants' Initial Disclosures, or otherwise identified in discovery in this proceeding.

## II.    Description of Documents.

Ms. Herron will produce the following categories of documents in her responses to defendants' requests for production of documents:

(1)     Documents relating to Ms. Herron's employment history, including her work at Fannie Mae, and her efforts to obtain employment at Treasury and elsewhere;

(2)     Government reports, including those issued by the U.S. Department of the Treasury, the Special Inspector General for the Troubled Asset Relief Program (SIGTARP), the Congressional Oversight Panel (COP), the Federal Housing Finance Agency (FHFA), the Financial Crisis Inquiry Commission; and

(3)     Congressional testimony and hearing reports.

## III.   Computation of Damages.

Plaintiff earned approximately $400,000 annually while employed at Fannie Mae.  Since

her termination on January 15, 2010, her earnings have been much lower, as she was unable to obtain comparable employment at Treasury or elsewhere, due to defendants' interference with her efforts to obtain employment.

Plaintiff has also incurred significant reputational damage, in an amount to be proven at trial, arising from defendants' interference with her efforts to obtain employment at Treasury and elsewhere, including defendants' blackballing her to other employers.

Plaintiff has also incurred non-economic compensatory damages, in an amount to be proven at trial, arising from the emotional distress, pain and suffering caused from defendants' termination of her employment, defendants' interference with her efforts to obtain employment at Treasury and elsewhere, and defendants' damage to her professional reputation.

**IV.** **Insurance Agreements.**

Not applicable.

Respectfully submitted,

*/s/ Lynne Bernabei*

Lynne Bernabei (D.C. Bar No. 938936)
Alan R. Kabat (D.C. Bar No. 464258)
BERNABEI & WACHTEL, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7124
tel. (202) 745-1942
fax (202) 745-2627
Bernabei@BernabeiPLLC.com
Kabat@BernabeiPLLC.com

*Counsel for Plaintiff Caroline Herron*

DATED:  March 21, 2011

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiff's Initial Disclosures was served by this Court's Electronic Case Filing System on this 21st day of March 2011 upon counsel for defendants:

> Ira T. Kasdan
> Joseph D. Wilson
> Brooke M. Fineberg
> KELLEY DRYE & WARREN LLP
> 3050 K Street N.W., Suite 400
> Washington, D.C. 20007
>
> Damien G. Stewart
> FANNIE MAE
> 3900 Wisconsin Avenue, N.W.
> Washington, D.C. 20016-2892

/s/ Alan R. Kabat

_____