## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CAROLINE HERRON,

       **Plaintiff,**

   - versus -       **No.: 1:10-CV-00943-RMC**

FANNIE MAE, *et al.*,

       **Defendants.**

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

## INTRODUCTION

*"It is an affront to treat falsehood with complaisance"*
Thomas Paine

Defendants cannot and will not treat the misstatements contained in Plaintiff's Motion to

Strike (Doc # 38) with complacence.  Still, in keeping with the Court's admonition at the February

22nd Status Conference, Defendants will refrain from filing needless motions to strike or for

sanctions as Plaintiff has done.  At the same time, however, Defendants invite the Court to carefully

consider the record and determine who, as between Defendants and Plaintiff and her counsel, is

making misrepresentations to this Court, and who is truly worthy of being sanctioned, as we further

discuss below.

## BACKGROUND

At the February 22nd Status Conference, Defendants' counsel pointed out to the Court that

it had overlooked arguments presented by Defendants in their original motion to dismiss and related

briefs concerning Plaintiff's wrongful termination and *Bivens* counts.  The Court graciously agreed,

acknowledging that her Order denying the Motion to Dismiss (Doc. # 30) did not address all the

issues presented relating to those counts.   (Tr. at 9).   Accordingly, the Court invited renewed argument under an agreed upon briefing schedule.  (Tr. at 13-15).

In the Renewed Motion to Dismiss (Doc. # 33), Defendants also sought reconsideration by the Court of its decision not to dismiss the two other counts in the Complaint, *i.e.*, tortious interference with prospective contractual relations and civil conspiracy.  Defendants explained:

> In denying Defendants' Motion to Dismiss, the Court relied primarily on its conclusion that there are "multiple questions of fact" that made dismissal at this point inappropriate.  *See* Order at 2.  However, much like the above legal arguments regarding the wrongful termination and *Bivens* counts, the Order did not address several other legal arguments that Defendants had raised to have the tortious interference and conspiracy counts also dismissed as a matter of law.  Accordingly, Defendants respectfully request that the Court reconsider the legal sufficiency of these remaining counts . . .

Mem. in Support of Renewed Mot. to Dismiss (Doc. # 33-2) at 12.

By letter dated March 21, 2011 (attached to Motion to Strike as Ex. 2), Plaintiff's counsel demanded that Defendants immediately (by close of business the next day) agree to withdraw that part of their renewed motion to dismiss addressing issues related to the tortious interference and conspiracy counts, or else Plaintiff would file a motion to strike.  Notwithstanding Defendants' counsel's response a day later (March 22, 2011 Letter, attached to Motion to Strike as Ex. 3) explaining that Defendants had every right to seek reconsideration and imploring Plaintiff not to waste the Court's and the parties' time and resources, Plaintiff chose to file the instant Motion to Strike.

As discussed next, Plaintiff's Motion to Strike should be rejected because it is predicated upon numerous factual and legal mischaracterizations, misrepresentations and misstatements.  Respectfully, the Court should not be fooled or misled by Plaintiff's arguments regarding Defendants, their counsel or the appropriate legal positions they have taken.

## ARGUMENT

### I.       Authorization for Reconsideration

The primary basis for Plaintiff's Motion to Strike is the assertion that Defendants are supposedly "wasting judicial resources through [sic] forcing plaintiff's counsel to address legal arguments that this Court has already rejected" because "this Court did <u>not</u> authorize defendants to renew their motion to dismiss as to Ms. Herron's civil conspiracy claim (Count II) and her tortious interference claim (Count III)."  Mot. to Strike (Doc. # 38) at 1.  This assertion is simply misplaced because Defendants did not need the Court's authorization to seek reconsideration.

"[I]t is well established that a district court has the inherent power to reconsider interlocutory orders and reopen any part of a case before entry of final judgment."  *United States v. Rezaq*, 899 F. Supp. 697, 701 (D.D.C. 1995) (*citing Marconi Wireless Tel. Co. v. United States*, 320 U.S. 1, 47-48 (1943)).  This authority flows from the inherent power of the court rather than from any particular rule.  *Id.*

That said, the Federal Rules of Civil Procedure also provide a sound basis for the court to reconsider its interlocutory decisions "at any time" while the case is pending.  Fed. R. Civ. P. 54(b). *See also Isse v. American Univ.*, 544 F. Supp. 2d 25, 29 (D.D.C. 2008); *Campbell v. United States Dep't of Justice*, 231 F. Supp. 2d 1, 6 n.8 (D.D.C. 2002) (Rule 54(b) "addresses interlocutory judgments"). Moreover, it may do so "as justice requires."  *Isse*, 544 F. Supp. 2d at 29 (*quoting Corbell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005)).  *See also Judicial Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 123 (D.D.C. 2006).  This standard has been interpreted by this Court to include a determination of whether the Court "'patently misunderstood' the parties, made a decision beyond the adversarial issues presented, [or] made an error in failing to consider controlling decisions or data."  *Isse*, 544 F. Supp. 2d at 29 (*citing Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)).  Even if reconsideration is not "required," a court may reconsider an interlocutory ruling for "other good

reasons." *Id.* (quoting *Corbell*, 355 F. Supp. 2d at 540). Indeed, Plaintiff's counsel is keenly aware of the standards for reconsideration, having cited them in briefs to this Court less than two years ago. *See Soliman v. The George Washington Univ.*, 2009 WL 5899633 (Mem. in Support of Mot. for Reconsideration, Nov. 30, 2009); *Id.*, 2009 WL 5899632 (Reply in Support of Mot. for Reconsideration, Nov. 13, 2009).

Here, Defendants respectfully sought reconsideration as they were entitled to do for reasons that fall within the permissive reconsideration standards outlined above. First, the Court's Order denying Defendants' original Motion to Dismiss did not adjudicate the legal sufficiency of Plaintiff's tortious interference and civil conspiracy claims. In their first Motion to Dismiss (Doc. # 6), Defendants raised several arguments as to why these counts should be dismissed as a matter of law. Even assuming for the sake of argument that "multiple questions of fact" exist, *see* Order (Doc. # 30) at 2, Plaintiff failed to plead a claim for tortious interference with business expectancy because Fannie Mae cannot, *as a matter of law*, tortiously interfere with a contractual relationship to which it is a party. In other words, Fannie Mae cannot tortiously interfere with itself. *See Press v. Harvard Univ.*, 540 A.2d 733, 736 (D.C. 1988); Mot. to Dismiss (Doc # 6) at 29.

Moreover, the Court did not address Fannie Mae's contentions that Plaintiff herself, in her contract and in an email, *admitted* that she had no expectancy in future employment with Fannie Mae and that she was conflicted from employment with Treasury so as to preclude her being hired there. It is noteworthy that Plaintiff did not address either of these points in her Opposition (Doc. # 37) to Defendants' Renewed Motion to Dismiss.

Additionally, Defendants bolstered their Renewed Motion to Dismiss the tortious interference claim by citing an opinion by Judge Bates which was issued after briefing on the original Motion to Dismiss had ended. *Hopkins v. Blue Cross and Blue Shield Ass'n*, No. 10-900, 2010 WL 5300536 (D.D.C. Dec. 21, 2010). Judge Bates' analysis in dismissing a claim of tortious interference

on a Rule 12(b)(6) motion also was sufficient grounds for Defendants to ask the Court to reconsider its initial decision not to dismiss the tortious interference claims in this case.

Defendants also argued that Plaintiff's civil conspiracy count must be dismissed as a matter of law because Plaintiff failed to allege an underlying tort of wrongful termination or tortious interference to support the vicarious liability claim of civil conspiracy. *See, e.g.*, *Waldon v. Covington*, 415 A.2d 1070, 1074 n.14 (D.C. 1980); *Wiggins v. Phillip Morris, Inc.*, 853 F. Supp. 458, 468 (D.D.C. 1994). Further, Fannie Mae and its employees could not, as a matter of law, have conspired with each other when the employees acted within the scope of their employment (and Plaintiff did not allege otherwise). *See Anderson v. Ramsey*, No. Civ. A. 04-56, 2006 WL 1030155, at *7 (D.D.C. April 19, 2006); Mot. to Dismiss (Doc. # 6) at 43-44. Respectfully, the Court's Order did not address any of these *legal* arguments. Therefore, reconsideration of these points falls squarely within the bounds of Rule 54(b) and the decisions of this Court to review interlocutory orders when justice requires.

Moreover, there was additional good reason for Defendants to seek reconsideration of the legal sufficiency of Plaintiff's tortious interference and civil conspiracy claims in conjunction with its Renewed Motion to Dismiss (Doc. # 33). Defendants' Renewed Motion to Dismiss sought dismissal, in part, of Plaintiff's wrongful termination claim because, among other reasons, Plaintiff was (at best, according to her) an at-will employee (if not a mere contractor). This same point undermines Plaintiff's tortious interference claim because it is black letter law that an at-will employee does not have a valid expectancy in continued employment with her employer. *See McManus v. MCI Comms. Corp.*, 748 A.2d 949, 957 (D.D.C. 2000). Finally, if the Court dismisses Plaintiff's wrongful termination and tortious interference claims, then Plaintiff's civil conspiracy claim cannot survive without an underlying tort. Plaintiff's four causes of action are, to some extent, intertwined. It is only logical, therefore, for the Court to reconsider all of Plaintiff's claims together

to determine if they can withstand legal scrutiny, and certainly appropriate for Defendants to ask the Court to do so.

## II.     Sanctions

Plaintiff next requests that the Court sanction Defendants for "improperly repeating their legal arguments on Ms. Herron's tortious interference and civil conspiracy claims in their renewed motion to dismiss." Mem. in Support of Mot. to Strike ("Mem.") (Doc. # 38-2) at 4. Although Defendants do not contest the Court's inherent authority to sanction litigants for "abusive litigation practices," *In re AOV Indus., Inc.*, 798 F.2d 491, 498 (D.C. Cir. 1986), the case cited by Plaintiff to support its sanctions request here demonstrates the absurdity of such a request.

*AOV Industries, Inc.* addressed sanctions against a creditor in a bankruptcy proceeding for failing to prosecute his appeal of the debtor's reorganization plan. The creditor had filed a notice of appeal, designation of record, and statement of issues with the district court, which docketed the appeal. 798 F.2d at 494. Although the creditor was required to file a brief within fifteen days, he failed to take any action for *ten months*. When the district court finally ordered the creditor to file a supporting brief or face dismissal of his appeal, he instead moved to stay the appeal. The disbursing agent who managed the debtor's estate during reorganization moved to dismiss the appeal, to which the creditor failed to file any response. Finally, well over a year after its filing, the district court dismissed the appeal and, due to the creditor's conduct in failing to prosecute the appeal, awarded the disbursing agent fees and costs. *Id.*

The Court of Appeals affirmed both the dismissal of the appeal and the award of fees and costs, finding the creditor's excuses "unconvincing" and baseless. *Id.* at 498. The creditor's filing of an appeal and failure to take *any* action to pursue that appeal were what the Court of Appeals characterized as "abusive litigation practices." *Id.* Unquestionably, Defendants' entirely reasonable and well-founded request for reconsideration of legal arguments here – contained in a brief which

they were authorized by the Court to file – is a far cry from the kind of misconduct in *AOV Industries, Inc.*, which bordered on malpractice.  It would not be hyperbole to say that Plaintiff's insistence on sanctions in these circumstances is insulting to both Defendants and the Court.

## III.   Defendants' Counsel's Alleged Misrepresentations

Plaintiff outrageously has accused Defendants' counsel of making "knowing misrepresentations to this Court, at both the Status Conference and in defendants' renewed motion to dismiss, about the ability of plaintiffs in Ms. Herron's position to bring a claim under the False Claims Act."  Mem. (Doc. # 38-2) at 5.[1]  By making such an accusation, Plaintiff grossly distorts Defendants' arguments by conflating the question of whether Plaintiff can *successfully* bring a False Claims Act action, with the question of whether she can maintain a common law wrongful termination  claim here when she *may* have a statutory remedy.  The former question is not relevant at this stage.  Under D.C. law, "'where the very statute creating the relied-upon public policy already

---

[1]      Additionally, Plaintiff is manipulating the Court in asserting that counsel for Defendants, Mr. Wilson, "falsely claimed that 'the Court acknowledges that its Order had not addressed the arguments on these latter claims (Tr. at 9)."  Mem. (Doc. # 38-2) at 4.  Plaintiff quoted Mr. Wilson's sentence from his March 22, 2011 letter out of context to make it appear that the "latter claims" to which Mr. Wilson was referring were Plaintiff's tortious interference and civil conspiracy claims.  In reality, Mr. Wilson's letter stated as follows:

> As we wrote in the brief accompanying the renewed motion (at 12), the Court's Order did not address Defendants' legal arguments regarding the tortious interference and conspiracy counts **much as it did not address the arguments regarding the wrongful termination and *Bivens* claims.**  At the February 22nd status conference, the Court acknowledged that its Order had not addressed the arguments on **these latter claims** (Tr. at 9).

March 22, 2011 Letter (attached to Plaintiff's Mot. to Strike as Ex. 3).  [Emphasis added.]    Thus, once Plaintiff's unfairly edited version of the sentence is read in context, it is obvious that the "latter claims" refers to Plaintiff's wrongful termination and *Bivens* claims, and that Mr. Wilson accurately portrayed the exchange at the Status Conference.

Plaintiff also accuses Defendants' counsel of making representations to the Court regarding the "law governing FCA claims" that were "false."  Mem. (Doc # 38-2) at 3.  This accusation is simply unfounded and hardly deserves a response.  Defendants' arguments on the FCA are set forth fully in their briefs and will be elaborated upon in the reply brief to Plaintiff's Opposition to the Renewed Motion to Dismiss which is due on April 15th.

contains a specific and significant remedy for the party aggrieved by its violation,' the plaintiff may *not* invoke the [public policy] exception to the at-will employment doctrine [as a matter of law]." *Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 116, 136 (D.D.C. 2008) (*quoting Nolting,* 621 A.2d at 1390). *See also Kassem v. Washington Hosp. Ctr.*, 513 F.3d 251, 254-55 (D.C. Cir. 2008). A claim under the public policy exception fails as a matter of law if a plaintiff *"might"* have a remedy under a statute that she relies upon to provide the public policy. *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 645 (D.C. 2005) (emphasis added).

At the February 22nd Status Conference, this is the message Defendants' counsel conveyed to the Court:

> MR. KASDAN: . . . [I]t seems to us that plaintiff has pled herself out of two counts; the wrongful termination count and the *Bivens* count. And that is because, Your Honor, in D.C. there cannot be a wrongful termination count based on public policy exception to the "at will doctrine" when there is a statute under which a plaintiff may have a remedy.
>
> In this instance, Your Honor, given the allegations of retaliation because of purportedly fraud, fraudulent disclosures, there is a remedy ostensibly under the False Claims Act. Not only that, Your Honor, I believe plaintiff is relying on the False Claims Act to support the public policy exception argument.
>
> **The case law is very clear on this, Your Honor, that even at this stage on a motion to dismiss they cannot bring a wrongful termination claim as a result because they have a statute which gives them remedies.** The same thing with respect to the *Bivens* claim, Your Honor. Under *Bush* and *Spagnola* I believe this Court holds that if there is a statutory remedy then you can't have a judicial remedy in terms of Bivens.
>
> ***
>
> [Plaintiff] confirmed that there are misrepresentations involved, but they, in our opinion respectfully, they mischaracterize our argument. **What they said was oh well, we are saying that there is no basis for this claim. We don't have proof. They can't prove their claims and as a result it should be dismissed. That's not our argument. Our argument is that there's a possibility and there's more than a possibility at this point because they've made these allegations of fraud and misrepresentations that as a consequence they can't have a wrongful termination or a *Bivens* claim.**

(Tr. at 7-9).  [Emphasis added.]  Contrary to Plaintiff's allegation in her Motion to Strike, counsel for Defendants did not represent to the Court that Plaintiff would prevail or even withstand a motion to dismiss if she brought an FCA action, but rather that the FCA provides a *possible* remedy for her based on her own factual allegations, including that she engaged in protected activity and was retaliated against for that activity.

> MR. KASDAN: Well, Your Honor, if I may. What we wrote in our brief there are four elements I believe for the claim. One is that plaintiff must be an employee or contractor. Two, that plaintiff has engaged in protected activity, that certainly has been their claim. Three, there's been retaliation and four because of that protected activity, that's a False Claims Act. I would urge, Your Honor –
>
> THE COURT: Except that what plaintiff's counsel just said was that she can't make out a false claim because she has no specific document.
>
> MR. KASDAN: If I may, just on the point. First of all the law is if there **might** be such a claim that's what they have to bring.  . . .

(Tr. at 11-12).  [Emphasis added.]

The Court does not have to – and, indeed, cannot – decide at this stage the sufficiency of Plaintiff's putative, future FCA complaint.  That has been Defendants' position throughout these proceedings to date, in court and in their briefs, notwithstanding Plaintiff's inability to understand counsel's very clear statements.  On the other hand, the Court cannot countenance a wrongful termination or *Bivens* claim given (1) Plaintiff's claims of fraud and misrepresentations and, thus, the possibility of bringing a claim under the False Claims Act, as well as (2) her reliance on that statute to support a public policy exception to the doctrine that an at-will employee is barred from bringing a claim for wrongful termination.

## IV.    Defendants' Discovery Response

Finally, Plaintiff insists that Defendants have unilaterally refused to produce documents. Mem. (Doc. # 38-2) at 6.  Although Defendants strongly believe that much of this case should be

narrowed, if not entirely dismissed, as a result of their Renewed Motion to Dismiss, Defendants are not – as explained to Plaintiff's counsel by letter dated March 28, 2011 (attached to Motion to Strike as Ex. 4) – seeking a stay of discovery at this time.[2]   Thus, Defendants are currently gathering potentially responsive documents and e-mails in their control.   So far, the volume of electronic material totals approximately 35 gigabytes of data.   Defendants are also in the process of sorting through that very large volume of material and culling out potentially privileged documents. Contrary to Plaintiff's implication, Defendants are actively engaged in the discovery process, which has been, and will continue to be, complex and costly.

Most important to note is that the parties have a teleconference scheduled with the Court on April 12th to work through these discovery disputes.   In requesting such a teleconference with the Court, Defendants intended to avoid this sort of useless and petty motions practice.   Unfortunately, Plaintiff could not wait an additional week to complain, and felt the need to file this Motion to Strike.   Defendants will save a more detailed explanation of the status of discovery, and whether

---

[2]       To say the least, Plaintiff's discovery was highly burdensome and objectionable, totaling over 100 production requests and well-more than the 25 interrogatories permitted by the Federal Rules of Procedure.   As a result, in the March 28th letter, counsel wrote to Plaintiff's counsel summarizing the objections that Defendants had made in the responses that it timely served to Plaintiff's discovery, and sought a conference to discuss in a civil and professional manner the issues raised. Counsel noted that Defendants ordinarily would have moved for a protective order under FRCP 26, but were not doing so in light of the Court's admonition at the February 22nd status conference to refrain from filing motions.   (Tr. at 6-7).   Consistent with the Court's instruction not to file motions, counsel also noted that Defendants were not "at this time" seeking to stay discovery.   Indeed, counsel specifically stated that "Defendants are responding in good faith to Plaintiff's discovery *and will begin to search for and produce responsive, non-privileged material for those document requests to which Defendants do not entirely object.*"   [Emphasis added.]   However, to preserve their right to seek a future stay of discovery in the event that the parties, *after a meet and consult*, could not resolve disagreements, counsel wrote that Defendants would not produce certain documents "*relating specifically* to Plaintiff's wrongful termination, *Bivens*, and tortuous interference claims until *after* the Court has decided Defendants' Motion and provided clear contours for this case."   [Emphasis added.]   Plaintiff's counsel has yet to take up the offer to meet and confer on discovery issues.

they intend to seek a stay of production of documents while the Court decides the Renewed Motion

to Dismiss, until the scheduled opportunity to speak with the Court by phone.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's

Motion to Strike and request for sanctions, which is based on plain falsehoods, and

mischaracterizations of both the law and Defendants' representations in this case.

Respectfully submitted,

/s/ Ira T. Kasdan

Ira T. Kasdan (D.C. Bar # 292474)
Joseph D. Wilson (D.C. Bar # 466652)
Brooke M. Fineberg (D.C. Bar # 996105)
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, D.C.  20007
(202) 342-8400 (phone)
(202) 342-8451 (facsimile)
Email:  ikasdan@kelleydrye.com
          jwilson@kelleydrye.com
          bfineberg@kelleydrye.com

Damien G. Stewart (D.C. Bar # 465266)
FANNIE MAE
3900 Wisconsin Avenue, N.W.
Washington, D.C. 20016-2892
(202) 752-6871 (phone)
(703) 997-7405 (facsimile)
Email:  damien_g_stewart@fanniemae.com

*Counsel for Defendants*

Dated:  April 11, 2011

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 11th day of April, 2011, I caused the foregoing to be electronically filed using the Court's CM/ECF system, which will then send a notification of such filing (NEF), to the following counsel for the Plaintiff:

> Lynne Bernabei
> David M. Wachtel
> Alan R. Kabat
> BERNABEI & WACHTEL, PLLC
> 1775 T Street, N.W.
> Washington, D.C.  20009-7124
>
> *Counsel for the Plaintiff*

> _____/s/ Brooke M. Fineberg_____
> Brooke M. Fineberg (D.C. Bar # 996105)
> KELLEY DRYE & WARREN LLP
> 3050 K Street, N.W., Suite 400
> Washington, D.C.  20007
> (202) 342-8400 (phone)
> (202) 342-8451 (facsimile)
> Email: bfineberg@kelleydrye.com
>
> *Counsel for the Defendants*