## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAROLINE HERRON,** | |
| **Plaintiff,** | |
| - versus - | **No.: 1:10-CV-00943-RMC** |
| **FANNIE MAE,** *et al.*, | |
| **Defendants.** | |

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION
## TO THEIR RENEWED RULE 12(b)(6) MOTION TO DISMISS THE COMPLAINT

Ira T. Kasdan (D.C. Bar # 292474)
Joseph D. Wilson (D.C. Bar # 466652)
Elizabeth C. Johnson (D.C. Bar # 987429)
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, D.C.  20007
(202) 342-8400 (phone)
(202) 342-8451 (facsimile)
Email:  ikasdan@kelleydrye.com
        jwilson@kelleydrye.com
        ejohnson@kelleydrye.com

Damien G. Stewart (D.C. Bar # 465266)
FANNIE MAE
3900 Wisconsin Avenue, N.W.
Washington, D.C. 20016-2892
202-752-6871 (phone)
703-997-7405 (facsimile)
Email:  damien_g_stewart@fanniemae.com

*Counsel for the Defendants*

Dated:  April 15, 2011

# TABLE OF CONTENTS

**Page**

I.  HERRON'S WRONGFUL DISCHARGE AND BIVENS CLAIMS ARE
    PRECLUDED ..................................................................................................2

    A.  No Public Policy Exception Applies To Herron's Wrongful Discharge Claim...........2

        1.  The FCA Cannot Be A Source of Public Policy for Herron's
            Allegations ...........................................................................................3

            a.  Herron's Claims Fall Squarely Within the FCA ...................................3

            b.  The Ultimate Success of Herron's FCA Claim is Immaterial ...........8

        2.  The Major Fraud Act and The Federal False Statements Statute
            Cannot Be Sources of Public Policy for Herron's Allegations .....................12

        3.  EESA Is Not a Source of Public Policy for Herron's Allegations................14

    B.  Herron's Potential FCA Complaint Bars Her Bivens Claim .......................................15

II. HERRON'S REMAINING CLAIMS FAIL AS A MATTER OF LAW ..............................16

    A.  Herron's Tortious Interference Claim Fails As A Matter Of Law.............................16

    B.  Herron's Civil Conspiracy Claim Fails As A Matter Of Law .......................................17

III. CONCLUSION..................................................................................................................18

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Acosta Orellana v. CorpLife International*, 711 F.Supp.2d 81 (D.D.C. 2010) .................................. 18

*Adams v. George W. Cochran & Co., Inc.*, 597 A.2d 28 (D.C. 1991) ........................................... 6

*Alsco-Harvard Fraud Litigation*, 523 F. Supp. 790 (D.D.C. 1981) .............................................. 5

*Boone v. MountainMade Foundation*, 684 F.Supp.2d 1 (D.D.C. 2010) .................................... 10-11

*Carl v. Children's Hospital*, 702 A.2d 159 (D.C. 1997) ................................................... *passim*

*Carter v. District of Columbia*, 980 A.2d 1217 (D.C. 2009) .......................................... 3, 8

*District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633 (D.C. 2005) ................................ 8

*Duncan v. Children's National Medical Center*, 702 A.2d 207 (D.C. App. 1997) .................. 1, 2, 15

*Elemary v. Philipp Holzmann A.G.*, 533 F.Supp.2d 116 (D.D.C. 2008) ................................ *passim*

*Hopkins v. Blue Cross and Blue Shield Ass'n*, No. 10-900, 2010 WL 5300536
      (D.D.C. Dec. 21, 2010) ............................................................................. 17

*Hoyte v. American National Red Cross*, 518 F.3d 61 (D.D.C. 2008) .......................................... 7

*Kassem v. Washington Hospital Center*, 513 F.3d 251 (D.C. Cir. 2008) .................................. 11

*MacIntosh v. Building Owners & Managers Ass'n International*, 355 F.Supp.2d 223
      (D.D.C. 2005) ......................................................................................... 6, 7

*McManus v. MCI Communications Corp.*, 748 A.2d 949 (D.C. 2000) ............................... 8, 11, 16

*Nickens v. Labor Agency of Metropolitan Washington*, 600 A.2d 813 (D.C. 1991) ....................... 17

*Nolting v. National Capital Group, Inc.*, 621 A.2d 1387 (D.C. 1993) ................................... 2, 14

*Paul v. Howard University*, 754 A.2d 297 (D.C. 2000) ...................................................... 17

*Payne v. District of Columbia*, No. 10-0679, 2011 WL 1158724 (D.D.C. Mar. 29, 2011) ............ 13

*Riggs v. Home Builders Institute*, 203 F.Supp.2d 1 (D.D.C. 2002) ...................................... 16-17

*Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873 (6th Cir. 2006) ........................................ 6

*Schweiker v. Chilicky*, 487 U.S. 412 (1988) ................................................................... 15

*Sorrells v. Garfinckel's, Brooks Brothers, Miller & Rhoads, Inc.*, 565 A.2d 285 (D.C. 1989)................*passim*

*Tribble v. Raytheon Co.*, No. 09-56669, 2011 WL 490992 (9th Cir. Feb. 14, 2011) ............................9, 11

*United States ex rel. Cericola v. Federal National Mortgage Ass'n*, No. 2:03-cv-02994
    (C.D. Cal. Sept. 30, 2009) ................................................................... 10

*United States ex rel. Siewick v. Jamieson Science & Engineering, Inc.*, 214 F.3d 1372 (D.C. Cir. 2000) .......... 6

*United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488 (D.C. Cir. 2004)........................... 6

*United States ex rel. Yesudian v. Howard University*, 153 F.3d 731 (D.C. Cir. 1998)................................8, 11

*United States v. Neifert-White Co.*, 390 U.S. 228 (1968)........................................................ 6

*Wilson v. U.S. Department of Transportation*, No. 10-490, 2011 WL 11500 (D.D.C. Jan. 4, 2011) .......... 15

*Zelaya v. Unicco Service Co.*, 587 F.Supp.2d 277 (D.D.C. 2008) ................................................... 16

## STATUTES & REGULATIONS

31 U.S.C. § 3729..............................................................................................*passim*

31 U.S.C. § 3730..............................................................................................*passim*

18 U.S.C. § 1001 ........................................................................................... 11-13

18 U.S.C. § 1031........................................................................................... 11-13

Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, 122 Stat. 3765
    (Oct. 3, 2008) (codified at 12 U.S.C. §§ 5201 *et seq.*).......................................11-12, 14

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ..........................................................................................5, 9

Memorandum in Support of the Motion of the United States of America Pursuant to 31
    U.S.C. § 3730(c)(2)(A) For Dismiss Of All Claims Against Federal National
    Mortgage Association, *United States ex rel. Cericola v. Fed. Nat'l Mortgage Ass'n*, No.
    2:03-cv-02994 (C.D. Cal. Sept. 30, 2009) ................................................... 10

In Defendants' Memorandum in Support of Their Renewed Rule 12(b)(6) Motion to Dismiss the Complaint ("Renewed Motion" or "Renewed Mot.") (Doc. # 33-2), Defendants Fannie Mae (f/k/a Federal National Mortgage Association), Eric Schuppenhauer, Nancy Jardini, and Alanna Scott Brown (collectively, "Defendants") demonstrated that the wrongful discharge and *Bivens* claims of Plaintiff Caroline Herron ("Herron") are precluded because Herron's allegations fall under the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"), a statute which provides a comprehensive and exclusive means of relief for Defendants' alleged false or fraudulent representations to the United Stated Department of the Treasury ("Treasury"). Further, Defendants demonstrated that Herron's tortious interference and civil conspiracy claims fail as a matter of law.

In her Opposition to Defendants' Renewed Motion to Dismiss ("Second Opposition" or "Second Opp.") (Doc. # 37), Herron continues to ask the Court to create a judicial remedy – *i.e.*, a public policy exception to the at-will employment doctrine for wrongful discharge claims – where the legislative branch has already formulated a cause of action under the FCA. She spends pages arguing about the pleading standard and likelihood of success of her putative, future FCA complaint – issues entirely irrelevant for the Court's resolution of Defendants' Renewed Motion. At this stage, the Court first "must" determine whether or not Herron has a public policy exception to the at-will employment doctrine without which she cannot bring a wrongful discharge claim. *Duncan v. Children's Nat. Med. Ctr.*, 702 A.2d 207, 210 (D.C. App. 1997). Defendants contend that because Herron has accused Defendants of discharging her because she claimed that Fannie Mae engaged in fraud and misrepresentations, and because the FCA already contains a remedial scheme covering such allegations, Herron's wrongful discharge and *Bivens* claims must fail. Further, the remaining statutes cited by Herron as sources of public policy for her wrongful discharge claim fail because they either provide the same public policy protected by the FCA (and therefore cannot be relied upon as separate sources of public policy), or do not contain "officially recognized" rights "carefully

1

tethered" to any public policy implicated by Herron's claims.  *See Carl v. Children's Hosp.*, 702 A.2d 159, 163 (D.C. 1997).  Herron's attempts to detract attention from the core issues in this case with red herrings and reckless sanctions threats should be rejected, and her Complaint should be dismissed in its entirety.

**I.    HERRON'S WRONGFUL DISCHARGE AND *BIVENS* CLAIMS ARE PRECLUDED**

**A.    No Public Policy Exception Applies To Herron's Wrongful Discharge Claim**

In evaluating a plaintiff's wrongful discharge claim on a motion to dismiss, where the complaint refers to a "violation of public policy," *see* Compl. ¶ 1, D.C. courts "*must* decide if [the plaintiff] has . . . alleged a public policy exception to the at-will employment doctrine." *Duncan*, 702 A.2d at 210 (emphasis added) (finding plaintiff had failed to state a claim for wrongful termination in violation of public policy).  As discussed below, and at length in Defendants' prior pleadings, there is no public policy exception to the at-will employee doctrine available to Herron because the FCA, on which she relies as a source of public policy, provides the exclusive means of relief for her claim.  *See, e.g.*, Defendants' Reply to Plaintiff's Opposition to Their Rule 12(b)(6) Motion to Dismiss the Complaint ("First Reply") (Doc. # 23) at 5-9; Renewed Mot. at 4-5, 10.  Thus, the Court must dismiss Herron's wrongful discharge claim.

Defendants have previously detailed for the Court that under D.C. law, "'where the very statute creating the relied-upon public policy already contains a specific and significant remedy for the party aggrieved by its violation,' the plaintiff may *not* invoke the [public policy] exception to the at-will employment doctrine [as a matter of law]." *See* Renewed Mot. at 4 (*quoting Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 116, 136 (D.D.C. 2008) (*citing Nolting v. Nat'l Capital Group, Inc.*, 621 A.2d 1387, 1390 (D.C. 1993)).  In *Nolting*, the D.C. Court of Appeals refused to recognize a public policy exception in a "statutory provision which not only creates the wrong but also contains a

specific remedy to compensate the person suffering that wrong." 621 A.2d at 1389. The existence of a statutory comprehensive remedial scheme is enough to preclude a public policy exception based on that statute – it does not matter whether the plaintiff has a *successful* cause of action under that statute. *See* Renewed Mot. at 4 (*citing Carter v. District of Columbia,* 980 A.2d 1217, 1225-26 & n.27 (D.C. 2009) (affirming denial of wrongful termination claim because the plaintiff's allegations "fell squarely" under the D.C. Whistleblower's Act, even though no claim under that Act had been made and would have been time-barred in any event)). This rule stems from general separation of powers principles: where a statute has clearly defined a wrong and a remedy, courts will not "rewrite it or extend its coverage beyond the limits set by the legislature." *Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.,* 565 A.2d 285, 289 (D.C. 1989).

1.     **The FCA Cannot Be A Source of Public Policy for Herron's Allegations**

This Court has held that the FCA is a statute which contains a "specific and significant remedy for the party aggrieved by its violation[.]" *Elemary,* 533 F. Supp. 2d at 136 (citation omitted). As Defendants have argued, Herron's allegations fall squarely within the purview of the FCA; thus, the Court can find that Herron "could" bring an FCA relator or retaliation claim. *See, e.g.,* Renewed Mot. at 9 (*citing* Transcript of February 22, 2011 Status Conference ("Tr.") (Doc #39) at 12). Herron's arguments regarding the pleading standard for FCA claims and the potential for success on the merits of her putative future FCA lawsuit are unavailing and irrelevant. Whether or not Herron may bring a *successful* FCA claim against Defendants is immaterial: Herron's allegations fall squarely within the FCA, and that alone precludes her common law wrongful discharge claim.

a.     Herron's Claims Fall Squarely Within the FCA

As Defendants highlighted in their Renewed Motion, Herron's pleadings are replete with allegations that Defendants fraudulently made misrepresentations to (and concealed information from) Treasury in order to receive payments from Treasury. *See* Renewed Mot. at 2-3, 7 (*quoting*

Herron's Memorandum in Support of her Opposition to Defendant's Motion to Dismiss ("First Opposition" or " First Opp.") (Doc. # 18) at 2 ("Fannie Mae was engaging in a gross waste of public funds and violating its statutory obligations *by making false and misleading statements to Treasury . . . . Fannie Mae took these illegal actions so that it could get paid incentives* for work done") (emphasis added); *id.* at 39 ("defendants . . . *misrepresent[ed] to Treasury* the progress that Fannie Mae was making on the loan modifications, *so that Fannie Mae could get paid* under its Contract [*i.e.,* the Financial Agency Agreement ("FAA")] with Treasury") (emphasis added); *id.* at 25 ("Fannie Mae fired [Herron] after she disclosed that Fannie Mae made *false or fraudulent representations to Treasury*") (emphasis added); Herron's Surreply Brief (Doc. #31) at 7-8 (Defendants made "misrepresentations to the federal government"). These claims clearly allege that Defendants made "a false or fraudulent claim for payment or approval" and/or "a false . . . statement material to a false or fraudulent claim" under the FCA. 31 U.S.C. § 3729(a)(1)(A), (B); *see also* Renewed Mot. at 7. Further, Herron's allegations that she was discharged from her employment with Fannie Mae for reporting this alleged conduct clearly state the elements of a retaliation claim under the FCA. *See* 31 U.S.C. § 3730(h)(1); Renewed Mot. at 7-9.

In her Second Opposition, Herron does not deny or retract any of these allegations; instead, she omits all references to Defendants' alleged false or fraudulent representations to Treasury and Defendants' alleged attempts to obtain payments from Treasury. She characterizes her claim instead as one involving "Fannie Mae's waste of government funds," and not "Fannie Mae's claims for payment submitted to Treasury." Second Opp. at 2. She argues that her claims do not fall under the relator – or, according to her, the retaliation – provisions of the FCA because her disclosures did not concern "specific invoices or claims." *Id.* at 10, 16.

Herron's arguments are disingenuous for several reasons. First, Herron cannot simply ignore the prior allegations about fraud and misrepresentation cited above, and her subsequent

allegations that Defendants provided specific "false and misleading information" to Treasury.[1]  *See* Second Opp. at 12.  Of course, whether her claims meet the standard for pleading fraud under Fed. R. Civ. P. 9(b) is another story, and Defendants reserve all rights to challenge Herron in the future on that matter.

Second, Herron's attempt to disassociate her "waste" claims from her "fraud" claims is unpersuasive because Herron has consistently claimed that Fannie Mae's alleged "waste" arose out of its false or fraudulent misrepresentations to Treasury.  *See, e.g.*, First Opp. at 2 ("Fannie Mae was engaging in a gross waste of public funds and violating its statutory obligations *by making* false and misleading statements to Treasury") (emphasis added); *id.* at 25 ("Fannie Mae made false or fraudulent representations to Treasury about its work on the TARP contract . . . [Herron] disclosed to Treasury that Fannie Mae was deliberately concealing information from Treasury about Fannie Mae's operations, at the expense of the government").

Third, Herron's argument that she needs to allege "specific invoices or claims" is flawed not only in light of the specific allegations of Defendants' misrepresentations Herron has made, *see* note 1, but also because it disregards the extensive case law cited by Defendants which holds that no specific invoice is necessary and that  a "'claim' [under the FCA] should ... be broadly construed to include '*all fraudulent attempts* to cause the Government to pay out sums of money.'"  *See* Renewed Mot. at 6 (*quoting Alsco-Harvard Fraud Litig.,* 523 F. Supp. 790, 811 (D.D.C. 1981) (emphasis added);

---

[1]     *See* Plaintiff's Responses to First Set of Interrogatories From Defendant Fannie Mae To Plaintiff Caroline Herron (relevant portions attached hereto as Ex. 1) at 4.  Indeed, although Defendants deny the veracity of Herron's claims, disagree with their sufficiency, further deny that they rise to the level of any kind of fraud, misrepresentation or falsity or indicate that Herron was investigating or trying to prevent any such fraud, misrepresentation or falsity, and will defend against any such claims on all the above (as well as on other) grounds, in her answers to interrogatories propounded by Defendants, Herron nonetheless has specified what she believes is the "false and misleading information" that Fannie Mae provided to Treasury. *See* Ex. 1 at 4-8.  That defeats Herron's assertion that she does not "know the specifics of the false claims that Fannie Mae made to the government."  Thus, if she truly believes that her answers to Defendants' interrogatories demonstrate fraud and misrepresentations by the Defendants, she should plead these claims in an FCA lawsuit.

*also citing United States ex rel. Totten v. Bombardier Corp.,* 380 F.3d 488, 509 (D.C. Cir. 2004) (*quoting United States v. Neifert-White Co.,* 390 U.S. 228, 231-32 (1968) (FCA was intended to reach all types of fraud); *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) ("claim" under the FCA can arise from oral representations); *United States ex rel. Siewick v. Jamieson Science & Eng'g, Inc.,* 214 F.3d 1372, 1376 (D.C. Cir. 2000) (claim under the FCA can arise from silence).

Finally, Herron's reliance on *MacIntosh v. Building Owners & Managers Ass'n International*, 355 F.Supp.2d 223 (D.D.C. 2005), is misplaced.  In *MacIntosh*, the plaintiff alleged that he was fired by his employer for *refusing to violate the FCA.  See* 355 F.Supp.2d at 228 ("plaintiff alleges that he was fired for refusing to fraudulently inflate [his employer's] expenses under a government contract with the EPA.")  These facts fall squarely under the public policy exception to the at-will employment doctrine for employees terminated for their refusal to violate the law, first laid out in *Adams v. George W. Cochran & Co., Inc.,* 597 A.2d 28, 34 (D.C. 1991).  *See MacIntosh*, 355 F.Supp.2d at 228.  Here, Herron has made no allegations that she was discharged for her refusal to violate any laws, and the public policy exception enunciated in *Adams* is clearly inapplicable to her.

To the extent the *MacIntosh* court relied upon the public policy exception discussed in *Carl*, *see* 355 F.Supp.2d at 228, that reliance is also distinguishable from the facts here.  At the time *MacIntosh* was decided, an FCA retaliation claim was available only for an employee who was discharged for acts taken "in furtherance of an [FCA] action."  *See* 31 U.S.C.A. § 3730(h) (2008).  In 2009, however, the FCA was amended to permit a retaliation action for an employee who was discharged for acts taken "in furtherance of an action under this section *or other efforts to stop 1 or more violations of this subchapter.*"  *See* 31 U.S.C.A. § 3730(h) (2010) (emphasis added).  In *MacIntosh*, the plaintiff did not have a retaliation claim under the FCA (as it was written in 2005) because his actions were not taken in furtherance of an *FCA suit.*  Indeed, no such suit existed because nothing had actually been submitted to the government.  Under the current version of the FCA, however,

the *MacIntosh* plaintiff would have had a plausible FCA retaliation claim because he alleged he had taken lawful acts "in furtherance of an . . . effort[] to stop [a] violation[] of [the FCA]" – *i.e.*, submission of an inflated expense report to the government. *See* 31 U.S.C.A. § 3730(h) (2010); 355 F.Supp.2d at 225.

Unlike the plaintiff in *MacIntosh*, Herron *has* alleged the elements of an FCA claim: that Defendants made "a false . . . statement[]," *see* First Opp. at 2, material to a false or fraudulent claim for payment under the FCA. *See id.* at 2, 39; *see also* 31 U.S.C. § 3729(a)(1)(B). Moreover, Herron's counsel admitted at the parties' February 22, 2011 Status Conference that, with discovery, Herron *could* have an FCA claim – a fact omitted from Herron's Second Opposition. *See* Tr. at 12-13 (Bernabei [Plaintiff's Counsel]: "[i]f [Herron] had full access to all of the documents perhaps she could make out a false claim").[2] Herron has also alleged that she was retaliated against for her actions taken in furtherance of an effort to stop (or at least to investigate) a violation of the FCA. *See, e.g.*, Second Opp. at 25 ("Fannie Mae fired [Herron] after she disclosed that Fannie Mae made false or fraudulent representations to Treasury").

As discussed below, whether Herron will be able to *successfully* bring such an action is irrelevant to the Court's inquiry here. Nor does it have any bearing on her ability to bring an FCA retaliation claim. Contrary to Herron's argument, *see* Second Opp. at 16-17, an FCA retaliation claim

---

[2]      This is the crucial difference between Herron's case, and *Hoyte v. American National Red Cross*, 518 F.3d 61, 69 (D.D.C. 2008), cited by Herron in her Second Opposition. In *Hoyte*, the plaintiff brought a claim under a provision of the FCA which creates liability for a party that "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government." *Id.* at 66 (*citing* 31 U.S.C. § 3729(a)(7)). The court found that there was no viable FCA claim, and therefore no FCA retaliation claim, because the plaintiff did not, and could not, allege a crucial element of that FCA violation – that the Red Cross had any obligation to "transmit money or property to the government." *Id.* at 68-69. As a matter of law, the Red Cross "had no such obligation and no amount of discovery could cure this defect." *Id.* at 69. Unlike the plaintiff in *Hoyte*, Herron *has* alleged all the legal elements of FCA relator and retaliation claims. She has even claimed that she *may* be able to make out such a claim with sufficient discovery, Tr. at 12-13, and has amplified the alleged fraud engaged in by Defendants in her answers to interrogatories (*see* Ex. 1).

does not require a plaintiff to have a successful FCA relator claim. *See, e.g.* Renewed Mot. at 9 ("the protected activity element does not require the plaintiff to have developed a winning qui tam action before he is retaliated against") (*quoting United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 739-40 (D.C. Cir. 1998)).   Having pled all the elements of an FCA claim, Herron would not be precluded from bringing an FCA retaliation claim.

                        b.        The Ultimate Success of Herron's FCA Claim is Immaterial

As Defendants have made clear, D.C. law will not recognize the narrow public policy exception to the at-will employment doctrine "where the very statute creating the relied-upon public policy already contains a specific and significant remedy for the party aggrieved by its violation," or, stated differently, where the plaintiff *"might"* have a remedy under a statute that she relies upon to provide the public policy.   Renewed Mot. at 4 (*quoting Elemary*, 533 F. Supp. 2d at 136   (internal citations omitted); *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 645 (D.C. 2005) (internal citations omitted)).   This standard does not require the plaintiff to have a *successful* case under the applicable statute, nor does it require the plaintiff to have actually brought a cause of action under that statute. *See Carter,* 980 A.2d at 1225-26 & n.27.[3]

Indeed, if a plaintiff is unable to successfully bring suit under a statute which provides a potential remedy for its violation, that statute cannot be relied upon as a source of public policy for the plaintiff's wrongful discharge claim.   In *McManus v. MCI Communications Corp.*, 748 A.2d 949, 957 (D.C. 2000), for example, the District of Columbia Court of Appeals rejected the plaintiff's attempt to rely on the District of Columbia Human Rights Act ("DCHRA") as a source of public policy for her wrongful termination claim where the court had already determined that the defendant had not

---

[3]     For this reason, Herron's allegations that Fannie Mae "failed to advise the Court that it successfully sought the dismissal of FCA claims brought by relators in other courts" is irrelevant and inappropriate here. *See* Second Opp. at 1.   Defendants have never claimed that Herron could *successfully* bring or plead an FCA relator or retaliation claim.

violated the plaintiff's rights under that Act.  The court held: "Having previously concluded that [the defendant] did not violate appellant's rights under the DCHRA, there is no room to make the argument again under *Carl*."  *Id.  See also Sorrells*, 565 A.2d at 289 (where plaintiff could not establish a violation of the DCHRA, she could not rely upon it as a public policy exception to her wrongful discharge claim; although her "concerns [were] unprotected by the Act," the court could not "rewrite it or extend its coverage beyond the limits set by the legislature"); *Tribble v. Raytheon Co.*, No. 09-56669, 2011 WL 490992, * 2 (9th Cir. Feb. 14, 2011) (where plaintiff could not make out a successful FCA claim, she could not rely upon that statute as a source of public policy for her wrongful termination claim because "the common law cause of action cannot be broader than the ... statute on which it depends....") (citations omitted).

Herron's arguments as to why she does not believe she could successfully bring an FCA lawsuit against Defendants are therefore immaterial, and, at any rate, are unavailing.  Herron first argues that she cannot state a claim under the FCA because she does not – and cannot – allege an FCA relator claim with the specificity required under Fed. R. Civ. P. 9(b).  *See* Second Opp. at 11-12. Her purported inability to allege fraud with specificity, however, does not diminish the fact that her general allegations regarding Defendants' false and fraudulent representations to Treasury, made in order to receive incentive payments and payment under Defendants' contract, would state a claim under the FCA *if they could be pled with the requisite specificity*.  This is precisely the point made in Defendants' Renewed Motion.  *See* Renewed Mot. at 7 (noting that Herron's allegations state the elements of an FCA claim "albeit, and significantly, without the requisite specificity required by FRCP 9(b)"); *see also id.* (Herron's allegations could state an FCA claim "provided they are properly

pled"); *id.* at 10 ("Herron has alleged the elements of FCA claims (albeit without the necessary particularity)").[4]

Herron also argues that she could not successfully bring an FCA claim under the circumstances here because Fannie Mae is a government entity. *See* Second Opp. at 13-15, and Ex. 3 thereto. This argument is unpersuasive for several reasons.[5]

First, it was the United States (*i.e.*, not Fannie Mae) that argued in *United States ex rel. Cericola v. Fed. Nat'l Mortgage Ass'n*, No. 2:03-cv-02994 (C.D. Cal. Sept. 30, 2009), that no FCA relator claim could be brought against Fannie Mae,[6] and that argument was never ruled upon by the court because the parties stipulated to Fannie Mae's dismissal from the case. *See* Second Opp. at 15, and Exs. 4-5 thereto. Second, the United States' argument in that case that any judgment against Fannie Mae would necessarily be paid with money from Treasury, *see* Second Opp. Ex. 3 at 19-20, may have been true in 2009 but is not necessarily true today. Finally, the *Cericola* case related only to an FCA *relator* claim, and has no bearing on Herron's ability to being an FCA *retaliation* claim, which only requires the plaintiff to have been "investigating matters that '*reasonably could lead*' to a viable False

---

[4]     Consequently, Herron's allegations that Defendants "misle[d]" the Court by failing to notify the Court of the heightened pleading standard required for an FCA relator claim are patently false. *See* Second Opp. at 1. Further, as discussed throughout this brief, the pleading standard for an FCA relator claim is irrelevant here because Herron has *not* brought an FCA claim before this Court. Rather, Defendants argue that this Court can find that Herron must *try* to bring an FCA claim if she wants to seek relief for her alleged injuries. *See* Renewed Mot. at 10.

[5]     Moreover and in any event, Herron cannot claim that Fannie Mae is a governmental entity for purposes of getting around her potential FCA claim without defeating her claims for wrongful discharge, tortious interference, and civil conspiracy – all of which are premised on Fannie Mae being a *private* employer. *See* Compl. ¶¶ 84, 96, 102

[6]     For this reason, Herron's claim that the arguments "advanced by the government [in *Cericola*] on behalf of Fannie Mae are directly contrary to Fannie Mae's arguments to this Court that Fannie Mae was not a government entity for purposes of Ms. Herron's *Bivens* claim," Second Opp. at 15 n.3, is simply false because those arguments were made on behalf of the United States, not Fannie Mae. In any case, the United States never argued in *Cericola* that Fannie Mae is or was a government entity, as a review of the government's brief filed in *Cericola* in its entirety, *see* Memorandum in Support of the Motion of the United States of America Pursuant to 31 U.S.C. § 3730(c)(2)(A) For Dismiss Of All Claims Against Federal National Mortgage Association, *United States ex rel. Cericola v. Fed. Nat'l Mortgage Ass'n*, No. 2:03-cv-02994 (C.D. Cal. Sept. 30, 2009) (attached hereto as Ex. 2), shows – not as the excerpt selectively cited by Herron reveals.

Claims Act case," *Boone v. MountainMade Found.*, 684 F. Supp. 2d 1, 7 (D.D.C. 2010) (*quoting Yesudian*, 153 F.3d at 739-40) (emphasis added), or engaging in "lawful acts . . . *in furtherance of* [an] effort[] to stop 1 or more violations" of the FCA.  31 U.S.C. § 3730(h)(1) (emphasis added); *see also* Renewed Mot. at 9.

Regardless of Herron's ultimate ability to bring a successful FCA relator or retaliation claim, her allegations and reliance on a statute which provides a "specific and significant remedy for the party aggrieved by its violation," *Elemary*, 533 F. Supp. 2d at 136, preclude her wrongful discharge claim.  This is not an attempt by Defendants to dictate which claims Herron must bring.  Rather, the Court must decide, after a review of Herron's allegations, whether Herron *might* have an alternate means of relief under the FCA based on her fraud and misrepresentation claims.  If so, she cannot "eschew the administrative remedy and instead obtain recovery against [Defendants] on a tort theory of wrongful discharge under the narrow 'public policy' exception to the employment-at-will doctrine." *Kassem v. Washington Hosp. Ctr.*, 513 F.3d 251, 255 (D.C. Cir. 2008).  If Herron ultimately succeeds on her potential FCA relator and/or retaliation lawsuit against Defendants, then her alleged injuries will be remedied as the legislative branch intended.  If she is unable to bring a successful FCA action – as she believes is the case – she cannot, under *McManus, Sorrells* and *Tribble*, rely on the FCA as public policy for the narrow common law exception to the at-will employment doctrine.

************

Herron argues that even if the FCA does not provide the basis for her public policy argument, she may still rely on three other statutes: The Major Fraud Act, 18 U.S.C. § 1031, the federal false statements statute, 18 U.S.C. § 1001(a), and the Emergency Economic Stabilization Act of 2008, Pub.L. NO. 110-343, 122 Stat. 3765 (Oct. 3, 2008) (codified at 12 USC §§ 5201

et seq.) ("EESA").  *See* Second Opp. at 7-8.  As we next discuss, none of these statutes are of help to Herron as a source for the public policy exception that she seeks to have this Court establish here.

> **2.      The Major Fraud Act and The Federal False Statements Statute Cannot Be Sources of Public Policy for Herron's Allegations**

The Major Fraud Act, 18 U.S.C. § 1031, and the federal false statements statute, 18 U.S.C. § 1001(a), cannot provide a source of public policy for Herron's wrongful discharge claim.  First, Herron cites no D.C. case law – and Defendants are aware of none – in which either statute was found to be a source of public policy for the narrow exception to the at-will employment doctrine. A public policy exception based on the Major Fraud Act seems particularly inappropriate, because – like the FCA – it contains a remedial scheme for plaintiffs who have been retaliated against for aiding in the prosecution of their employer's violation of the Act.  *See* 18 U.S.C. § 1031(h).

Second, and more importantly, the Court should refuse to carve out an exception to the at-will employment doctrine here because the public policy behind the Major Fraud Act and the false statements statute is the *same* as the public policy behind the FCA: that is, the public policy against making false or fraudulent representations to the government.  *See* 18 U.S.C. § 1031(a) (prohibiting a party from attempting "to obtain money or property by means of *false or fraudulent pretenses, representations, or promises*") (emphasis added); 18 U.S.C. § 1001(a) (prohibiting the making of "any materially *false, fictitious, or fraudulent statement or representation*" or "any *false writing or document* knowing the same to contain any materially false, fictitious, or fraudulent statement or entry") (emphasis added); 31 U.S.C. § 3729(a)(1)(B) (prohibiting the making or using of "a *false record or statement material* to a false or fraudulent claim") (emphasis added).  In fact, Herron herself has acknowledged that the public policy underlying all three of these statutes relates to making false or misleading statements to the government.  *See* First Opp. at 24-25 (claiming that EESA embodied public policy against "waste," while the other three statutes embodied public policy against "false or fraudulent representations to" and "deliberately concealing information from" the government).

Herron's re-characterization of the public policy underlying 18 U.S.C. § 1031(a) and 18 U.S.C. § 1001(a) in her Second Opposition as relating to "waste" (and omitting all references to fraud or false representations), *see* Second Opp. at 8, is a transparent attempt to manipulate these statutes to fit her reconstituted claims.  She has alleged that the "waste" she complains of arose from Defendants' false or fraudulent representations to the government.  *See, e.g.*, First. Opp. at 1 (under "Statement of Facts," Herron alleges that Fannie Mae "was engaging in a gross waste of public funds and violating its statutory obligations *by making false and misleading statements to Treasury*") (emphasis added).[7]  She cannot now attempt to recast her claims – and these statutes – as pertaining only to "waste."[8]

Under D.C. law, courts must evaluate public policy exceptions to the at-will employment doctrine on a "case-by-case basis," *Carl,* 702 A.2d at 164, and the circumstances here militate against creating such an exception for Herron.  The FCA, Major Fraud Act, and the federal false statements statute all clearly proscribe the making of *false* or *fraudulent* claims or representations.  Because at least one of these statutes (*i.e.*, the FCA) provides Herron with an avenue of relief for her injuries allegedly suffered in violation of the public policy underlying all *three* of these statutes, there is no

---

[7]     For this reason, *Payne v. District of Columbia*, No. 10–0679, 2011 WL 1158724 (D.D.C. Mar. 29, 2011), is inapposite here.  In *Payne,* the plaintiff's allegations only concerned "waste," and failed to plead a single fraudulent or false representation or claim to the government.  *See* 2011 WL 1158724 at *7.  Here, Herron's allegations are full of contentions that Defendants made false and fraudulent representations and claims to the government.  *See, e.g.*, First Opp. at 2, 25.; Ex. 1 at 4.  Further, the plaintiff in *Payne* actually brought an FCA claim, and so the court was able to properly evaluate the sufficiency of the pleadings before it (and not the sufficiency of a putative future FCA case, as Herron would have the Court do here).  Finally, the court in *Payne* noted that it would not dismiss the plaintiff's wrongful termination claim because it was not precluded by the Comprehensive Merit Personnel Act, and the defendants had "advance[d] no other argument with respect to the sufficiency of" the claim.  2011 WL 1158724 at *11.  That is clearly not the case here, where Defendants have vigorously challenged the sufficiency of Herron's wrongful discharge claim based on the availability of a remedy under the FCA.

[8]     Of course, if Herron were to amend her pleadings to retract her allegations regarding Defendants' purported fraud and misrepresentations, she could not rely upon the FCA, Major Fraud Act or false statements statute as public policy bases for her wrongful termination claim, as these statutes all clearly require some allegation of false or fraudulent conduct.

need – and this Court should decline – to create an exception to the at-will employment doctrine based on the public policy of either the Major Fraud Act or false statements statute. *See Nolting*, 621 A.2d at 1389 ("this is not a case where the "*only* possibility for compensation for [Herron's] claimed injury is the recognition by this [C]ourt of a public policy tort expansive enough to cover her situation.")

### 3.    EESA Is Not a Source of Public Policy for Herron's Allegations

Finally, EESA cannot provide a source of public policy for Herron's wrongful discharge claim. First, Herron cites no case – and Defendants are aware of none – in which any court has ever held that EESA may constitute a source of public policy for a wrongful discharge claim. As Defendants have explained, the public policy relied upon must be "a clear . . . *identifiable policy* that has been '*officially declared.*'" Memorandum in Support of Defendants' Rule 12(b)(6) Motion to Dismiss the Complaint ("First Mot. to Dismiss") (Doc. # 6-2) at 20 (*quoting Carl*, 702 A.2d at 163 (emphasis added)). Further, that policy "[must be] "*carefully tethered" to rights officially recognized in statutes or regulations. . .*" *Id.* Herron has failed to identify any clearly proscribed public policy that is "carefully tethered" to any rights recognized in the EESA. *See* First Mot. to Dismiss at 22-24; First Reply at 10-12.

Indeed, EESA itself provides that its purpose is "to restore *liquidity* and *stability* to the financial system of the United States." 12 U.S.C. § 5201(1) (emphasis added). The statute's purpose is unrelated to any policy against fraud, false representations or "waste," and Herron's attempt to read this public policy into the statute's broad language requiring the Secretary of the Treasury to "minimize any potential long-term negative impact on the taxpayer," Second Opp. at 8 (*citing* 12 U.S.C. § 5223(a)(1)), is simply too far-fetched. EESA does not give Herron any rights or impose any specific duty on her to take the actions which led to her alleged retaliation; nor does it clearly prohibit the particular conduct Defendants allegedly engaged in. *See* First Reply at 11. Accordingly,

recognition of a public policy exception under EESA in this case would expand the narrow exception to the at-will employment well beyond its intended limits, and the Court should reject Herron's invitation to do so. *See Sorrells*, 565 A.2d at 289 (plaintiff's request that the court "'broaden' the policies expressed in the [DCHRA]" as a basis for the public policy exception was "an invitation to judicial activism, which [the court] unequivocally decline[d].'")

As already noted, under D.C. law, the Court "*must* decide if [Herron] has . . . alleged a public policy exception to the at-will employment doctrine" in order to rule on Defendants' Renewed Motion. *Duncan*, 702 A.2d at 210 (emphasis added). As set forth in this brief and in Defendants' Renewed Motion, Herron has failed to state a valid public policy exception because she has an alternate means of pursuing relief for the public policy against fraud and misrepresentation which was allegedly violated by Defendants. Further, the policy statements in EESA are unrelated to – and certainly not "carefully tethered" to – any public policy against "waste." Therefore, the Court must find that Herron has failed to state a claim for wrongful discharge against Fannie Mae.

**B.    Herron's Potential FCA Complaint Bars Her *Bivens* Claim**

Like Herron's wrongful discharge claim, Herron's *Bivens* claim cannot go forward simply because she does not believe she could make out a successful FCA claim. *See* Renewed Mot. at 11 (a *Bivens* remedy is inappropriate per the "special factors" consideration <u>even if the scheme forecloses the recovery of damages altogether</u>) (*citing Schweiker v. Chilicky*, 487 U.S. 412, 423-25 (1988)). Defendants have clearly demonstrated that FCA relator and retaliation claims lie open to Herron to pursue the relief she seeks, and this is therefore not a case where she has "no other means of obtaining redress." *Id.* at 10 (*quoting Wilson v. U.S. Dep't of Transp.*, No. 10-490, 2011 WL 11500, *4 (D.D.C. Jan. 4, 2011) (citations omitted)). Accordingly, the Court should dismiss Herron's *Bivens* claim.

## II.   HERRON'S REMAINING CLAIMS FAIL AS A MATTER OF LAW

### A.   Herron's Tortious Interference Claim Fails As A Matter Of Law

In her Second Opposition Herron once again fails to address the fact that she could not have had *any* valid business expectancy at Fannie Mae or Treasury, based on her own admissions in her contract with Fannie Mae and in an e-mail.  *See* First Mot. to Dismiss, Ex. A at 2 (Herron's admission in her contract with ICon that she had no expectancy to be employed by Fannie Mae); *id.* Ex. C (Herron's email admission that she was conflicted and barred from working at Treasury because of her contractor work for Fannie Mae).

Further, *Riggs v. Home Builders Institute*, 203 F.Supp.2d 1 (D.D.C. 2002), on which Herron relies to support her tortious interference claim, specifically held that the plaintiff could *not* maintain a tortious interference with a *prospective* business expectancy claim based on an at-will relationship. *Id.* at 24-25 (dismissing tortious interference claim against corporate and individual defendants).  *See also McManus v. MCI Communications Corp.*, 748 A.2d 949, 957 (D.C. 2000) ("This court never has held that an employee can maintain a suit for interference with prospective advantage where her expectancy was based on an at-will relationship, and we do not do so now"); *Zelaya v. Unicco Serv. Co.*, 587 F. Supp. 2d 277, 287 (D.D.C. 2008) (refusing to recognize a cause of action for tortious interference with prospective business expectations even against a third party unrelated to the employer).  Under *Riggs*, *McManus*, and *Zelaya*, Herron's claim for tortious interference based on any prospective business expectancy with Fannie Mae must be dismissed.

Finally, Herron's repeated argument that Defendants have "misstated the law" with respect to tortious interference claims by arguing that allegations supporting malice or other egregious behavior are required before a supervisor or employee will be found liable for interfering with a contract to which his or her employer is a party, *see* Second Opp. at 20, is simply false.  The cases cited by Herron all discuss a showing of "malice" by the plaintiff alleging a tortious interference

claim against a person who is not considered a third party to the contract.  *See Nickens v. Labor Agency of Metro. Wash.*, 600 A.2d 813, 820 (D.C. 1991) ("A corporate officer's improper interference with contractual relations of a corporate employee with *actual malice* or for his own benefit . . . deserves no protection") (emphasis added); *Riggs*, 203 F.Supp.2d at 26 (same) (*quoting Nickens*); *Sorrells*, 565 A.2d at 290 ("claims of justification [of an improper purpose] are vitiated if *malice* is proved") (emphasis added).

Herron's claim that *Nickens* and *Sorrells* are somehow more correct than the recent case law cited by Defendants, *see* Second Opp. at 20, is deceptive, particularly in light of the fact that the D.C. Court of Appeals has interpreted *Sorrells* as requiring *malice*.  *See Paul v. Howard Univ.*, 754 A.2d 297, 309 (D.C. 2000) ("in order to recover for interference with contractual relations by a supervisor who is not an officer, a plaintiff *must present evidence that the supervisor acted with malice.*") (*citing Sorrells*, 565 A.2d at 291-292) (emphasis added).  Herron's attempt to distinguish Judge Bates' decision in *Hopkins v. Blue Cross and Blue Shield Ass'n*, No. 10-900, 2010 WL 5300536 (D.D.C. Dec. 21, 2010) on the facts of the case, *see* Second Opp. at 21, has no bearing on the legal standard enunciated in that case: to show intentional interference, "the conduct at issue must rise to the level of 'egregious conduct such as libel, slander, physical coercion, fraud, misrepresentation, or disparagement.'"  2010 WL 5300536 at *7-8 (holding that even if the defendant's actions rose to that level, the plaintiff's claim must be dismissed because "an employer cannot interfere with its own contract.")   Herron has not alleged *any* facts suggesting egregious conduct on the part of any Defendants; thus, she cannot establish a tortious interference claim against Defendants as an at-will employee.  Accordingly, the Court should dismiss her claim.

### B.   Herron's Civil Conspiracy Claim Fails As A Matter Of Law

As established in this brief, and in Defendants' prior pleadings, Herron's failure to adequately allege any underlying tort (*i.e.*, her wrongful discharge or tortious interference claim)

precludes her civil conspiracy claim.  *See, e.g.*, Renewed Mot. at 14; First Mot. to Dismiss at 43-44.

Moreover, in her Second Opposition, Herron repeats her bald, unsubstantiated allegations that

Defendants "acted in their own interests, in order to benefit themselves," Second Opp. at 22, and

that their actions constituted "joint efforts to block her from ever working at Treasury."  *Id.* at 23.

These conclusory allegations plainly do not rise to the level of specificity required to support a claim

for civil conspiracy.  *See Acosta Orellana v. CorpLife Int'l*, 711 F. Supp. 2d 81, 114 (D.D.C. 2010)

("[M]erely asserting the existence of an agreement without providing any facts suggesting that the

defendants were acting in concert in furtherance of a shared goal renders a complaint deficient"); *see*

*also* First Mot. to Dismiss at 24-25.

Additionally, Herron's selective reference (without citation) to parts of Fannie Mae's internal

investigative report, *see* Second. Opp. at 23, is inappropriate in light of the Court's order that the

report will not be considered on Defendants' Motion to Dismiss.  *See* Nov. 11, 2010 Order (Doc. #

22), at 2.  Accordingly, the Court should dismiss Herron's civil conspiracy claim for failure to state a

claim.

III.   **CONCLUSION**

For all the reasons cited above, and in Defendants' prior pleadings, the Court should dismiss

Herron's Complaint in its entirety.

Respectfully submitted,

_/s/ Ira T. Kasdan_

Ira T. Kasdan (D.C. Bar # 292474)
Joseph D. Wilson (D.C. Bar # 466652)
Elizabeth C. Johnson (D.C. Bar # 987429)
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, D.C.  20007
(202) 342-8400 (phone)
(202) 342-8451 (facsimile)
Email:  ikasdan@kelleydrye.com
            jwilson@kelleydrye.com
            ejohnson@kelleydrye.com

Damien G. Stewart (D.C. Bar # 465266)
FANNIE MAE
3900 Wisconsin Avenue, N.W.
Washington, D.C. 20016-2892
(202) 752-6871 (phone)
(703) 997-7405 (facsimile)
Email:  damien_g_stewart@fanniemae.com

*Counsel for Defendants*

Dated:  April 15, 2011

### CERTIFICATE OF SERVICE

I hereby certify that, on the 15th day of April, 2011, I caused the foregoing to be electronically filed using the Court's CM/ECF system, which will then send a notification of such filing (NEF), to the following counsel for the Plaintiff:

> Lynne Bernabei
> David M. Wachtel
> Alan R. Kabat
> BERNABEI & WACHTEL, PLLC
> 1775 T Street, N.W.
> Washington, D.C.  20009-7124
>
> *Counsel for the Plaintiff*

> _____/s/ Ira T. Kasdan_____
> Ira T. Kasdan (D.C. Bar # 292474)
> KELLEY DRYE & WARREN LLP
> 3050 K Street, N.W., Suite 400
> Washington, D.C.  20007
> (202) 342-8400 (phone)
> (202) 342-8451 (facsimile)
> Email: ikasdan@kelleydrye.com
>
> *Counsel for the Defendants*