UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————
)
**CAROLINE HERRON,**                                   )
)
**Plaintiff,**                                         )
)
**v.**                                                 )          **Civil Action No. 10-00943 (RMC)**
)
**FANNIE MAE,** *et al.*,                              )
)
**Defendants.**                                        )
———————————————————————)

## REPLY IN SUPPORT OF MOTION OF THE FEDERAL HOUSING FINANCE AGENCY TO INTERVENE AND TO STAY THESE PROCEEDINGS FOR AT LEAST 21 DAYS

On May 12, 2011 — just seven days after the Court denied defendant Federal National Mortgage Association's ("Fannie Mae") renewed motion to dismiss — the Federal Housing Finance Agency ("FHFA" or "Conservator"), in its capacity as Conservator for Fannie Mae, moved to exercise its federal statutory right to intervene in this case. Despite the Conservator's statutory right as to intervene in this matter, plaintiff opposes FHFA's motion. Relying on a single, forty-four-year-old, out-of-circuit district court decision factually inapposite to the circumstances at hand, plaintiff claims that FHFA's motion to intervene is untimely. Plaintiff's Opposition ("Opp.") at 5. Plaintiff is mistaken. Precedent in this Circuit confirms that the Conservator's motion is timely and should be granted. *See* Section I *infra*.

Plaintiff also incorrectly asserts that FHFA has failed to show that its participation as a party is required or that intervention in this case would be useful or necessary to the Court; indeed, plaintiff claims that the Conservator's motion represents a "bad[-]faith delaying tactic." Opp. at 4-6. As discussed in FHFA's opening brief and in Section II below, the Conservator's

1

direct involvement in this matter will aid the Court in properly and efficiently resolving the issues presented at this stage and going forward, and will also allow the Conservator to protect its Congressionally mandated interests (and thereby fulfill its statutory mission to "preserve and conserve the assets and property" of the conservatorship).  For instance, the Conservator has identified precedent in this Circuit concerning the appropriate analysis for determining whether an entity is a private or government actor in a particular case, but it has not previously been brought to the Court's attention.  *See* Section II.A. *infra.*

The Conservator believes consideration of these decisions will aid the Court in considering what the Court has described as "[t]he outstanding issue that will govern this case," which is "whether Fannie Mae is, or was at the relevant time period, a 'private' actor or a 'federal' actor" in the context of plaintiff's claims.  *See* Order (May 5, 2011) (Dkt. No. 45) at 1-2.  Furthermore, given the breadth and burden of the discovery plaintiff has indicated she will seek — including the deposition of FHFA's Acting Director, senior officials of the U.S. Treasury, and senior executives of Fannie Mae — the Conservator's direct participation in the case will likely result in more expeditious and focused ventilation of legitimate discovery issues, and, the Conservator respectfully submits, less wasteful expenditure of resources on discovery questions that are of limited relevance to the matters before the Court.  *See* Section II.B.

Finally, FHFA's counsel properly met and conferred telephonically with counsel for plaintiff before filing the Motion and accurately represented the position plaintiff's counsel communicated.  Counsel and FHFA take their duties under Local Rule 7(m) seriously, and are confident that upon consideration of a complete account of events, the Court will conclude that counsel complied fully with the letter and the spirit of the Rule.  *See* Section III.

In short, the Court should grant FHFA's Motion To Intervene and use its discretion to stay the proceedings (except for the May 23 status conference). A stay of at least 21 days is necessary to allow the Conservator to consider its litigation strategy, including whether to file a dispositive motion, particularly in light of the case precedent described below in Section II.A.

## I.     FHFA'S MOTION TO INTERVENE IS TIMELY

Until May 5, 2011, the implications of this case to the Conservatorship were inchoate, contingent, and uncertain. In February, Fannie Mae's initial motion to dismiss the case in its entirety had been denied; the Court's Order on that motion identifies the question "whether Fannie Mae is a federal or non-federal entity" as one of interest to the Court, but notes that Fannie Mae's motion was denied "without prejudice." Order (February 10, 2011) (Dkt. No. 30) at 2. Accordingly, Fannie Mae promptly submitted a renewed motion to dismiss the action "in its entirety for failure to state a claim." Mem. to Renewed Mtn to. Dismiss (March 11, 2011) (Dkt. No. 33-2) at 15. Until May 5, 2011, when the Court denied Fannie Mae's Renewed Motion to Dismiss and suggested that certain positions "the government appears to have argued" in other cases might be relevant here, the Conservator did not believe any of interests would be significantly implicated. Order (May 5, 2011) (Dkt. No. 45) at 2.

The D.C. Circuit has explained that "the relevant time from which to assess [the] right of intervention is when [the applicant] knew or should have known that any of its rights would be directly affected by the litigation." *Nat'l Wildlife Federation v. Burford*, 878 F.2d 422, 433-34 (D.C. Cir. 1989), *rev'd on other grounds*, 497 U.S. 871 (1990)). "The appropriate starting point for the timeliness inquiry is not the date that the would-be intervener became aware of the existence of the litigation, but the date the intervener became aware of the implications of the litigation." *Roeder v. Islamic Republic of Iran*, 195 F. Supp. 2d 140, 156 (D.D.C. 2002).

Accordingly, courts have found motions to intervene as timely that were filed post-judgment or on the eve of trial. *See United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977) (post-judgment motion for intervention timely despite intervener's awareness of litigation where it became clear that named representatives would not adequately represent unnamed class members on appeal); *Smoke v. Norton*, 252 F.3d468, 470-71 (D.C. Cir. 2001) (holding that a post-judgment motion for intervention was timely when applicant promptly moved for intervention after it learned that government would not appeal from district court's adverse ruling and thus no longer adequately represented the movant's interests); *Hardin v. Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009) (finding motion to intervene filed after party filed motion for summary judgment as timely); *Roeder*, 195 F. Supp. at 150-51 (finding motion by United States to intervene filed after a default judgment and on the eve of trial on the issue of damages to be timely). Therefore, whether FHFA's motion to intervene is timely should be judged not on when the lawsuit was filed, but when FHFA became aware of the implications of this litigation for the Conservator.

FHFA is a federal government agency that has limited resources. As such, the Conservator intervenes in very few of the hundreds of cases that involve Fannie Mae. FHFA intervenes almost exclusively in those cases where issues related to the Conservatorship come into play. Thus, it was not until the Court denied Fannie Mae's renewed motion to dismiss and ordered limited discovery as to the specific question of whether Fannie Mae was a public employer that the Conservator became aware of the implications of this litigation and determined that its direct participation in the case would aid the Court on this issue. FHFA then promptly moved to intervene, just seven days after the Court denied Fannie Mae's renewed motion to dismiss.

In arguing that FHFA's Motion To Intervene was untimely, plaintiff relies on a dated district court case from another Circuit, a case whose facts bear no resemblance to the circumstances of this case.  *See* Opp. at 5 (citing *Chemical Bank N.Y. Trust Co. v. S.S. Westhampton*, 268 F. Supp. 169, 172 (D. Md. 1967)).  In *Chemical Bank*, the court asked the Department of Justice three different times to express its views in connection with a proceeding for the sale of a ship, and each time, the Government informed the court it wished to take no position in the case.  *Id.* at 173 n.10.  Only after having been asked three times to state its position and having declined in each instance to assert a position, did the Government then move to intervene; unsurprisingly, the court rejected the motion as untimely.  *Id.*  Here, by contrast, FHFA has never been asked by the Court to come forth and state its position in the current litigation or otherwise to participate in the case.  When FHFA learned that the Court had denied Fannie Mae's renewed motion to dismiss and ordered limited discovery into the issue of whether Fannie was a private or government actor, FHFA moved to intervene in the case without delay.

Furthermore, nowhere in plaintiff's Opposition does she articulate any prejudice that would result were the Court to grant FHFA's Motion to Intervene, nor could she.  As discussed below in Section II.B., plaintiff has given every indication that she will propound voluminous, burdensome, and irrelevant discovery aimed directly at FHFA.  Plaintiff cannot claim prejudice or surprise that FHFA moved to intervene when it was plaintiff's own litigation strategy and discovery tactics that prompted FHFA to move to intervene in the first place.  No prejudice would result to either party were the Court to grant FHFA's Motion To Intervene and to grant the very limited stay that FHFA has requested.  To the contrary, the Conservator's direct participation is likely to result in more rapid and more complete ventilation of discovery issues — especially those presented at this initial stage where the appropriate scope of discovery

concerning the Conservator's relationship to Fannie Mae is likely to be disputed — and hence more expeditious and efficient progress toward resolution of this action.

## II.   FHFA'S INTERVENTION INTO THE ACTION WILL ALLOW THE CONSERVATOR TO PROTECT ITS INTERESTS DIRECTLY AND EFFICIENTLY

Here, as Conservator of Fannie Mae, FHFA has an important interest in participating in any action where the issue of Fannie Mae's status as a private or government actor, and the implications (if any) of the Conservatorship on that issue, are in dispute.  To protect that interest, the Conservator respectfully intends to bring to the Court's attention in-Circuit case law directly on point that has not previously been identified in the briefing.  *See* Section II.A. *infra*.

In addition, to not only protect its interests but also to fulfill its statutory duty to preserve and conserve the assets and property in the conservatorship, the Conservator respectfully submits that it must participate in the determining the scope and timing of discovery relating to the Conservatorship.  In that regard, plaintiff has given every indication that she will propound extremely burdensome discovery on FHFA.  To give one prominent example, counsel for plaintiff disclosed during a meet-and-confer session that she intends to seek to depose the Acting Director of FHFA.  FHFA respectfully submits both that such extraordinary, burdensome, and vexatious discovery is not warranted in this matter, and that FHFA's intervention in the case would bring such issues to resolution more promptly and efficiently.

### A.   Applicable Case Law Indicates That Fannie Mae Should Be Viewed As A Private Actor In This Case.

FHFA recognizes that in proceeding on Fannie Mae's motions to dismiss, Fannie Mae and plaintiffs argued whether Fannie Mae should be considered a government or private actor for purposes of this litigation; FHFA is aware that the Court denied Fannie Mae's motions to dismiss

6

and allowed discovery into the issue to proceed.[1]  However, important D.C. Circuit precedent

that provides a useful framework for the analysis, and that demonstrates Fannie Mae is a private

employer, appears not to have been considered.

      In *Alley v. Resolution Trust Corporation*, 984 F.2d 1201 (D.C. Cir. 1993), the D.C.

Circuit held that the Federal Asset Disposition Association ("FADA") — an entity created and

chartered by one agency of the federal government (the Federal Home Loan Bank Board, or

FHLBB), and whose stock was wholly owned by another federal agency (the Federal Savings

and Loan Insurance Corporation, or FSLIC) — could not properly be deemed a governmental

employer for purposes of ERISA's "government plan" exemption.  In reaching that conclusion,

then-Judge Ruth Bader Ginsberg noted that:

> To resolve this case, *we do not engage in all-purpose
> characterization*.  As counsel for plaintiffs acknowledged at oral
> argument, an entity may be governmental for one purpose and
> nongovernmental for another.  We therefore home in on the
> question whether FADA counts as a government instrumentality
> for purposes of the ERISA "governmental plan" exemption. …
> *[I]n its employment relationships — the area most relevant for
> ERISA purposes — FADA functioned not like a governmental
> agency, but like a private enterprise.*  We therefore conclude that
> FADA is not exempt from ERISA.

*Id.* at 1205-06 (emphasis added).  In *Alley*, therefore, the D.C. Circuit recognized that even an

entity that might be viewed as governmental for some purposes can have *private employment*

---

[1] The Conservator concurs with Fannie Mae's position that if the test from *Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374 (1995) is applied, Fannie Mae must be deemed private because the conservatorship, and whatever level of control over Fannie Mae the conservatorship grants the federal government, is necessarily *temporary*.  Moreover, to whatever extent a factual record might be deemed necessary to apply the *Lebron* test, the Conservator respectfully submits that that record should be narrowly limited to such facts as are necessary to establish whether Fannie Mae has been structured in such a way as to place it under the *permanent* control of the federal government.

*relationships*.  In holding that FADA was *not* to be treated as a governmental employer for

ERISA purposes despite its "undeniable public coloration," Judge Ginsburg took note that:

> Measured by the terms and conditions of their employment, FADA
> personnel far more closely resembled private sector employees
> than they did government workers.  Like employees of 'ordinary'
> federally chartered S&L's, FADA's employees were outside the
> civil service system, and were not subject to personnel rules or
> restrictions on salaries and benefits imposed generally on federal
> employees.  Indeed, both sides acknowledge that a major reason
> for FADA's creation was to make possible the engagement of
> skilled personnel by offering salaries commensurate with those in
> the private sector.

*Id*.  Here, as in *Alley*, plaintiff's claims center on the employment relationship, and the attributes

Judge Ginsburg found dispositive in holding FADA to be a private employer apply equally to

Fannie Mae.  Moreover, unlike in *Alley*, neither the Conservator nor Fannie Mae should be

understood to concede that Fannie Mae can properly be deemed a public entity for *any* relevant

purpose; FHFA submits that based on *Alley*, Fannie Mae is a private employer.

To the extent that the *Alley* analysis requires a factual context, the Conservator believes

that the set of facts that would be of any potential relevance is extremely limited, and that such

facts are not reasonably in dispute.  For example, it cannot reasonably be disputed (and the Court

can take judicial notice) that like FADA employees, Fannie Mae employees are outside the civil

service system and are not subject to personnel rules or restrictions on salaries and benefits

imposed generally on federal employees, and that like FADA, Fannie Mae engages and retains

skilled personnel by offering compensation commensurate with that available in the broader

private sector.  *See*  12 U.S.C. § 1723a(d)(2).

FHFA's intervention is necessary so that it has the opportunity to more fully brief and

explain its position on whether Fannie Mae should be considered a private or public employer

based on the principles laid out in *Alley* and its progeny.[2]

### B.      Intervention Is Necessary So That FHFA May Adequately Protect Its Interest In Being Free From Burdensome And Vexatious Discovery.

Plaintiff has given every indication that she will propound extremely burdensome

discovery concerning the issue of whether Fannie Mae is a private or government actor.  Indeed,

Plaintiff has already done so.  As a result, FHFA has an important interest in preventing

burdensome, costly and vexatious discovery that may impair the conservatorship estate.

The discovery requests plaintiff served on Fannie Mae in February are extraordinarily

broad and plainly relate to the conservatorship.  For example, plaintiffs' requests:

> Documents Request No. 45:  All meetings and communications
> concerning or relating to the decision of the United States
> government to impose a conservatorship on Fannie Mae in or
> about September 2008, including but not limited to all documents
> setting out Fannie Mae's understanding or agreements as to the
> terms and conditions of the conservatorship.

---

[2] Other courts in this Circuit have employed the *Alley* analysis in determining whether an entity is properly deemed as public or private entity in non-employment matters.  *See, e.g., U.S. Leasing Corp. v. Resolution Trust Corp.*, 825 F. Supp. 336, 337 (D.D.C. 1993) (applying the analysis set forth in *Alley* and concluding that for purposes of an administrative claims process, FADA was a private "depository institution" and not a federal agency).  Significantly, the D.C. Circuit and the district court reached their decisions in *Alley* and *U.S. Leasing* — holding that FADA was non-governmental for the purposes at issue in those cases — *after* the district court had already dismissed a *qui tam* action against FADA under the False Claims Act on the grounds that "It is clear beyond contention that any monetary recovery to the 'United States' through a lawsuit against FADA would indeed empty one agency pocket to augment another of the same suit."  *Juliano v. Federal Asset Disposition Association*, 736 F. Supp. 348, 352 (D.D.C. 1990). While the Conservator would welcome the opportunity to address the record from the *Cericola* case to which plaintiff seems to attach great significance — the Conservator respectfully believes plaintiff's briefing here contains significant misinterpretations of the record in that case — the judicial record on FADA's status conclusively refutes plaintiff's suggestion that anything in the *Cericola* record is relevant to Fannie Mae's status as a public or private employer.

> Document Request No. 50:  FHFA's responses to Fannie Mae's notifications and requests that FHFA approve Fannie Mae's decisions, actions, contracts, policies, operations, staffing, compensation, and dissemination of documents for internal use or public release.
>
> Document Request No. 59:  All documents relating to or concerning the following statements made by Edward DeMarco, the FHFA Acting Director, in his testimony to Congress on September 15, 2010 . . .
>
> Interrogatory No. 2:  Identify the factual basis for the statements made by Edward DeMarco, the FHFA Acting Director, in his testimony to Congress on September 15, 2010 . . .

Each of these requests is aimed directly at FHFA, and responding to such overly broad requests would be burdensome and costly, and would interfere with the Conservator's responsibilities. The waste and burden that such overly broad discovery would entail is underscored by the fact that many of the potentially relevant facts relating to the status of Fannie Mae as an employer are not reasonably subject to dispute.  FHFA and Fannie Mae proposed to plaintiff's counsel that the parties draft fact stipulations that would eliminate the need to take such costly and onerous discovery, but plaintiff (after some equivocation) disclaimed any interest in even exploring potential stipulations.

In addition to propounding burdensome document requests and interrogatories, plaintiff informed counsel for FHFA and Fannie Mae that she intends to notice the deposition of Edward DeMarco, the Acting Director of FHFA, unnamed senior Treasury officials, and senior executives of Fannie Mae.  While any such depositions seem extremely likely to be unduly burdensome in relation to the potentially relevant information, if any, to which they might lead, *see* Fed. R. Civ. P. 26 (b)(2)(C), FHFA has a particular interest in protecting its Director, its other senior staff, and all of its employees and officers from abusive litigation tactics.  There is

10

substantial case law in which courts have refused to allow depositions of agency heads, like

Mr. DeMarco, particularly where the same information could be gathered from another source or

through a less intrusive mechanism.[3]  Plaintiff's rhetoric aside, there is no "bad faith" in seeking

to put oneself in a position to promptly and efficiently address discovery issues of such apparent

magnitude.[4]

In opposing FHFA's request to intervene plaintiff attempts to shut FHFA out of the case,

but at the same time plaintiff seeks to pull FHFA into the case by threatening to notice the

deposition of FHFA's Acting Director.  Plaintiff cannot have it both ways.  Intervention by

FHFA in this case is required so that the Conservator may adequately protect its own interests as

well as those of its employees and officers from burdensome and vexatious discovery tactics.

## III.    FHFA COMPLIED WITH LOCAL RULE 7(m)

Counsel for FHFA complied with Local Rule 7(m)'s requirement to meet-and-confer

before filing its Motion To Intervene.  Plaintiff's recitation of events is unfortunately incomplete;

counsel for the Conservator respectfully submits that the following more complete account puts

to rest any issue regarding Local Rule 7(m):

- On Thursday, May 12, 2011 at approximately 3:30 p.m., counsel for the Conservator (Mr. Johnson) telephoned Bernabei & Wachtel and asked to speak with Ms. Bernabei about this matter.  The person who answered the call stated

---

[3] *See Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 1, 4 (D.D.C. 1998) (granting protective order to prevent depositions of high-ranking White House officials); *Community Fed. Savings & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 96 F.R.D. 619, 621-21 (D.D.C. 1983) ("[A]n agency official . . . is generally not to be required to submit to an oral discovery deposition in connection with civil litigation); *see also In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) ("High ranking government officials have greater duties and time constraints than other witnesses . . . [T]he Supreme Court has indicated that the practice of calling high officials as witnesses should be discouraged.") (citing *United States v. Morgan*, 313 U.S. 409 (1941)).

[4] *See* Opp. at 1 (mischaracterizing FHFA's motion as a "delaying tactic"); *id*. at 4 ("bad faith delaying tactic"); *id*. at 5 ("entirely improper"); *id*. at 7 n.1 ("bad faith basis").

that Ms. Bernabei was out of the office, referred Mr. Johnson to Ms. Bernabei's partner, David Wachtel, and transferred the call to him.

- Mr. Johnson explained to Mr. Wachtel that Mr. Johnson had asked to speak with Ms. Bernabei about that case but had been connected to Mr. Wachtel due to Ms. Bernabei's absence from the office. Mr. Johnson informed Mr. Wachtel that the conservator planned to file later that day a motion to intervene and to stay the case for 21 days, and noted that the purpose of the call was to determine plaintiff's position regarding the motion.

- Mr. Wachtel is identified clearly as one of plaintiff's counsel on each of plaintiff's pleadings in this action — including the current submission in which plaintiff asserts that "FHFA's counsel made no attempt to 'discuss' the motion" with plaintiff's counsel.

- Mr. Wachtel stated that he was not able to provide plaintiff's position immediately, and noted that Ms. Bernabei and another partner in the firm, Alan Kabat, were more actively involved the case than Mr. Wachtel. Mr. Wachtel said he would pass the information on to one or both of them.

- At approximately 5:30 that evening, Ms. Bernabei left a voicemail message for Mr. Johnson stating that plaintiff did not believe a stay was necessary and asking for more information about the reasons for the Conservator's intervention.

- At approximately 7:30 p.m., Mr. Johnson called Ms. Bernabei but got her voicemail. Mr. Johnson left a message stating that he would be happy to discuss the motion, but that the Conservator intended to file it later that evening and understood that plaintiff did not consent to the motion.

- When Ms. Bernabei had not returned that message by approximately 8:30 p.m., Mr. Johnson submitted the motion to the clerk's office by e-mail. The motion includes the statement that "Counsel for the Conservator contacted counsel for each party concerning this motion earlier today. Counsel for Plaintiff did not consent to the motion."

The straightforward representations in the Conservator's motion are unquestionably true, and the events recounted above establish that counsel for FHFA complied with Local Rule 7(m).

## CONCLUSION

For the foregoing reasons and for those stated in FHFA's Motion To Intervene And To Stay These Proceedings For At Least 21 Days, the motion of FHFA, as Conservator for Fannie Mae, should be granted in its entirety.

Dated:  May 19, 2011                    Respectfully Submitted:


                                        ___/s/_____
                                        Howard N. Cayne (D.C. Bar # 331306)
                                        Asim Varma (D.C. Bar # 426364)
                                        Michael A.F. Johnson (D.C. Bar # 460879)
                                        ARNOLD & PORTER LLP
                                        555 12th Street, NW
                                        Washington, DC 20004
                                        T:  202-942-5000
                                        Email:  howard.cayne@aporter.com

                                        Stephen E. Hart (D.C. Bar # 033379)
                                        FEDERAL HOUSING FINANCE AGENCY
                                        1700 G Street, NW
                                        Washington, DC 20552
                                        Telephone: 202-414-3800
                                        Facsimile: 202-414-6504

                                        *Attorneys for the Federal Housing Finance Agency*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 19th day of May 2011, I caused the foregoing to be electronically filed using this Court's ECF system, which will then send a notification of such filing by electronic mail to counsel of record for plaintiffs and defendants:

Lynne Bernabei
Dave Wachtel
Alan Kabat
BERNABEI & WACHTEL, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7124

Ira T. Kasdan
Joseph D. Wilson
Veronica D. Jackson
KELLEY DRYE & WARREN LLP
3050 K Street N.W., Suite 400
Washington, D.C. 20007

Damien G. Stewart
Juan C. Lopez-Campillo
FANNIE MAE
3900 Wisconsin Avenue, N.W.
Washington, D.C. 20016-2892

_____/s/_____
Michael A.F. Johnson