IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAROLINE HERRON** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:10-CV-00943-RMC |
| ) | |
| **FANNIE MAE**, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MOTION FOR JUDICIAL NOTICE OF DOCUMENTS CITED IN PLAINTIFF'S OPPOSITION TO MOTIONS TO DISMISS**

Plaintiff Caroline Herron, pursuant to Rule 201, Fed. R. Evid., respectfully requests that this Court take judicial notice of the documents attached as Exhibits 1 through 3.

Pursuant to Local Civil Rule 7(m), counsel for plaintiff has communicated with counsel for defendants and intervenor, who stated that they consented to the request for judicial notice as to Exhibit 1 (the SEC order), but not as to Exhibits 2 and 3.

**I.   Legal Standard.**

Rule 201(b), Fed. R. Evid., provides that a court "shall take judicial notice" of any fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

**II.   Documents Submitted for Judicial Notice.**

The three documents that Ms. Herron is respectfully submitting for judicial notice are attached as Exhibits 1 through 3 to the Declaration of Alan R. Kabat (July 28, 2011) (attached and incorporated herein).

**A. Exhibit 1: SEC Emergency Order.**

The document attached as Exhibit 1 to the Declaration is cited in Plaintiff's Opposition to Motion to Dismiss to establish a historical fact that is taken from a source "whose accuracy cannot reasonably be questioned," i.e., an Emergency Order issued by the U.S. Securities and Exchange Commission, and publicly posted on its website.  See SEC, Release No. 58166, "Emergency Order Pursuant to Section 12(k)(2) of the Securities Exchange Act of 1934 Taking Temporary Action to Respond to Market Developments" (July 15, 2008) (online at: http://www.sec.gov/rules/other/2008/34-58166.pdf).

Ms. Herron cited this document, which prohibited certain short selling of Fannie Mae's securities during the 2008 financial crisis, to document the background leading up to the conservatorship unilaterally imposed upon Fannie Mae in September 2008.  See Pl.'s Opp., Mem. at 11.

The courts in this jurisdiction have recognized that agency filings and orders are proper subjects of judicial notice because they are matters of public record, on the agency's website. See DiLorenzo v. Norton, No. 07-cv-144 (RJL), 2009 WL 2381327, at *2 n.7 (D.D.C. July 31, 2009) ("Because SEC filings are matters of public record, they are properly the subject of judicial notice, and therefore the Court may, and will, consider them on review of defendants' motions to dismiss."); see also Hamilton v. Paulson, 542 F. Supp. 2d 37, 52 n.15 (D.D.C. 2008) ("due to the fact that the document is located on the website for the United States Office of Personnel Management, it is 'capable of accurate and ready determination by sources whose accuracy cannot reasonably be questioned,' and therefore subject to judicial notice by the Court").[1]

---

[1] FHFA also cited these decisions in its motion for judicial notice.

**B.  Exhibits 2 and 3: President Bush's and Secretary Paulson's Memoirs.**

The documents attached as Exhibits 2 and 3 to the Declaration are cited in Plaintiff's Opposition to Motions to Dismiss to establish certain historical facts that are taken from sources "whose accuracy cannot reasonably be questioned," i.e., the contemporaneous memoirs of President George W. Bush, *Decision Points* (2010), and Secretary of the Treasury Hank Paulson, *On the Brink: Inside the Race to Stop the Collapse of the Global Financial System* (2010).

Ms. Herron has cited the relevant excerpts from those memoirs, which are first-hand accounts, in order to show that when the Federal Housing Finance Agency (FHFA) and Treasury imposed the conservatorship and the Treasury funding program on Fannie Mae, they did so without Fannie Mae's advance knowledge or consent.  See Pl.'s Opp., Mem. at 11-12.

The U.S. Supreme Court and the lower courts have relied upon memoirs written by Presidents and agency heads to take judicial notice of historical facts.  The rationale, as a three-judge panel of this Court recognized, is that these memoirs are an important source of historical information, including information not otherwise available in the public record:  "Presidents and advisors are likely to write memoirs or to engage in public reminiscences disclosing communications that once were confidential."  Nixon v. Administrator of Gen. Serv., 408 F. Supp. 321, 346 (D.D.C. 1976) (three-judge panel), aff'd, 433 U.S. 425 (1977).

The *Memoirs of John Quincy Adams* (1874-1877) have been relied upon in at least four court decisions for its documentation of historical facts.  See Cheney v. U.S. Dist. Court for D.C., 541 U.S. 913, 916-17 (2004) (citing *Memoirs* for the proposition that Supreme Court "Justices have had close personal relationships with the President and other officers of the Executive"); Edwards v. United States, 286 U.S. 482, 487 & nn.2-3 (1932) (citing *Memoirs* for historical facts to document the practice of complying with the Constitution's Presentment

Clause); Oklahoma v. Texas, 260 U.S. 606, 626 (1923) (citing *Memoirs* to establish that the "historical data relating to the negotiations which culminated in the treaty show indubitably that those who framed it and signed it . . . intended to establish, and understood they were establishing, a bank boundary along all three rivers"); id. at 632 ("The conclusion . . . has full confirmation in available historical data [including the *Memoirs*] respecting the negotiations which attended the framing and signing of the treaty."); Hastings v. United States, 802 F. Supp. 490, 497 (D.D.C. 1992) (citing *Memoirs* for discussion of impeachment debates), vacated without opinion, 988 F.2d 280 (D.C. Cir. 1993).

The *Personal Memoirs of U.S. Grant* (1885-1886) have similarly been cited by the district courts for the documentation of historical facts. See, e.g., In re Agent Orange Product Liability Litig., 373 F. Supp. 2d 7, 133 (E.D.N.Y. 2005) (citing *Memoirs* for facts relating to conduct of Civil War), aff'd, 517 F.3d 104 (2d Cir. 2008); Situation Mgmt. Sys. v. ASP Consulting Group, 535 F. Supp. 2d 231, 237 n.3 (D. Mass. 2005) (same), vacated on other grounds, 560 F.3d 53 (1st Cir. 2009).

The *Memoirs of Herbert Hoover* (1952) were cited by Justice Scalia in order to document a historical fact from that administration. Cheney, 541 U.S. at 917.

The Ninth Circuit cited President Eisenhower's memoirs, *Mandate for Change* (1963), for his description of why the Korean War was the major crisis facing his new Administration. Lapenieks v. INS, 389 F.2d 343, 344 & n.2 (9th Cir. 1986). Similarly, Judge Gasch took judicial notice of historical facts from *Crusade in Europe* (1948), General Eisenhower's memoirs of his World War II years. Bitterman v. Secretary of Defense, 553 F. Supp. 719, 724 (D.D.C. 1982).

The D.C. Circuit similarly relied upon the statements in former CIA Director Colby's 1978 autobiography about the U-2 flights over the former Soviet Union, as one basis for

upholding the denial of a FOIA request.  Philippi v. CIA, 655 F.2d 1325, 1332 (D.C. Cir. 1981).

Here, too, Ms. Herron is relying upon the memoirs of President Bush and Secretary Paulson for the historical facts relating to the unilateral imposition of the conservatorship and the Treasury funding program on Fannie Mae, much as the courts in Cheney, Edwards, Oklahoma, Hastings, *In re* Agent Orange, Situation Management, Lapenieks, Bitterman, and Philippi relied upon memoirs by Presidents and agency heads to establish historical facts relevant to the underlying disputes in those cases.

It appears that the only time that this Court has refused to consider a Presidential memoir was in the Steel Seizure cases, when Judge Pine rejected the defendant's attempt to rely on Theodore Roosevelt's *Autobiography* (1913) for its legal theory of overarching Executive Branch powers, but that involved an attempt to rely upon legal conclusions set forth in a memoir, not historical facts.  Youngstown Sheet & Tube Co. v. Sawyer, 103 F. Supp. 569, 575 (D.D.C. 1952), aff'd, 343 U.S. 579 (1952).  Here, in contrast, Ms. Herron is relying upon President Bush's and Secretary Paulson's memoirs for the historical facts contained therein, and not for their legal conclusions.

**III.    Conclusion.**

Therefore, Ms. Herron respectfully requests that this Court take judicial notice, under Rule 201, Fed. R. Evid., of the historical facts regarding the SEC's emergency order prohibiting short selling of Fannie Mae's stock (Exhibit 1), and the unilateral imposition of the conservatorship and Treasury funding on Fannie Mae, as set forth in President Bush's and Secretary Paulson's memoirs (Exhibits 2-3).

        Respectfully submitted,

        */s/ Lynne Bernabei*
        _____
        Lynne Bernabei, Esquire
        Alan R. Kabat, Esquire
        Bernabei & Wachtel, PLLC
        1775 T Street, N.W.
        Washington, D.C. 20009-7124
        tel. (202) 745-1942
        fax (202) 745-2627

        *Counsel for Plaintiff Caroline Herron*

DATED:  July 28, 2011

**Certificate of Service**

I hereby certify that, on this 28th day of July 2011, I caused the foregoing to be electronically filed using this Court's ECF system, which will then send a notification of such filing by electronic mail to counsel of record:

Ira T. Kasdan
Joseph D. Wilson
Brooke Fineberg
Kelley Drye & Warren, LLP
3050 K Street N.W., Suite 400
Washington, D.C. 20007

Damien G. Stewart
Fannie Mae
3900 Wisconsin Avenue, N.W.
Washington, D.C. 20016-2892

*Counsel for Defendants*

Howard N. Cayne
Asim Varma
Michael A.F. Johnson
Arnold & Porter, LLP
555 – 12th Street N.W.
Washington, D.C. 20004

Stephen E. Hart
Federal Housing Finance Agency
1700 G Street, N.W.
Washington, D.C. 20552

*Counsel for Federal Housing Finance Agency*

/s/ Alan R. Kabat
_____