**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
**CAROLINE HERRON**                       )
                                          )
   **Plaintiff,**                      )
                                          )
   **v.**                             )    **Civil Action No. 1:10-CV-00943-RMC**
                                          )
**FANNIE MAE,** *et al.***,**             )
                                          )
   **Defendants.**                     )
_____)

**PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY**
**IN SUPPORT OF**
**PLAINTIFF'S OPPOSITION TO MOTIONS TO DISMISS**

Plaintiff Caroline Herron, through undersigned counsel, respectfully submits additional documents in support of her Opposition to the Motions to Dismiss (July 28, 2011).  The Opposition explained how Fannie Mae's long-term insolvency, its need to remain indefinitely dependent on continued Treasury funding, and that Fannie Mae does not know or control its future status, were relevant to this Court's determination of Fannie Mae's status as a state actor, under the <u>Lebron</u> control theory, or the <u>Brentwood Academy</u> excessive entwinement theory.[1]

Subsequently, Fannie Mae issued its Form 10-Q for the Second Quarter of 2011, which confirms that Fannie Mae will be insolvent on a long-term basis and will remain indefinitely dependent upon continued Treasury funding, and that Fannie Mae does not know or control its future status, which will instead be determined by Congress and the Administration.  In addition, Standard & Poor's downgrading of Fannie Mae's credit rating after it downgraded the U.S. government's credit rating further confirms the control of Fannie Mae by the government.

---

[1] <u>Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n</u>, 531 U.S. 288, 296, 298, 302-03 (2001); <u>Lebron v. National R. R. Passenger Corp.</u>, 513 U.S. 374, 400 (1995).

## 1. <u>Fannie Mae's Long-Term Insolvency and Treasury's Funding.</u>

Ms. Herron's Opposition described how Treasury had required Fannie Mae to accept funding in order to remain solvent, under onerous terms, including a 10 percent dividend repayment requirement and a 10 percent annual portfolio reduction requirement. <u>See</u> Pls. Opp., Mem. at 22-24, 26-30 (Doc. No. 55) (July 28, 2011). At the time Ms. Herron's Opposition was filed, Fannie Mae's SEC filings confirmed that it had received $98.7 billion in Treasury funding through the Second Quarter of 2011, and had paid $12.388 billion in dividends to Treasury through the First Quarter of 2011.

On August 5, 2011, Fannie Mae filed its quarterly report with the SEC for the Second Quarter of 2011. <u>See</u> Fannie Mae, Form 10-Q (Aug. 5, 2011) (excerpts attached and incorporated hereto as Exhibit 1).[2] Fannie Mae stated that for the Second Quarter, its deficit was $5.1 billion, which comprised a "total comprehensive loss of $2.9 billion and our payment to Treasury of $2.3 billion in senior preferred stock dividends during the second quarter of 2011." <u>Id.</u> at 3-4. Fannie Mae confirmed that in order to eliminate that deficit and remain solvent, FHFA "will submit a request to Treasury on our behalf for $5.1 billion to eliminate our net worth deficit," <u>id.</u> at 4, which is in addition to the $8.5 billion received from Treasury in the second quarter of 2011. <u>Id.</u> Thus, in the Third Quarter of 2011, Fannie Mae will have received a cumulative total of $104.8 billion in Treasury funding, "which will require an annualized dividend payment of $10.8 billion. This amount exceeds our reported net income for each year since our inception. Through June 30, 2011, we have paid an aggregate of $14.7 billion to Treasury in dividends on the senior preferred stock." <u>Id.</u>

---

[2] This Court can take judicial notice of this SEC filing, because it is a matter of public record, on the agency's website. <u>See</u> <u>DiLorenzo v. Norton</u>, No. 07-cv-144 (RJL), 2009 WL 2381327, at *2 n.7 (D.D.C. July 31, 2009) ("Because SEC filings are matters of public record, they are properly the subject of judicial notice, and therefore the Court may, and will, consider them on review of defendants' motions to dismiss.").

Fannie Mae concluded that:

> Although Treasury's funds under the senior preferred stock purchase agreement permit us to remain solvent and avoid receivership, the resulting dividend payments are substantial. We do not expect to earn profits in excess of our annual dividend obligation to Treasury for the indefinite future. We expect to request additional draws under the senior preferred stock purchase agreement in future periods, which will further increase the dividends we owe to Treasury on the senior preferred stock. We expect that, over time, our dividend obligation to Treasury will constitute an increasing portion of our future draws under the senior preferred stock purchase agreement. As a result of these factors, there is significant uncertainty about our long-term financial sustainability.

Id. at 16-17.

Fannie Mae identified numerous "forward-looking statements" in its 10-Q, which "reflect our management's expectations, forecasts or predictions of future conditions events or results," including the following relating to the Treasury funding:

- **Our expectation that we will not earn profits in excess of our annual dividend obligation to Treasury for the indefinite future;** . . .

- Our expectation that we will request additional draws under the senior preferred stock purchase agreement [SPSPA] in future periods, which will further increase the dividends we owe to Treasury on the senior preferred stock;

- Our expectation that, over time, our dividend obligation to Treasury will constitute an increasing portion of our future draws under the [SPSPA]; . . .

- Our expectation that our mortgage portfolio will continue to decrease due to the restriction on the amount of mortgage assets we may own under the terms of our [SPSPA] with Treasury; . . .

- Our expectation that we will continue to need funding from Treasury to avoid triggering FHFA's obligation to place us into receivership; [and]

- **Our belief that continued federal government support of our business and the financial markets, as well as our status as a GSE, are essential to maintaining our access to debt funding.**

Id. at 91-92 (emphasis added).

Thus, Ms. Herron is respectfully submitting Fannie Mae's 10-Q for the Second Quarter of 2011, as it confirms the statements in her Opposition to the Motions to Dismiss that Fannie

Mae remains dependent on Treasury's funding for the indefinite future, and probably permanently, in order to remain solvent, and that its future earnings will never reach the level that would allow it to pay the dividends, let alone pay back Treasury the funding it has received.

**2.   The Permanent Government Control of Fannie Mae Is Demonstrated by the Federal Government's Determination of the Future of Fannie Mae.**

Fannie Mae's 10-Q also continues to confirm that Fannie Mae does not know, and does not control, its future status.  Ms. Herron's Opposition explained how it was Congress and the Executive Branch (i.e., the White House), and not Fannie Mae, that would determine Fannie Mae's future status.  See Pls. Opp., Mem. at 30-34 (Doc. No. 55) (July 28, 2011).  Fannie Mae's 10-Q for the Second Quarter of 2011 stated, as had its previous SEC filings, that Fannie Mae did not know or control its future status:

> In addition, there is significant uncertainty regarding the future of our company, including how long we will continue to be in existence, the extent of our role in the market, what form we will have, and what ownership interest, if any, our current common and preferred stockholders will hold in us after the conservatorship is terminated.  We expect this uncertainty to continue.

See Ex. 1, at 17.

> We expect additional legislation relating to the GSEs to be introduced and considered by Congress in 2011.  We cannot predict the prospects for the enactment, timing or content of legislative proposals regarding the future status of the GSEs.

> In sum, there continues to be uncertainty regarding the future of our company, including how long we will continue to be in existence, the extent of our role in the market, what form we will have, and what ownership interest, if any, our current common and preferred stockholders will hold in us after the conservatorship is terminated.

Id. at 18.  Thus, it is Congress and the Executive Branch that will make the decision about Fannie Mae's future – not Fannie Mae, and not the marketplace.

Fannie Mae also made numerous "forward-looking statements" in its 10-Q that relate to its own uncertainty as to its future status:

- Our expectation that Congress will continue to hold hearings and consider legislation in 2011 on the future status of Fannie Mae and Freddie Mac, including proposals that would result in a substantial change to our business structure, or our operations, or that involve our liquidation or dissolution; [and]

- Our belief that, as drafted, bills introduced in Congress that would require FHFA to make a determination within two years of enactment whether the GSEs were financially viable and, if the GSEs were determined to be not financially viable, to place them into receivership may upon enactment impair our ability to issue securities in the capital markets and therefore our ability to conduct our business, absent the federal government providing an explicit guarantee of our existing and ongoing liabilities.

Id. at 91.

Thus, Ms. Herron respectfully submits Fannie Mae's 10-Q, as it confirms the statements in her Opposition to the Motions to Dismiss that Fannie Mae does not know or control its future status, which will be decided by Congress and the Administration.

### 3. **Fannie Mae's Credit Rating Is Tied to the Government's Credit Rating.**

Finally, Fannie Mae's 10-Q also discusses its credit ratings, and specifically notes that all three of the major credit rating bureaus were likely to downgrade Fannie Mae's credit ratings if the U.S. government's credit rating was downgraded, given Fannie Mae's total dependence on government funding to survive:

> . . . on July 15, 2011, Standard & Poor's ("S&P") placed our long-term and short-term debt ratings on "Credit Watch with negative implications," following a similar action on the debt ratings of the U.S. government. . . .
>
> On July 13, 2011, Moody's placed both the U.S. government's rating and our long-term debt ratings on review for possible downgrade. . . .
>
> S&P, Moody's and Fitch Ratings have all indicated that they would likely lower their ratings on the debt of Fannie Mae and certain other government-related entities if they were to lower their ratings on the U.S. government.

See Exhibit 1, at 15.

This prediction was borne out when S&P downgraded the U.S. government's debt rating

on August 5, 2011 (the same day that Fannie Mae issued its 10-Q), since S&P downgraded the

credit rating of Fannie Mae and the other GSEs on the next business day, i.e., Monday, August 8,

2011. See Standard & Poor's, "Ratings on Select GREs and FDIC- and NCUA-Guaranteed Debt

Lowered After Sovereign Downgrade" (Aug. 8, 2011) (attached and incorporated hereto as

Exhibit 2). S&P explained that it "lowered its long-term sovereign credit rating on the United

States of America to 'AA+' from 'AAA.' As a result, we have also lowered the long-term issue

credit ratings and related issue ratings on select government-related entities (GREs) to 'AA+'

from 'AAA.'" Id. at 1.[3]

Specifically, Fannie Mae's credit rating was downgraded because of its necessary inter-

relationship with the government:

> **The downgrades of Fannie Mae and Freddie Mac reflect their direct reliance on the U.S. government.** Fannie Mae and Freddie Mac were placed into conservatorship in September 2008 and **their ability to fund operations relies heavily on the U.S. government**. In addition to the implicit support we factor into our ratings, **the U.S. Treasury has demonstrated explicit support by providing these entities with capital quarterly, as necessary.**

Id. (emphasis added). S&P also downgraded the credit ratings of several other GSEs, because

S&P "classif[ied] them as having a very high likelihood of receiving support from the

government if needed," and certain debt issues, because those were all directly guaranteed by

Treasury. Id. at 2.

Thus, S&P's downgrading of Fannie Mae's credit rating not only confirms the statements

in Ms. Herron's Opposition that Fannie Mae is explicitly guaranteed by the Treasury funding,

but also provides further support for this Court's analysis of Fannie Mae as a state actor under

the Brentwood Academy entwinement test.

---

[3] S&P uses "GRE" (government-related entities) instead of "GSEs" (government-sponsored entities), a difference of no significance with respect to Fannie Mae.

**CONCLUSION**

Ms. Herron respectfully requests that this Court take notice of the statements made by Fannie Mae in its 10-Q for the Second Quarter of 2011 about (1) its indefinite insolvency and need for continued Treasury funding; and (2) the total government control of Fannie Mae as evidenced by the fact that Congress (and not Fannie Mae or the marketplace) will determine Fannie Mae's future, and by the downgrading of Fannie Mae's credit rating as a result of the downgrading of the federal government's credit rating.

Respectfully submitted,

*/s/ Lynne Bernabei*

_____
Lynne Bernabei, Esquire
Alan R. Kabat, Esquire
Bernabei & Wachtel, PLLC
1775 T Street, N.W.
Washington, D.C. 20009-7124
tel. (202) 745-1942
fax (202) 745-2627

*Counsel for Plaintiff Caroline Herron*

DATED:  August 9, 2011

## Certificate of Service

I hereby certify that, on this 9th day of August 2011, I caused the foregoing to be electronically filed using this Court's ECF system, which will then send a notification of such filing by electronic mail to counsel of record:

Ira T. Kasdan
Joseph D. Wilson
Brooke Fineberg
Kelley Drye & Warren, LLP
3050 K Street N.W., Suite 400
Washington, D.C. 20007

Damien G. Stewart
Fannie Mae
3900 Wisconsin Avenue, N.W.
Washington, D.C. 20016-2892

*Counsel for Defendants*

Howard N. Cayne
Asim Varma
Michael A.F. Johnson
Arnold & Porter, LLP
555 – 12th Street N.W.
Washington, D.C. 20004

Stephen E. Hart
Federal Housing Finance Agency
1700 G Street, N.W.
Washington, D.C. 20552

*Counsel for Federal Housing Finance Agency*

/s/ Alan R. Kabat
_____