# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **CAROLINE HERRON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 10-943 (RMC)** |
| ) | |
| **FANNIE MAE,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

This suit arises from the termination of a consulting contract between Caroline Herron and Fannie Mae. Ms. Herron worked for Fannie Mae as an employee and then as a contractor until she was terminated in January 2010. She alleges that she was terminated due to her complaints that Fannie Mae (1) acted improperly in its role assisting the U.S. Department of the Treasury ("Treasury") with home loan modifications, (2) wasted public funds, and (3) violated its contract with Treasury. Compl. [Dkt. 1] ¶ 1. Ms. Herron pleads in the alternative. If Fannie Mae is considered a private employer, Ms. Herron brings claims of wrongful discharge, tortious interference, and civil conspiracy under D.C. law. If Fannie Mae is a government actor, Ms. Herron asserts a First Amendment claim under *Bivens.*[1] Defendants and Intervenor, the Federal Housing Finance Agency ("FHFA"), move to dismiss the *Bivens* claim on the ground that Defendants are not federal actors and thus *Bivens* is inapplicable. Because Fannie Mae is a private entity and the

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), established that an individual may bring a suit for damages against a federal officer, in his individual capacity, for violation of a constitutional right.

appointment of FHFA as conservator of Fannie Mae did not transform Fannie Mae into a public agency, the motions to dismiss the *Bivens* claim will be granted.

## I.  FACTS

### A.  Ms. Herron's History with Fannie Mae

Ms. Herron was employed at Fannie Mae from 2000–2007.  At the end of her time there, she was a vice president.  She held a leadership role on many projects and earned high performance ratings.  In 2007, Fannie Mae downsized, and Ms. Herron accepted a buyout.  She left the company on good terms.  After FHFA placed Fannie Mae into conservatorship in 2008, an outside vendor hired Ms. Herron to provide consulting services to Fannie Mae.  Ms. Herron's rapport with Fannie Mae deteriorated, and the consulting relationship was ended.  Ms. Herron contends that Fannie Mae wrongfully terminated her as a consultant and that thereafter she was "blackballed" from Fannie Mae and the industry.

As a result, she filed this suit against Fannie Mae and the following Fannie Mae employees:  Eric Schuppenhauer, Senior Vice President of Credit Initiatives; Nancy Jardini, Vice President of Compliance; Alanna Scott Brown, Ms. Herron's supervisor; and John Does One through Four, unnamed Fannie Mae officials.  Her Complaint asserts three counts under local law as well as a *Bivens* claim under federal law as follows:

Count I – wrongful discharge against Fannie Mae;

Count II – civil conspiracy to terminate employment and impede future employment against all Defendants;

Count III – tortious interference with prospective contractual relations against all Defendants; and

Count IV – First Amendment action under *Bivens* against individual

defendants Schuppenhauer, Jardini, Brown, and John Does.

*See* Compl. [Dkt. 1].  Because Fannie Mae is a party to this suit, this Court has jurisdiction.  *See* 12

U.S.C. § 1723a(a) (Fannie Mae has the power to sue and be sued in any court of competent

jurisdiction, state or federal).

### B.  Background of Fannie Mae

Fannie Mae purchases residential mortgages thereby providing lenders with capital

to fund additional mortgage loans.  Also known as the Federal National Mortgage Association or

"FNMA," Fannie Mae was created in 1968 when Congress partitioned the Federal National

Mortgage Association into two entities:   (1) the Government National Mortgage Association

("Ginnie Mae"), which remained in the government, and (2) Fannie Mae, a private corporation.

Stipulation[2] [Dkt. 49] ("Stip.") ¶ 2 (citing the Housing and Urban Development Act of 1968, Pub.

L. No. 90-448, 82 Stat. 476 (1948), *codified in part* at 12 U.S.C. § 1716b.  The statute that created

Fannie Mae provided:

> The purpose of this title includes the partition of the Federal National
> Mortgage Association as heretofore existing into two separate and
> distinct corporations . . . . One of such corporations, to be know as the
> Federal National Mortgage Association, will be a Government-
> sponsored *private* corporation, will retain the assets and liabilities of
> the previously existing corporation accounted for under section 1719
> of this title, and will continue to operate the secondary market
> operations authorized by such section 1719.

12 U.S.C. § 1716b.  Fannie Mae was empowered to purchase, sell, and service mortgages.  12 U.S.C.

§ 1717(b).  Fannie Mae was privately controlled by a Board of Directors, the majority of whom were

---

[2] Ms. Herron and FHFA agreed to 171 stipulations of fact, without agreeing to their relevance
to the ultimate question of whether Fannie Mae was a public or private entity during the time period
relevant to this suit.  *See* Stipulation [Dkt. 49].

elected annually by the shareholders.  *See* 12 U.S.C. § 1718(a) (establishing common stock with the right to vote for directors, and preferred stock on terms and conditions as prescribed by such directors); *id*. § 1723(b) (stating that Fannie Mae shall have a board of directors persons who are elected annually by common stockholders); *see also Northrip v. Fed. Nat'l Mortg. Ass'n*, 527 F.2d 23, 30 (6th Cir. 1975) (Fannie Mae had 15 board members; 5 were appointed by the President and 10 were elected annually by common shareholders).

Fannie Mae competed with other financial institutions in the mortgage industry. Historically, Fannie Mae's competitors included Freddie Mac, Ginnie Mae, financial institutions, securities dealers, insurance companies, and many others.  Stip. ¶ 95 (citing Fannie Mae, Form 10-K for 2009 at 4344 (Feb. 26, 2010)).

Pre-conservatorship, Fannie Mae's securities were not guaranteed by the federal government.  Stip. ¶ 16 (citing 12 U.S.C. § 4503).  Such securities were required to contain an express disclaimer, that they were not guaranteed by the United States and that they did not constitute a debt of the United States.  *See* 12 U.S.C. § 1719(b), (d), (e).  Further, Congress specifically required Fannie Mae to act as a private entity in the hiring and compensation of its employees.  *See* 12 U.S.C. § 1723a(d)(2).

In 2008, Congress empowered the FHFA to act as conservator or receiver for Fannie Mae for the purpose of reorganizing, rehabilitating or winding up Fannie Mae's affairs.  Stip. ¶ 34 (citing 12 U.S.C. § 4617(a)(1), (2), part of the Housing and Economic Recovery Act of 2008 ("HERA"), 12 U.S.C. § 4501 *et seq*.).  On September 6, 2008, FHFA placed Fannie Mae into conservatorship.  James Lockhart, FHFA's Director at the time, issued a statement noting:

> FHFA has placed Fannie Mae and Freddie Mac[3] into conservatorship.
> That is a statutory process designed to stabilize a troubled institution
> with the objective of returning the entities to normal business
> operations.   FHFA will act as the conservator to operate the
> Enterprises until they are stabilized.

Stip. ¶ 46 (quoting Statement of FHFA Director Lockhart (Sept. 7, 2008)).

As conservator of Fannie Mae, FHFA has statutory authority as "(i) necessary to put the regulated entity in a sound and solvent condition; and (ii) appropriate to carry on the business of the regulated entity and preserve and conserve the assets and property of the regulated entity." Stip. ¶ 51 (quoting 12 U.S.C. § 4617(b)(2)(D)).  Further, as conservator, FHFA is empowered to "(i) take over assets of and operation of [Fannie Mae] with all the powers of the shareholders, the directors, and the officers of the regulated entity and conduct all business of the regulated entity; (ii) collect all obligations and money due [Fannie Mae]; (iii) perform all functions of [Fannie Mae] in the name of [Fannie Mae] which are consistent with the appointment as conservator or receiver; (iv) preserve and conserve the assets and property of [Fannie Mae]; and (v) provide by contract for assistance in fulfilling any function, activity, action or duty of the Agency as conservator." Stip. ¶ 52 (quoting 12 U.S.C. § 4617(b)(2)(B)).  FHFA as conservator reconstituted Fannie Mae's Board of Directors, who now serve on behalf of FHFA.  Stip. ¶ 63 (citing Fannie Mae, Form 8-K filed with the SEC at 2 (Dec. 24, 2008)); Stip. ¶¶ 75 & 78 (citing Statement of FHFA Director Before the House Financial Services Comm. Subcomm. on Capital Markets, Insurance and Government Sponsored Enterprises, "The Present Condition and Future Status of Fannie Mae and Freddie Mac" at 7-9 (June 3, 2009) (stating that FHFA appointed new CEOs, nonexecutive chairmen, and boards

---

[3] FHFA also placed into conservatorship a similar entity, the Federal Home Loan Mortgage Corporation, known Freddie Mac.

of directors to Fannie Mae and Freddie Mac)).

The conservatorship of Fannie Mae has no specified termination date. Stip. ¶ 67 (citing Fannie Mae, Form 8-K filed with the SEC at 2 (Dec. 24, 2008)); *see also* Stip. ¶ 156 (citing OMB, Fiscal Year 2012; Analytical Perspectives, Budget of the U.S. Government at 373 (Feb. 14, 2011) (stating that the budget reflects Fannie Mae as a non-budgetary entity in keeping with its temporary status in conservatorship)). FHFA issued a Fact Sheet regarding the conservatorship of Fannie Mae that indicated:

> Upon the [FHFA] Director's determination that the Conservator's plan to restore [Fannie Mae] to a safe and solvent condition has been completed successfully, the Director will issue an order terminating the conservatorship. At present, there is no exact time frame that can be given as to when this conservatorship may end.

Stip. ¶ 38 (quoting FHFA Fact Sheet: Questions and Answers on Conservatorship at 2 (Sept. 7, 2008)).

At the onset of the conservatorship, Fannie Mae (acting through the conservator) entered into a Senior Preferred Stock Purchase Agreement ("Stock Agreement"). Under the Stock Agreement, Treasury committed to provide funding from time to time, provided that the aggregate funding did not exceed $100 billion. On a quarterly basis, the conservator may draw on the Treasury commitment to make sure that Fannie Mae's net worth does not fall below zero. Stip. ¶ 42 (citing Stock Agreement § 2 (Sept. 7, 2008)). The maximum aggregate funding limit subsequently was raised.[4] The Senior Preferred Stock is not entitled to voting rights; the voting rights of all

---

[4] On May 6, 2009, the Stock Agreement was amended to raise the maximum aggregate amount of Treasury funding to $200 billion. Stip. ¶ 42 (citing Am. to Stock Agreement at 1-2 (May 6, 2009)). On December 24, 2009, the maximum aggregate amount was further increased to the greater of $200 billion or $200 billion plus the cumulative amount funded through December 2012 less any surplus determined as of December 12, 2012. Stip ¶ 42 (citing 2d Am. to Stock Agreement

stockholders are vested in the conservator.  Stip. ¶ 55 (citing "Fact Sheet: Treasury Senior Preferred

Stock Purchase Agreements," at 1-2 (Sept. 7, 2008), available at http://www.treasury.gov/press-

center/press-releases/Documents/pspa_factsheet_090708%20

hp1128.pdf  (last visited April 26, 2012)).

        After Fannie Mae was placed in conservatorship, Treasury and Fannie Mae (in

conservatorship) entered into a Financial Agency Agreement.  Stip 145 (citing Financial Agency

Agreement, Ex. A at 1 (Feb. 18, 2009)).  Under the terms of the Financial Agency Agreement,

Fannie Mae (in conservatorship) was appointed as a financial agent of the United States in order to

provide services such as foreclosure prevention, Housing Finance Agency activities, and customer

call centers.  *Id.*; *see also* Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, 122

Stat. 3765 (Oct. 3, 2008).

## II.  LEGAL STANDARD

        A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil

Procedure 12(b)(6) challenges the adequacy of a complaint on its face.  Fed. R. Civ. P. 12(b)(6).  A

complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds

upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations

omitted).  Although a complaint does not need detailed factual allegations, a plaintiff's obligation

to provide the grounds of his entitlement to relief  "requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do."  *Id.*  To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief

that is "plausible on its face."  *Twombly*, 550 U.S. at 570.

_____

at 1-2 (Dec. 24, 2009)).

A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555.  But a court need not accept as true legal conclusions set forth in a complaint.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice.  *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).[5]

### III.  ANALYSIS

It is well-settled that pre-conservatorship Fannie Mae was a private actor.  Further, the imposition of conservatorship and the execution of the Financial Agency Agreement did not transform Fannie Mae into a government actor.

In *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995), the Supreme Court defined what type of entity constitutes a federal actor for the purpose of a constitutional claim.  The threshold question for invoking constitutional protection is whether a federal actor was involved, as purely private action does not trigger constitutional protection.  *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542 (1987).  A corporation is part of the federal government when Congress created the entity "by special  law, for the furtherance of governmental objectives, and retain[ed] for itself permanent authority to appoint a majority of the directors of that corporation."[6]  *Lebron*, 513 U.S. at 400.  The Supreme Court determined in *Lebron* that Amtrak was

---

[5]  The Court has taken judicial notice of certain public records.  *See* Mem. Op. & Order [Dkt. 69] at 2-3 (taking judicial notice of records attached to Mot. for Judicial Notice [Dkt. 51], Varma Decl., Exs. 1-12).  These records are certain public records of federal agencies.

[6]  The fact that Fannie Mae was created by statute and that Fannie Mae, like all financial institutions, has a mission to serve the public is not relevant to the analysis in this Opinion.  The critical issue is whether the government through FHFA permanently controls Fannie Mae.  The Court

a federal entity; it was created by statute for a government purpose and was controlled entirely by

the United States.   Amtrak's board of directors consisted of nine members: the Secretary of

Transportation, five appointed by the President, Amtrak's president (appointed by the Board), and

two elected by the holders of preferred stock (all of which was owned by the United States).   *Id.* at

385.   By way of comparison, the Court noted that the Communications Satellite Corporation

("Comsat") was nongovernmental because only three of its fifteen directors were appointed by the

President.   *Id.* at 390.

### A.  Pre Conservatorship Fannie Mae

When Fannie Mae was created by Congress, the government did not retain the

permanent authority to appoint the majority of its directors.   Congress expressly designated Fannie

Mae as a private corporation, *see* 12 U.S.C. § 1716b, controlled by a Board of Directors elected

annually by Fannie Mae shareholders.    *See* 12 U.S.C. § 1718(a) (providing that common

shareholders have right to vote for directors; *id.* § 1723(b) (providing that Fannie Mae's board is

elected annually by common shareholders).   Pre conservatorship, Fannie Mae had 15 board

members; of these 15, 5 were appointed by the President and 10 were elected by common

shareholders.   *Northrip*, 527 F.2d at  30 (6th Cir. 1975).   Pre conservatorship Fannie Mae, like

Comsat, was a nongovernmental entity under the reasoning set forth in *Lebron*.[7]

Since *Lebron*, no other court has been presented with the issue of whether pre-

conservatorship Fannie Mae was a federal actor.   However, the Ninth Circuit held that pre-

concludes it does not.

[7] Before *Lebron*, courts regularly determined that Fannie Mae was not a federal actor subject
to the Fifth Amendment due process clause.  *See, e.g., Roberts v. Cameron-Brown, Co.*, 556 F.2d
356, 359 (5th Cir. 1977); *Northrip*, 527 F.2d at 30.

conservatorship Freddie Mac, a similar entity, was not a government actor under *Lebron*. In *American Bankers Mortgage Corp. v. Federal Home Loan Mortgage Corp.*, 75 F.3d 1401, 1405 (9th Cir. 1996), American Bankers brought suit asserting that Freddie Mac violated the Fifth Amendment due process clause when it terminated American Bankers' status as a mortgage loan seller and servicer.   Because the Fifth Amendment applies only the federal government, Freddie Mac could only be subject to its limitations if it were part of the federal government.   The Ninth Circuit determined that it was not.   Although Congress created Freddie Mac to serve the public interest by increasing the availability of mortgages for low and moderate income families, Freddie Mac was not a federal entity that could be liable under the due process clause because it was not controlled by the United States.   *Id.* at 1409.[8]   Freddie Mac had a board of directors numbering eighteen, thirteen of whom were elected annually by the common shareholders and five of whom were appointed by the U.S. President.   There were 60 million shares of common stock in Freddie Mac, which were publically traded on the New York Stock Exchange. *Id.* at 1407.   Fannie Mae, like Freddie Mac, was publically traded on the New York Stock Exchange. *See Frank v. Bear Stearns & Co*., 128 F.3d 919, 923 n.2 (5th Cir. 1997) (Fannie Mae was owned entirely by private stockholders; its stock was traded on the NYSE).   Also, like Freddie Mac, Fannie Mae was controlled by a Board of Directors elected annually by shareholders.   *See* 12 U.S.C. § 1718(a); *id*. § 1723(b); *see also Northrip*, 527 F.2d at 30. Fannie Mae was a private entity pre conservatorship.

### B. Post Conservatorship Fannie Mae

When a federally chartered financial institution (such as a national bank, federal

---

[8] *See also Liberty Mortg. Banking, Ltd. v. Fed. Home Loan Mortg. Co*., 822 F. Supp. 956, 958-60 (E.D.N.Y. 1993) (pre-*Lebron*, district court held that Freddie Mac was not a federal actor).

savings association, or government-sponsored enterprise) encounters financial distress, it does not go through bankruptcy. Instead, it is placed into federal conservatorship or receivership. The conservator or receiver takes over the day-to-day operations and assumes the powers of shareholders, board of directors, and management. The purpose of the conservator or receiver is to restore the entity to fiscal feasibility or to liquidate and distribute its assets. The conservator or receiver steps into the private status of the entity. For example, when the Federal Deposit Insurance Corporation ("FDIC") takes over as conservator or receiver for a failed bank, it obtains the rights and powers of the bank's shareholders, officers, and directors. *See* 12 U.S.C. § 1821(d)(2)(A). As conservator or receiver, it may take over the assets and operation of the insured depository institution to conduct all of the institution's business, in order to preserve and conserve the assets and property of Fannie Mae. *Id*. § 1821(d)(2)(B). FDIC in its role as conservator or receiver is placed "in the shoes of the insolvent" entity. *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86-87 (1994) (examining 12 U.S.C. § 1821(d)(2)(A) & (B)). A claim against FDIC as receiver is "a claim against the depository institution for which the FDIC is receiver." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1144 (D.C. Cir. 2011). Further, when acting as receiver, FDIC does not pursue the interests of the government. *Atherton v. FDIC*, 519 U.S. 213, 225 (1997). Courts have similarly held that FDIC as conservator was not acting for the United States. *See, e.g., Ameristar Fin. Servicing Co. LLC v. United States*, 75 Fed. Cl. 807, 811 (2007).

*O'Melveny* interpreted the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. 1461 *et seq*., the statute applicable to FDIC. Section 1821(d)(2)(A) & (B) of FIRREA, regarding the power and rights of conservators and receivers, is almost identical to § 4617(b)(2)(A) & (B) of HERA. When FHFA steps in as conservator or receiver

it immediately succeeds to all rights and powers of the stockholders, officers, and directors of the regulated entity placed into such conservatorship or receivership. 12 U.S.C. § 4617(b)(2)(A).  In like manner, on September 6, 2008, FHFA placed Fannie Mae into conservatorship.  As conservator, FHFA took over the  assets and operations of Fannie Mae with all the powers of the shareholders, officers, and directors to conduct all of Fannie Mae's business, in order to preserve and conserve the assets and property of Fannie Mae.  *See id*. § 4617(b)(2)(B).  Thus, like FDIC when it serves as a conservator or receiver of a private entity, FHFA when it serves as conservator "step[s] into the shoes" of the private corporation, Fannie Mae.[9]

In such circumstances, the federal agency in its guise as a conservator or receiver of a private corporation is not a government actor.  For example, in *United States v. Beszborn*, 21 F.3d 62, 67-68 (5th Cir. 1994), the Fifth Circuit held that the Resolution Trust Corporation ("RTC") as receiver of a failed bank was not a government actor.  The RTC had sued the former officers and directors of the failed bank in a civil case and obtained a judgment including punitive damages.  The government subsequently brought criminal charges against the officers and directors based on the same conduct.  The officers and directors asserted Double Jeopardy as a defense.  The Fifth Circuit found that the RTC as receiver stood in the shoes of the insolvent bank, *i.e.*, that the RTC was a private entity and not the government for purposes of the Double Jeopardy clause.  21 F.3d at 68.

---

[9] Ms. Herron fails in her attempt to distinguish *O'Melveny*.  She argues that FHFA should be treated differently than FDIC because FHFA acts as both regulator and conservator for Fannie Mae and FDIC only acts as conservator (or receiver).  Ms. Herron overlooks critical facts.  FDIC also serves as regulator of state-chartered banks that are not members of the federal reserve system. Reply [Dkt. 61], Ex. A (excerpts of FDIC 2010 Annual Report) at 27.  When one of these banks goes into conservatorship, FDIC serves as both regulator and conservator.  Even with regard to federally chartered institutions for which the Office of the Comptroller of the Currency has primary regulatory authority, such institutions must submit to FDIC regulation including FDIC "backup examination authority."  *Id*. at 165.

Similarly, Fannie Mae was not converted into a government entity when it was placed into conservatorship; instead, FHFA stepped into the shoes of Fannie Mae.  FHFA as conservator for Fannie Mae is not a government actor.[10]

Ms. Herron avers that Fannie Mae is a federal actor for the purpose of her First Amendment claim because:  (1) the conservatorship is of indefinite duration; (2) FHFA presently controls Fannie Mae; and (3) Treasury provides financial support to Fannie Mae in exchange for non-voting Senior Preferred Stock.  Ms. Herron draws the wrong conclusion from these three uncontested facts.  Fannie Mae would be a federal actor if the FHFA conservatorship retained for the government *permanent* authority to appoint a majority of the corporation's directors.  *Lebron*, 513 U.S. at 400.  To the contrary, the appointment of FHFA as conservator did not establish *permanent* government authority to control Fannie Mae.

First, Ms. Herron insists that there is no date certain when the conservatorship of Fannie Mae will end,[11] and, therefore, she erroneously concludes that FHFA control over Fannie Mae must be permanent.  In order to be a government actor under the *Lebron* framework, permanent government control is required.  *Lebron* itself distinguishes permanent from temporary control.  The Supreme Court contrasted Amtrak, which was a federal actor in the permanent control of the

_____

[10] Ms. Herron unsuccessfully attempts to distinguish *Beszborn*, asserting that the RTC in that case operated to benefit the creditors and stockholders and asserting that FHFA operates Fannie Mae to benefit the federal government.  This reflects an incorrect understanding of the facts.  Treasury's interest in Fannie Mae is as a shareholder of Senior Preferred Stock.  FHFA operates Fannie Mae to benefit of creditors and shareholders, in the same way that RTC operated the failed financial institution in *Beszborn*.

[11] *See* Pl.'s Opp. [Dkt. 55] at 41 ("[T]he record evidence is undisputed that the conservatorship is of indefinite duration, and that neither FHFA nor Fannie Mae knows when or how it will end.")

government, from "a private corporation whose stock comes into federal ownership," which is in the temporary control of the government. *Lebron*, 513 U.S. at 398. Although the duration of the conservatorship is indefinite, FHFA's control over Fannie Mae is temporary. Fannie Mae was not a federal actor at the relevant time.

Second, Ms. Herron asserts that FHFA's complete control over Fannie Mae makes Fannie Mae a federal actor. Congress empowered FHFA to act as conservator of Fannie Mae for the purpose of reorganizing, rehabilitating, or winding up its affairs. 12 U.S.C. § 4617(a)(2). Thus, the enabling statute expressly allows FHFA temporary but complete control over Fannie Mae, not permanent control. *See also* Stip. ¶ 67 (citing Fannie Mae, Form 8-K filed with the SEC at 2 (Dec. 24, 2008) (conservatorship of Fannie Mae has no specified termination date)); Stip. ¶ 156 (citing OMB, Fiscal Year 2012; Analytical Perspectives, Budget of the U.S. Government at 373 (Feb. 14, 2011) (budget reflects Fannie Mae as a non-budgetary entity in keeping with its temporary status in conservatorship)); Stip ¶ 38 (quoting FHFA Fact Sheet: Questions and Answers on Conservatorship at 2 (Sept. 7, 2008) (there is no exact time frame that can be given as to when the conservatorship of Fannie Mae might end)). The complete control exercised by FHFA is authorized by statute; it is how conservatorship is accomplished. Because conservatorship is by nature temporary, the government has not acceded to permanent control over the entity and Fannie Mae remains a private corporation.

Finally, Ms. Herron also argues that Fannie Mae was transformed into a federal entity via (1) Treasury's appointment of Fannie Mae as administrator of the Home Affordable Modification Program through the Financial Agency Agreement and (2) Treasury's entry into the Stock Agreement with Fannie Mae. With regard to the Financial Agency Agreement, it states that Fannie Mae is

distinct from the government and must maintain a fiduciary duty of loyalty to the federal government.  Stip. ¶ 146 (citing Financial Agency Agreement at 3-4).  The Financial Agency Agreement also expressly provides that contractors to Fannie Mae (such as Ms. Herron) do not become subcontractors of the government. Stip. ¶ 147 (citing Financial Agency Agreement §14(B)).  These provisions make it clear that the Financial Agency Agreement did not transform Fannie Mae into a government entity.

The Stock Agreement did not give the government permanent control over Fannie Mae.  The Stock Agreement provided Treasury with a warrant to purchase 79.9% of the total shares of Fannie Mae common stock outstanding on the date of exercise at a nominal price.  Stip. ¶ 93 (citing Fannie Mae Form 10-K for 2009 at 331-32 (Feb. 26, 2010)).  As of this date, Treasury has not exercised this warrant.  The Stock Agreement also required Treasury to provide funding to Fannie Mae to ensure a positive net worth in exchange for shares of Senior Preferred Stock that pay a certain dividend. Stip. ¶ 55 (citing Treasury Fact Sheet: Treasury Senior Preferred Stock Purchase Agreements at 1-2 (Sept. 7, 2008)).  Senior Preferred Stock conferred no voting rights.  *Id*.  Thus, Treasury's warrant to purchase common stock and its ownership of non-voting Senior Preferred Stock do not give the United States permanent control over Fannie Mae and do not make Fannie Mae a government entity under *Lebron*.

Ms. Herron also relies on *Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001), arguing that the government is so entwined with Fannie Mae as to have created a public entity subject to constitutional restrictions.  Under *Brentwood*, the Supreme Court held that an athletic association in which the majority of members were public schools could be deemed to be a federal actor because the association was pervasively entwined with government

policies and was managed and controlled by government officials in their government capacity. *Id.* at 299-301. *Brentwood* did not change the law of conservatorship and receivership. As described above, a conservator or receiver steps into the shoes of the private entity — it assumes the private status of the entity. *See O'Melveny*, 512 U.S. at 86-87; *Am. Nat'l Ins. Co.*, 642 F.3d at 1144; *Beszborn*, 21 F.3d at 67-68. Fannie Mae was a private entity; when FHFA took over as conservator of Fannie Mae, it stepped into Fannie Mae's private role. In sum, FHFA as conservator of Fannie Mae is not a government actor, and Ms. Herron's *Bivens* claim will be dismissed.

## IV.  CONCLUSION

Accordingly, the motion to dismiss the *Bivens* claim filed by Intervenor (the Federal Housing Finance Agency) [Dkt. 50] and the similar motion to dismiss filed by Defendants [Dkt. 52] will be granted. Count IV (*Bivens*) of the Complaint will be dismissed. Counts I, II, and III remain. A memorializing Order accompanies this Memorandum Opinion.


Date: April 30, 2012                                     /s/
                                             ROSEMARY M. COLLYER
                                             United States District Judge