UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


CAROLINE HERRON,                    :
                                   :
            Plaintiff,             :        Docket No. CA 10-943
      vs.                          :
                                   :        Washington, D.C.
FANNIE MAE, ET AL,                 :    Tuesday, October 22, 2013
                                   :           10:10 a.m.
                                   :
            Defendants.            :
---------------------------x


TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE ROSEMARY M. COLLYER
UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Plaintiff:          LYNNE A. BERNABEI, Esquire
                            ALAN R. KABAT, Esquire
                            Bernabei & Wachtel, PLLC
                            1775 T Street, NW
                            Washington, DC  20009


For the Defendants:         DAMIEN G. STEWART, Esquire
                            Fannie Mae
                            3900 Wisconsin Avenue, NW
                            Washington, DC  20016

                            IRA T. KASDAN, Esquire
                            JOSEPH D. WILSON, III, Esquire
                            ELIZABETH C. JOHNSON, Esquire
                            Kelley Drye & Warren L.L.P.
                            3050 K Street NW
                            Suite 400
                            Washington, DC  20007-5108

Interested Party:           JOHN G. INTERRANTE, Esquire
                            Assistant United States Attorney
                            555 4th Street, NW
                            Washington, DC  20530

Appearances continued:

Court Reporter:                CRYSTAL M. PILGRIM, RPR
                               Official Court Reporter
                               United States District Court
                               District of Columbia
                               333 Constitution Avenue, NW
                               Washington, DC  20001


Proceedings recorded by machine shorthand, transcript produced
by computer-aided transcription.

1                    P-R-O-C-E-E-D-I-N-G-S

2          THE DEPUTY CLERK:  Civil action 10-943, Caroline

3    Herron versus Fannie Mae, et al.

4          For the plaintiffs, Alan Kabat and Lynne Bernabei.

5          For the defense, Damien Stewart, Ira Kasdan, Joseph

6    Wilson, and Brooke Finberg.  John Interrante representing the

7    U.S. Department of Treasury.

8          THE COURT:  Good morning everyone.

9          MS. BERNABEI:  Good morning.

10         THE COURT:  We are here for sheer fun, right, what

11   more fun could there be than a really healthy discovery

12   dispute.  I mean, why would a Judge want to do anything else.

13   All right.

14         I must say I have read everything but I must say I am

15   confounded as to where to start first so who wants to start?

16   Did I guess, of course.

17         Come right ahead.  You can start with one area, not the

18   whole megillah, I'm not interested in the whole megillah.  You

19   can start with one area.  One, you have to be selective.

20   What's your most important complaint?  One.

21         MS. BERNABEI:  I think it's having to do with the

22   termination of Ms. Herron and refusal to let her go to

23   Treasury.

24         THE COURT:  Okay, you mean the ones that are claimed

25   to be attorney client?

1            MS. BERNABEI:  Yes.

2            THE COURT:  All right.  I did see that there are lots

3    of them.  It's not a termination, of course, it's a off

4    boarding which if there's anybody here from Fannie Mae, I want

5    to tell you is the most insulting term.  I would advise your

6    client that they come up with something better.  It's really

7    bad.  It pretends not to be what it is which is a foolishness

8    that's insulting.  All right, but I'm not insulted because they

9    didn't off board me.

10           Go right ahead.

11           MS. BERNABEI:  As Your Honor knows, Fannie Mae has

12   put forward both in affirmative defenses and as reasons given

13   in internal reports and on the way that this was done pursuant

14   to legal advice that there were various types of conflicts of

15   interest that prevented them from, that prevented them from

16   allowing her to go to Treasury.

17           THE COURT:  Wait, there are two different issues.

18   One is her termination and the other is not going to Treasury.

19           So to which of those two does the assertion of conflicts

20   apply?

21           MS. BERNABEI:  In not allowing her to go to Treasury.

22           But if Your Honor remembers, she was going to Treasury

23   as a Fannie Mae employee, so the termination prevented her from

24   going to Fannie Mae -- excuse me -- to Treasury as an employee.

25   So they're sort of one in the same.  Her termination before she

1   could transfer as had been planned to Treasury was what caused

2   the damage and we have contended it was in retaliation for her

3   reports.

4         They say oh, no, there were a number of conflicts, gift

5   of services, number of conflicts and they've basically used it

6   as I believe it's their tenth affirmative defense but they

7   won't give us information about what supposedly legal advice

8   they received on that.  And we think that the discussions, in

9   fact, any legal advice that was given is relevant and has to be

10  --

11        THE COURT:  I'm sorry to interrupt you.

12        MS. BERNABEI:  No, it has to be produced because they

13  can't use it as a defense in this case and then tell us well,

14  you can't see the legal advice but trust us.

15        THE COURT:  Okay.  And was the, is the Tenth

16  Affirmative defense specific in its reliance on legal advice or

17  is that your interpretation of the language?

18        MS. BERNABEI:  I'm pretty sure that it's specifically

19  --

20        THE COURT:  Mr. Kabat, he's the font of all

21  knowledge.  All of the people in this room are eventually going

22  to be asking him for facts.

23        MS. BERNABEI:  That's true.

24        THE COURT:  Yes, I think so, including myself.  All

25  right.

1          So it's a specific Tenth Affirmative defense?

2          MS. BERNABEI:  Yes.

3          THE COURT:  Attorney --

4          MS. BERNABEI:  Made him blush.

5          THE COURT:  -- advice of counsel.  Okay.

6     What does Fannie Mae have to say about the fact that

7  it's relied on advice of counsel and now refuses to provide

8  evidence of the advice of counsel?

9          How are you?  You're walking as if you're in trouble.

10          MR. WILSON:  I actually had back surgery last -- so

11  I'll have to get my hips ultimately taken care of and some back

12  stuff.

13          THE COURT:  I would say you should sit down except

14  maybe you should --

15          MR. WILSON:  No, it actually feels better standing

16  up.

17          THE COURT:  Okay, anyway.

18          MR. WILSON:  Our apologies for the font size with the

19  privilege log.

20          THE COURT:  My eyes are too old to read that tiny

21  little thing.  I can read this one.  It's not quite as big as I

22  want.

23          MR. WILSON:  Your Honor, if it will facilitate to the

24  extent that you wish to go through that drill, I offer to your

25  clerk and I need a little time, but we will send you an excel

1  version of it that you can manipulate and filter to your hearts

2  content.  I don't know the extent that you and your chambers --

3          THE COURT:  Filter is not my thing.  It may be other

4  people but not me.

5          MR. WILSON:  Standing offer.

6          THE COURT:  Thank you.  I'm cool with what you've

7  given me in paper and what I can do with what's on the computer

8  which is to enlarge it automatically.  I just can't print out

9  what's on the computer and read it.

10          MR. WILSON:  We had a little difficulty, hence our

11  delay this morning.

12          THE COURT:  Yes, I appreciate that.

13          Okay, so what's your answer to the reliance on counsel's

14  advice and by the way, we're not going to tell you what it was?

15          MR. WILSON:  Well, first off, let me back up.  I

16  believe opposing counsel may be mistaken.  I don't have a copy

17  of our Tenth Affirmative defense before me, if they do, I'll

18  rely on it, but I don't think that we expressly said anything

19  about reliance on counsel.

20          I thought we said something there were conflicts of

21  interest that generally had to be addressed.  Again, I'm

22  working from memory here.

23          THE COURT:  Mr. Kabat knows everything.  Hold on.

24          Do you have it?

25          MR. WILSON:  I went to law school with Mr. Kabat,

1  I'll vouch for that.

2          MS. BERNABEI:  We have it.

3          THE COURT:  Yes, it's very clear to me too.

4      Why don't you come forward and let's read it into the

5  record.

6          Go ahead.

7          MS. BERNABEI:  Tenth Affirmative defense.

8      "The defendants have denied that they tortiously

9  interfered with any of Herron's perspective contractual

10 relationships or business expectancies, and they continue to do

11 so.

12     "However, if any defendant interfered with any of

13 Herron's alleged contractual relationships or business

14 expectancies, such interference was legally privileged and/or

15 justified due to."  And then it says, "Herron's stated desire

16 not to continue working at Fannie Mae, and/or (2) Herron's own

17 inappropriate behavior."

18     Then it lists a number of supposed issues and then it

19 goes on, "nevertheless any alleged interference by any of the

20 defendants was justified or privileged because neither Fannie

21 Mae nor any of the individual defendants was required to

22 tolerate Herron's behavior."

23     My understanding is that the interference was legally

24 privileged and justified.

25          THE COURT:  Yes, but legally privileged only means as

1   a matter of law.  It doesn't mean that we talk to a lawyer.

2          MS. BERNABEI:  Well, it says under and the part I

3   didn't read, Herron's own inappropriate behavior.  It says "an

4   unwillingness to accept that as a minimum Fannie Mae and

5   Treasury needed to develop and implement an appropriate

6   conflict of interest mitigation plan before she could start

7   working at Treasury while remaining a Fannie Mae contractor."

8          That is in fact a legal determination whether such a

9   plan was legally required.  And you probably remember from our

10  prior briefing, we don't think that there's any law that would

11  require that.

12         The documents at least to the extent that we can

13  understand supposedly provide the basis for Fannie Mae's

14  contention that a conflict of interest mitigation plan was

15  necessary.

16    I don't think Treasury thought it was necessary.  We have

17  e-mails that where Treasury says --

18         THE COURT:  That's all right, I don't need the

19  argument.  I just need to identify what it is that you think

20  constituted advice of counsel.

21         And what you're saying is that the statement that Fannie

22  Mae needed an appropriate conflict of interest mitigating plan

23  was based on advice of counsel and so therefore, but that's not

24  exactly going to her termination as much as it is whether or

25  not a conflict of interest mitigation plan was even necessary

1  in the absence of which, et cetera, et cetera.  I understand

2  how that flows.

3      But your inquiry really goes to whether, what was the

4  advice on a conflict of interest mitigation plan.

5          MS. BERNABEI:  Saying that that was necessary because

6  our legal research --

7          THE COURT:  Well, your legal -- stop, we're not

8  arguing this.  We're only in discovery.  I'm just trying to

9  figure out whether you have a right to things.

10     All right, so the question isn't every document that

11 pertained to the separation, we'll use the term separation of

12 Ms. Herron, how's that.  The separation of Ms. Herron.

13         The question is whether or not because of the statement

14 in the Tenth Affirmative defense that Fannie Mae needed an

15 appropriate conflict of interest mitigation plan before she

16 could move to Treasury opens up the discussions about the need

17 for and the nature of an appropriate conflict of interest

18 mitigation plan.

19         MR. WILSON:  I enjoin to that and there's case law.

20 One it's an SCM case from the District of Connecticut from the

21 '70s.  I don't have the actual cite.

22         Even if you were to make a general statement I did this

23 because I relied on advice of counsel that does not even open

24 the door for the underlying attorney client privileges.

25         However, we're not even in that neighborhood because our

1  affirmative defense does not state the bases for that is we

2  relied on advice of counsel to justify the need for mitigation,

3  a mitigation plan; nor are we going to rely on the

4  contemporaneous advice of legal counsel to that effect in

5  making that defense.

6       So what they are trying to get is, I'm speaking

7  hypothetically here.

8       THE COURT:  No, they're trying to get your attorney

9  client materials.  You've listed them as privileged by attorney

10 client and they say wait, stop, no sword and shield and all of

11 those other good things.

12      MR. WILSON:  But the appropriate typical situation is

13 to pretend that I am Joe Wilson in-house Fannie Mae counsel

14 speaking with another in-house Fannie Mae counsel outside

15 counsel Collyer from our outside firm, hey what do we need for

16 a mitigation plan?

17           THE COURT:  Right.

18      MR. WILSON:  That's what they want.  We're not

19 relying on any of those discussions to support the legitimacy

20 of this conflict of interest.

21      The conflict of interest legal perimeters are stated in

22 the FAA, they're out there in federal regulations.  Our defense

23 we could probably put up in one.  I don't think that we

24 necessarily have to prove definitively there was, but it was a

25 legitimate concern by throwing up facts against the legal

1   standards and let a jury decide, yeah, that strikes me as

2   legitimate, a legitimate concern.  Maybe at the end of the day

3   something that could be mitigated or was of no concern.

4        But we're a far cry from saying I got an opinion from my

5   outside counsel Collyer saying this is what you need to do

6   where you need a mitigation plan.  Ergo, that sword and shield

7   or the relevance of it, however you want to couch their

8   argument, just isn't applicable.

9            THE COURT:  Okay, come right ahead.

10           MS. BERNABEI:  Your Honor, I think it's improper to

11  parse this in this way.  If you remember in the internal report

12  they said specifically that there was a gift of services, that

13  having her work there would be a gift of services.  They've now

14  sort of backed away from that.

15       But, you know, their, Fannie Mae's statements along the

16  way as to why she could not go to Treasury as had been planned

17  is a central case.  Was it motivated by her disclosures, did

18  they have a legitimate reason.

19       And if we, so we have a need to probe, was there a

20  legitimate reason.  And they've said it was a gift of services

21  which is a legal conclusion, or is there some other conflict of

22  interest such as that you need a conflict of interest

23  mitigation plan that wasn't there.

24       It's all tied up in the same issue.  Was there a

25  legitimate legal basis to do it or not.  And that's why they

1   have put that at issue.

2        I also think there's a waiver here insofar as they've

3   made statements including in their internal report and publicly

4   to Congress, that report went to Congress that there was a

5   conflict of interest, this supposed gift of services, which is

6   why they did not allow Ms. Herron to go over to Treasury as an

7   employee.

8        So I think they've made multiple statements about the

9   fact that this was a legal issue, a legal issue.

10       THE COURT:  Well, okay, but let's assume that they

11  did.  I mean, does that mean for instance that, let's say wait,

12  the employer is charged by an employee with gender

13  discrimination.  And the employer responds no, no, no, it

14  wasn't gender discrimination, it was a BFOQ because we work in

15  a male prison.  So it's a BFOQ.  A bonafide occupational

16  qualification.

17       MS. BERNABEI:  Qualification.

18       THE COURT:  Oh, no, no, I knew you would know it, I

19  just wanted to be clear.  Is that helpful?

20       MR. WILSON:  What was it again, Your Honor?

21       THE COURT:  BFOQ, Bonafide occupational

22  qualification.

23       MR. WILSON:  Right, got it.

24       THE COURT:  All right, so the employer says no, no,

25  no, BFOQ.  Well BFOQ is a legal term.  The determination that

1    it's a BFOQ is a legal analysis.

2          Does that mean that because I turned to my lawyer and

3    said you know, you can't work, we can't have a woman working in

4    this male prison, she can't be around males who are walking

5    around the way they do in prison blah, blah, blah, and the

6    lawyer says well, you know, it's easy, it's a BFOQ.

7          Does that mean that I have relied on counsel?  No.  I've

8    discharged this person because I thought that we couldn't

9    have -- I, you understand.

10         MS. BERNABEI:  The manager.

11         THE COURT:  The employer, discharge the woman or

12   failed to hire her because it thought I can't have a woman

13   doing this job and the lawyer translated that into legal

14   language.

15         That doesn't allow discovery of my conversation with the

16   lawyer, does it?

17         MS. BERNABEI:  No.

18         THE COURT:  So you need to go a little deeper in your

19   analysis than you are right now if that's what you want.

20         MS. BERNABEI:  You're right, you're right.

21         What Fannie Mae has done is said our lawyer said that a

22   mitigation plan was necessary.

23         THE COURT:  When did they say that?

24         MS. BERNABEI:  They said that in this.  They said she

25   wouldn't cooperate -- it says Fannie Mae and Treasury needed to

1  develop and implement an appropriate conflict of interest

2  mitigation plan.

3        In other documents we have, they say that the lawyers

4  told us we had to do this.  And in the internal report they

5  said in fact the lawyers told us it would be a gift of services

6  if she went to Treasury.

7        So they're relying on legal advice.  They're not coming

8  and saying we figured out for ourselves there was a conflict of

9  interest.  We consulted people.  They're saying the lawyers

10  told us, so that's different.

11        THE COURT:  Okay, but you aren't citing to me

12  anything in which they are saying the lawyers told us with

13  respect to Mr. Kabat.  I don't see that in the Tenth

14  Affirmative defense.  Now it may be in other documents in

15  response to other inquiries in response to interrogatories or

16  something, but I don't see that in the answer.

17        MS. BERNABEI:  So we can get you those other

18  documents.

19        THE COURT:  Well, if they have said it, then we can

20  consider it, but for the moment, I don't have a basis to say

21  that they have relied on advice of counsel in a way that would

22  then open up the advice of counsel to discovery.

23        MS. BERNABEI:  Let me just go a little, let me phrase

24  this another way.

25        If you take a look at the way they phrase the Tenth

1   Affirmative defense, they are essentially saying we have, that

2   our lawyers have told us about a litigation plan.  We will get

3   you the other documents.  They can't hide behind --

4           THE COURT:  They say in the tenth, you read it to me.

5           MS. BERNABEI:  Yes.

6           THE COURT:  I didn't see any reference in what you

7   read to counsel, lawyer's advice.

8       What they said was an appropriate conflict of interest

9   mitigation plan would have been necessary or was necessary and

10  didn't exist or something like that.  I'm not, I don't have, I

11  wrote down only appropriate conflict of interest mitigation

12  plan.

13          In terms of what might be needed by an appropriate

14  conflict of interest mitigation plan, I don't know.  Is that

15  discoverable since that is part of your defense?

16          MR. WILSON:  What might be needed?

17          THE COURT:  What would an appropriate conflict of

18  interest mitigation plan have required?

19          MR. WILSON:  I don't --

20          THE COURT:  What were the elements of an appropriate

21  conflict of interest mitigation plan?  What did Fannie Mae

22  think it needed in order to proceed?

23          MR. WILSON:  Let me back up.  I don't think that's

24  discoverable.  Again, if we go to the internal communications

25  with counsel privilege would do that.

1          The conflicts of interest in the tarp realm again, are

2   set out in federal regs and they're fairly detailed.  So I

3   think from that one can glean well, the legitimacy of conflicts

4   of interest in what maybe have to be done to address it.

5   Specifically they also talk about mitigation plans.  Whether

6   they get as granular and you have a check list menu for

7   instance, if that's what you are getting at.  I don't believe

8   the federal regs go --

9          THE COURT:  Well, my question is since Fannie Mae,

10  and this is a question of discovery, not detail, since Fannie

11  Mae specifically said in its Tenth Affirmative defense that

12  we're not guilty because, among other reasons, it would have

13  been, it was necessary, I can't remember the beginning of the

14  sentence, to have an appropriate conflict of interest

15  mitigation plan which didn't exist whatever that sentence says.

16         Having made that part of Fannie Mae's defense is it not

17  then possible to discover what Fannie Mae meant other than the

18  regulations?  Everybody can look at regulations, but what did

19  Fannie Mae, what did the managers of Fannie Mae think would be

20  necessary to have an appropriate conflict of interest

21  mitigation plan that prevented the transfer of Ms. Herron to

22  Treasury?

23         MR. WILSON:  Well, a bit of background here, Your

24  Honor, to help you out.  Ms. Herron's separation --

25         THE COURT:  Yes, separation is the term we're using.

1          MR. WILSON:  Your terminology, not mine.

2          THE COURT:  That's all right.  You're going to tell

3  your client how awful I find off boarding, right.  Just as a

4  kindness to me you're going to go back and say I took more

5  grief today, you cannot believe that we should actually --

6          MR. STEWART:  I heard it loud and clear, Your Honor.

7          THE COURT:  Right, there's actually a real person

8  here.

9          MR. WILSON:  Her separation occurred at the nascent

10 stages of the exploration of the mitigation plan.  So to think

11 that this was fully blown, I don't think that our affirmative

12 defense says otherwise.  Among other things it says

13 unwillingness to accept that at a minimum the Treasury needed

14 to develop and implement an appropriate conflict mitigation

15 plan.

16         THE COURT:  Why is, what was the reason she was

17 separated?

18         MR. WILSON:  What is the reason?  We have here that

19 she was unwilling to explore and work out the conflicts and

20 then she was pursuing her own personal agenda trade to elevate

21 and take these things up the scale.

22      Mr. Kasdan.

23         MR. KASDAN:  If I may, Your Honor.

24         THE COURT:  Yes.

25         MR. KASDAN:  You asked what the plan would entail,

1  okay.  The record is clear and the discovery has been made to

2  them of specific questions that were sent from Fannie Mae to

3  Treasury to explore what that mitigation plan might result in.

4       So they have that already.  And that's not a waiver of

5  anything.  These are the questions that we sent over.  It's the

6  advice of counsel before that that's at issue over here.

7           THE COURT:  No, no, I understand that.

8       My question; however, isn't quite into, my question is

9  having put the necessity for a conflict of interest mitigation

10 plan into the defense of Fannie Mae specifically, isn't it

11 subject to inquiry as to what Fannie Mae managers thought was

12 an appropriate conflict of interest mitigation plan?

13      And their questions to Treasury may be demonstrative of

14 that, but isn't it possible to obtain from them what they

15 thought this meant since it has been put forward as part of the

16 defense?

17           MR. KASDAN:  If they would like to take a deposition

18 of the person.

19           THE COURT:  But without the documents how can one do

20 that?

21           MR. KASDAN:  They have the documents.  They have the

22 questions.  If they want to ask questions about a document that

23 is not privileged, they're entitled to do that.

24      What we're saying is that they can't get the documents

25 beforehand that are from advice of counsel.  It's as simple as

1    that.

2            They're entitled to explore what the mitigation plan --

3                THE COURT:  Believe me, I understand all of that.

4        So it's your position that even the statement that,

5    about the necessity for an appropriate conflict of interest

6    mitigation plan does not open up the attorney client privilege?

7                MR. KASDAN:  In our opinion emphatically not.

8                THE COURT:  Oh, emphatically.  Woe!

9                MR. KASDAN:  If we want to say advice to counsel, we

10   could write that, we didn't write that specifically.

11               THE COURT:  Okay.

12               MS. BERNABEI:  Your Honor, this is getting a little

13   far afield from what actually happened.

14        They did send questions over to Treasury.  Treasury did

15   answer those and they were going to approve the plan on January

16   8th, 2010.  Okay.  That was either the day or the day after,

17   the day before she was terminated or separated.

18               THE COURT:  Well, she can be terminated too, she just

19   can't be off boarded.

20               MS. BERNABEI:  And Fannie Mae found out that they,

21   that the Treasury had approved the plan, they then came up with

22   this gift of services.  Both of these are legal defenses and

23   they've said so in prior documents.  So --

24               THE COURT:  Well, okay.  If you have documents to

25   show that Fannie Mae relied on advice of counsel, then I need

1  to see them because I don't have them right here today, all

2  right.

3       MS. BERNABEI:  But in any case, I think Your Honor's

4  sense is that now they're saying an appropriate conflict of

5  interest mitigation plan was necessary.  We should find out

6  what that was at a minimum.

7       THE COURT:  Well, that is, according to counsel for

8  Fannie Mae, perfectly open to discovery through depositions or

9  otherwise.

10      MS. BERNABEI:  Well, we've asked --

11      THE COURT:  But not through attorney client

12  privilege.

13      MS. BERNABEI:  Well, we've asked them the questions

14  and we've gotten nothing on that.  We've asked them in

15  interrogatories to identify facts and documents to support each

16  affirmative defense and we have got nothing.

17      What we do have is questions to Treasury I believe.

18      THE COURT:  Well, do you have anything other than

19  that, other than questions and answers from Treasury?

20      Stop, wait, wait.

21      MS. BERNABEI:  Sorry.

22      THE COURT:  Don't be too argumentative.

23      MR. KASDAN:  Your Honor, I know the facts a lot,

24  perhaps not as well as Mr. Kabat does.

25      To say that they haven't gotten anything in discovery is

1  a bit of an exaggeration.

2         THE COURT:  No, no.  Obviously, they have gotten a

3  lot in discovery and but they haven't gotten everything in

4  discovery.

5         The question is what did you provide in discovery to

6  support the Tenth Affirmative defense?

7         MR. KASDAN:  We've given them everything that they

8  have asked for.

9         THE COURT:  No, no.  I want to know precisely what

10  did you supply?  You must have supplied the questions to

11  Treasury.

12         MR. KASDAN:  Yes.

13         THE COURT:  The answers from Treasury?

14         MR. KASDAN:  They have that as well.

15         THE COURT:  Did you supply it?

16         MR. KASDAN:  Yes.

17         THE COURT:  Okay.  What about the gift of services

18  information?  Did you supply that?

19         MR. KASDAN:  I don't think there were any documents

20  on that, Your Honor.

21         The only documents about gift of services that I recall,

22  I could stand corrected, is the document that they had that

23  they supplied to us.  I do not believe there's any documents on

24  that.

25         I would also like to correct the record.  There's

1   nothing that I am aware of that says that Treasury approved a

2   mitigation plan and I would also say that Treasury never

3   answered all of those questions.  The questions --

4            THE COURT:  Okay, okay, okay.  Come on.  We're not in

5   there yet.  I really want to keep this to the discovery

6   dispute.

7            MR. KASDAN:  Sure.

8            THE COURT:  Because we could wonder, as we have for

9   years, so let's try to keep it to the discovery dispute.

10           MR. WILSON:  Your Honor, if I may?

11           THE COURT:  Yes.

12           MR. WILSON:  One of their document requests they

13   asked regarding several affirmative defenses.  I'm not certain

14   if they asked about the Tenth Affirmative defense, but let's

15   pretend that that was one they asked and they say all documents

16   upon which you rely to support your defenses or your defense.

17           We responded with listing by Bate number other document

18   identifiers adding various documents under each defense.  We've

19   been before you I believe in February with similar questions

20   that we asked of them and they came back with us and we

21   followed your lead.  We do learn.  And provided -- I can't say

22   as a matter of fact if they, one of their document requests was

23   please list all of the stuff you relied on to support your

24   Tenth Affirmative defense.  If it wasn't that tranche of

25   discovery request, again, that's how we would have responded.

1          THE COURT:  Okay, I have to advise the plaintiff's

2     counsel that they need to either come forward with something

3     that's more specific in terms of reliance on advice of counsel

4     or else we don't have advice of counsel from the document; that

5     is, the answer itself.  Okay.

6          MS. BERNABEI:  And Your Honor, just request that if

7     the defendants are representing to you that they're not relying

8     on advice of counsel, then that they be barred from introducing

9     any evidence down the road that they did so.

10          THE COURT:  Well, yeah, if they're not relying on

11     advice of counsel and they're not providing discovery into

12     counsel's advice, then they can't rely on advice of counsel

13     later.

14          MS. BERNABEI:  Okay.

15          THE COURT:  But they know that.

16       All right.  What's your second most critical issue?

17          MS. BERNABEI:  Now this has to do with our tab B,

18     it's category five, the HAMP roll out.

19          THE COURT:  Okay.

20          MS. BERNABEI:  As you know our, it's important in our

21     case for, for us to be able to show, not just through her

22     testimony, but also through documents that Ms. Herron reported

23     problems and there were in fact problems which was the

24     motivation for Fannie Mae separating or terminating her.

25          This is part of our tab B and we have asked for

1  information about Treasury's compensation of Fannie Mae,

2  implementation of the financial agency agreement and Fannie

3  Mae's performance under that.

4       Now we believe that Fannie Mae's failure to comply with

5  the requirements under the contract in particular under the

6  HAMP program is relevant to showing yes, the problem she raised

7  were serious problems.

8       Defendants claim that their performance on Treasury

9  contracts was adequate but refused to give us any discovery on

10  those.  And they partially claimed, refused to do so on the

11  basis of the attorney client privilege.  But the lawyer's role

12  in the performance under the contract in particular with the

13  HAMP program is a role in providing business advice and we have

14  actually gone into at length and we submitted a declaration

15  from Ms. Herron that the only part of her work where she ever

16  interacted with lawyers in a legal way was over privacy

17  concerns with the borrower portal.  Everything else was

18  business.

19       So Mr. Wilhelm who a lot of these, a lot of these

20  documents concern, he was giving business advice at least in

21  all of his interactions with Ms. Herron.

22       What defendants have done is they have selectively

23  released some documents that make them look good.  Look like

24  they are performing under the contract while denying discovery

25  into others, those are the red documents.

1          THE COURT:  Named the edge.

2          MS. BERNABEI:  Red.  The ones that are tabbed red.

3  And we think that almost all of the documents, we know that you

4  can't really make the determination without looking at the

5  documents themselves necessarily, but that almost all of the

6  documents they withheld in tab B and that's at 11 through 15,

7  almost all of them have to do with business advice, not legal

8  advice.

9          THE COURT:  Okay.  You don't have those documents,

10  right?

11          MS. BERNABEI:  No.

12          THE COURT:  You just are operating on what your

13  client has told you about how Mr. Wilhelm actually operated in

14  this context?

15          MS. BERNABEI:  Yes.  And we've asked, and the

16  defendants have not made individualized arguments, document by

17  document.

18          THE COURT:  No, they haven't made even a description

19  of the document that is individualized which makes it very

20  difficult for me to review the privilege basis when the

21  privilege basis is the same document after document after

22  document.

23          MS. BERNABEI:  And Your Honor, we believe that given

24  the circumstances the only appropriate way for Your Honor to

25  make these determinations is to look at the document.

```
 1              THE COURT:  All right.  The question is whether or

 2   not the Treasury compensation of Fannie Mae, the contract

 3   between Treasury and Fannie Mae in the HAMP program and

 4   Treasury's performance under that contract are subject to

 5   discovery?

 6              MR. WILSON:  I will answer your question if I can hit

 7   a comment that you made about our individualized descriptions.

 8              THE COURT:  Right.

 9              MR. WILSON:  No doubt you do see --

10              THE COURT:  No doubt.

11              MR. WILSON:  No doubt emphatically you will see our

12   descriptions.

13              THE COURT:  They repeat each other.

14              MR. WILSON:  Yes.

15              THE COURT:  Again and again and again.

16              MR. WILSON:  And that's because many of these

17   documents --

18              THE COURT:  Are e-mail chains.

19              MR. WILSON:  -- are virtual duplicates.

20              THE COURT:  Government, I've done this.

21              MR. WILSON:  Lucky you.

22              THE COURT:  Yes, lucky me.

23              MR. WILSON:  So back to the hundred thousand dollar

24   question.

25              THE COURT:  Right.
```

1          MR. WILSON:  Fannie Mae's performance under the

2    contract, I don't think we've claimed a broad privilege for

3    that.  It's attorney client privileged communications.

4          And you can imagine when you're implementing a massive

5    Government program there are going to be various legal issues

6    that arise from procurement to privacy which they have

7    admitted, to other aspects as we have seen conflicts of

8    interest, where you are going to need the advice, to inquire of

9    counsel and seek their legal advice and get their thoughts to

10   address those things.  Those are the types of instances on

11   which we've relied.

12         Mr. Wilhelm in particular, deputy general counsel within

13   Fannie Mae's legal department, was and his principal role was

14   to provide legal advice.

15         I would be a fool to say that in certain instances some

16   of that probably dovetailed as does with most attorneys

17   business advice, but that does not for the purpose somehow mean

18   he wasn't giving legal advice I believe under case law.  Okay.

19   I mean, you can look a lot of, if Your Honor would like, to the

20   extent just the nature of the documents when inquiring about

21   procurement regs.

22         THE COURT:  How many documents are there, putting

23   aside the privacy issues, how many documents are there that are

24   claimed to be subject to attorney client privilege that address

25   the contract between Treasury and Fannie Mae on Fannie Mae's

1 work with HAMP, on the performance of Fannie Mae and on

2 Treasury's compensation for that?

3       Because I mean, I have got a lot here that say internal

4 communications for legal advice regarding issues.  Services

5 concerning HAMP requirements, potential new HAMP offering and

6 provision of legal advice concerning the same.  I have no idea

7 whether that treats any one of these three points that are

8 subject of inquiry.

9             MR. WILSON:  Ms. Bernabei started talking about HAMP

10 roll out which is one part of their tab B which in part five, I

11 actually think the number of documents for which privilege is

12 claimed under that is probably the smallest number.

13       She then started talking about performance under the FAA

14 and compensation.  That's actually another category in tab B,

15 that's part 6.  I'm working off memory here, Your Honor, having

16 filtered this privilege log several times.

17       I believe the documents that deal with part 6 Fannie Mae

18 comp and performance probably about a 150.  I would estimate if

19 one were to pare out virtual dupes of that you are probably

20 going to cut that number in half or by a third.

21             THE COURT:  Okay.  That would be --

22             MR. WILSON:  I'm working off memory there and

23 ballpark.

24             THE COURT:  Right, right, that would be tab B, number

25 11, Treasury's compensation of Fannie Mae's and Fannie Mae's

1  performance.

2          MR. WILSON:  Right.

3          THE COURT:  You are saying that that's about 150

4  documents, cut in half about 80?

5          MR. WILSON:  Cut in half, probably frankly less than

6  that if you were to go to the high level parts of the thread.

7          THE COURT:  Okay.  All right.  And then HAMP roll

8  out.

9          MR. WILSON:  That's again, that's their part five of

10 their tab B, the privilege log that we gave you one of the

11 first, the third column actually categorizes the documents by

12 their topic.

13         THE COURT:  Yes.  Sort of.

14         MR. WILSON:  Thanks, Your Honor.

15         THE COURT:  Well, if I were more familiar with this

16 subject matter as I get every time I see you, then I would

17 probably nod my head easily but not quite yet.

18         MR. WILSON:  Yes.  Working from memory, I do think

19 that that's now, that might be one of the smaller categories by

20 volume, I can give you a number.  There's not a number that

21 sits in my head.

22     Again, I have the ability to filter this via Excel and I

23 can give chambers numbers in that respect.  But again, given

24 the nature of e-mail exchange you can probably take whatever

25 number we have on the log for the particular category and

1    ballpark cut it in half.

2         THE COURT:  Well, the question is Ms. Herron says

3    that she made reports within Fannie Mae and to Treasury about

4    mismanagement of Treasury programs including servicer issues,

5    et cetera.

6         MR. WILSON:  That's a hotly disputed fact by the way,

7    Your Honor, what we would characterize by reports.  We would

8    say the kibitzing of going on in the give or take of business.

9         THE COURT:  Okay.

10        MR. WILSON:  I don't think that there's anything

11   quote unquote mismanagement was invoked.

12        THE COURT:  Okay.  Let me ask why Ms. Herron thinks

13   that whether she made such complaints or not that would be

14   sufficient to break down the attorney client privilege?

15        MS. BERNABEI:  It's not exactly the argument.  The

16   argument is that this all had to do with business decisions,

17   that's the first argument.  These were not lawyer tactics.

18        THE COURT:  The only way I can determine whether

19   Mr. Wilhelm was actually giving legal advice or business advice

20   is looking at the documents themselves?

21        MS. BERNABEI:  I think so, Your Honor.

22        THE COURT:  That's really a gift.  All right.

23        MS. BERNABEI:  And I think that --

24        THE COURT:  Is that true, how many is that true for?

25        MS. BERNABEI:  You know, we haven't seen the

1   documents.

2            THE COURT:  Listen, this is a simple question.  Give

3   me a simple answer.  Come prepared.  How many documents do you

4   think I need to look at to respond to your tab B?

5            MS. BERNABEI:  We'll have to let you know.  I don't

6   know.

7            THE COURT:  Well, you better let me know soon.

8            MS. BERNABEI:  All right.

9            THE COURT:  And your position is that all of this is

10  legal advice?

11           MR. WILSON:  Yes, Your Honor.

12           THE COURT:  Okay.

13           MR. WILSON:  Yes, Your Honor, predominantly there may

14  be some business advice interwoven.

15           THE COURT:  Okay, tab C, B, D is Treasury, is

16  Treasury in a position to participate in this relay today or

17  not?

18           MR. INTERRANTE:  Barely, Your Honor.

19           THE COURT:  Okay, don't come forward yet.

20           MS. BERNABEI:  Mr. Kabat says both the red and yellow

21  around 400.  Now that's with a lot of duplicates, so you know.

22        You asked about tab --

23           THE COURT:  I asked about everything in tab B.

24           MS. BERNABEI:  Tab B that's my understanding is

25  around 400.  Now again, many of them are duplicates, but we

1   don't know.

2          THE COURT:  That's no particular help to me.

3       All right, where is Treasury on all of this?

4       Mr. Interrante.

5          MR. INTERRANTE:  Yes, Your Honor.

6          THE COURT:  Did I say your name properly?

7          MR. INTERRANTE:  Yes.

8          THE COURT:  How do you pronounce your name?

9          MR. INTERRANTE:  Interrante.

10         THE COURT:  That was pretty close.

11      Mr. Interrante.  Mr. Interrante, sir, where is Treasury

12  in all of this?

13         MR. INTERRANTE:  Well, I remain optimistic that we

14  will be out of that.

15         THE COURT:  Don't talk to me about optimistic.

16  What's your relationship with Fannie Mae these days?  Have you

17  figured it out yet or are you still fighting?

18         MR. INTERRANTE:  Here's where we stand, Your Honor,

19  is and I filed a status report late last night trying to give

20  the Court a little bit of the sense of where we are.

21         THE COURT:  You know, filing something late at night

22  before a hearing is not a lot of help.  I just want to advise

23  you, I advise you, I have other cases, it's the most amazing

24  thing.

25         MR. INTERRANTE:  Well, unfortunately, Your Honor --

1          THE COURT:  I work at home at night, but I didn't go

2  into ECF to see what you filed after midnight.

3      Go ahead.

4          MR. INTERRANTE:  It was before midnight.

5  Unfortunately, I was not able to work for the better part of

6  three weeks.

7          THE COURT:  Neither was a, were a lot of people in

8  the Government.  Just tell me where you are with Fannie Mae.

9          MR. INTERRANTE:  Okay, our role in this case as we

10  see it as involvement --

11          THE COURT:  I don't care about that.  I want to know

12  are you still fighting with Fannie Mae about the production of

13  documents?  Yes or no?

14          MR. INTERRANTE:  I don't think we're fighting.  We

15  have reviewed all of the documents --

16          THE COURT:  Is there a discovery dispute between the

17  two agencies as to what's privileged or not on any basis of

18  privilege that might be claimed?  Do you want to claim

19  privileges that they don't agree with or do they want to claim

20  privileges that you don't agree with whether it's between the

21  two of you or not?

22          MR. INTERRANTE:  Well, we're not sure, Your Honor.

23  Because we didn't think that we were even to be fighting with

24  Fannie Mae about privileged over documents that they set aside

25  as privileged in the first instance.

1          THE COURT:  I didn't say you were.

2          MR. INTERRANTE:  I have no fight with them.

3          THE COURT:  It's the parties that have told me that

4  Fannie Mae and Treasury don't agree.  But they keep saying

5  well, we're going to, we're going to, we're going to.

6      So the question is have you yet?

7          MR. INTERRANTE:  We would be very surprised if they

8  would be challenging privileges on documents that they set

9  aside as privilege.

10      We were brought in the litigation to review those

11  documents by the court order and designate which documents we

12  did not think were privileged and which ones were.

13      We provided that along with privileged logs to the

14  plaintiff in compliance with this Court's order and the

15  deadline set by this Court.  And the plaintiff came back to us

16  with about a hundred documents.

17          THE COURT:  Saying what?

18          MR. INTERRANTE:  Saying that we think, we went to, we

19  went to the plaintiff and said look, we'll consider

20  discretionary releases if it's a reasonable amount of

21  documents.  They came back with about a hundred.

22      Treasury has gone through those.  There's been a little

23  bit of a delay.  They say it will take about seven to ten days

24  to complete the review.  The expectation is I think they expect

25  to make a substantial amount of discretionary releases.

1          THE COURT:  Well, okay.  So but that hasn't happened

2    yet and so at the moment you haven't reached a final position

3    vis-a-vis the plaintiffs?

4          MR. INTERRANTE:  That is correct.

5          THE COURT:  Okay.  Have you reached a final position

6    vis-a-vis Fannie Mae?

7          MR. INTERRANTE:  No.

8          THE COURT:  Okay.

9          MR. INTERRANTE:  What we said to Fannie Mae is we

10   expected some counter designations out of fairness and they

11   came back with 500 documents and we thought that was

12   unreasonable because of five times what the plaintiff had, and

13   then apparently half of those were duplicates because that was

14   a problem here because Treasury doesn't know that.

15        So they reduced it to 250 and Treasury said that's still

16   too much, how about a hundred.  They came back with a hundred,

17   that's my understanding when I was out and so Treasury is

18   reviewing those.

19        THE COURT:  You mean they weren't on furlough with

20   you?

21        MR. INTERRANTE:  Apparently I'm the only one who

22   didn't get paid.

23        THE COURT:  You're going to.

24        MR. INTERRANTE:  Okay, because I still haven't gotten

25   paid.  But in --

1           THE COURT:  Nobody has gotten paid yet.

2           MR. INTERRANTE:  Okay.  So what has happened --

3           THE COURT:  Well, Ms. Bernabei might.

4           MR. INTERRANTE:  We came back and they're going to

5    review those under the same 7 to 10 day time frame.  And

6    consider making substantial discretionary releases.

7           At that point we're hoping that we're done with this

8    process of reviewing the documents that were set aside back in

9    November of last year that there, they're doubled in size by

10   the time we reach the final court deadline and that's where we

11   stand.

12          THE COURT:  In which case when we get to the end of

13   that, you will happily exit stage left?

14          MR. INTERRANTE:  Gleefully.

15          THE COURT:  You don't like being here.

16          MR. INTERRANTE:  I love being in front of this Court.

17          THE COURT:  I knew that.

18          MR. INTERRANTE:  Not on a case where I'm a party.

19          THE COURT:  I appreciated that.

20          MS. BERNABEI:  Your Honor, there's one issue, and I

21   do think we're able to resolve it with Treasury, is there's

22   this whole issue about incentives.

23          THE COURT:  You think you're going to be able to

24   resolve it with Treasury, then I don't want to know about it.

25          MS. BERNABEI:  Okay.

1          THE COURT:  If you can resolve it, then I don't even

2    care.  It's totally, when lawyers can resolve things between

3    themselves, I say go to it.

4          Yes, sir.

5          MR. INTERRANTE:  I think that's right.

6          Your Honor, there was one issue remaining from the

7    subpoena.  The plaintiffs have narrowed it down with Treasury

8    to one particular item and we're hoping to resolve that within

9    the same time frame.

10          THE COURT:  Okay.  So now have we resolved the

11    Treasury -- I'm sorry, have we resolved Ms. Herron's major

12    concerns here?

13          One is we don't have any proof of attorney client

14    privilege and the other is a question of whether something is

15    business or legal advice which I can only resolve by looking at

16    the documents.  That's as far as we've gotten, is that it?

17          MS. BERNABEI:  I think those are the major issues,

18    Your Honor.

19          THE COURT:  Okay.  Is there a major issue on the

20    other side that needs to be addressed other than those two?

21          MR. KASDAN:  I don't know, Your Honor, if I call it

22    major.

23          But we do have for Your Honor we submitted a dispute

24    that we still have over discovery that we propounded to them.

25    And for which they have not given us --

1          THE COURT:  Is this the question of Ms. Herron's job

2   search and things like that?

3          MR. KASDAN:  Job search and what were the stresses

4   that caused her alleged emotional distress including financial

5   issues and her husband's pressures at work which is part of Dr.

6   Kalin's report which is the psychologist that she gave to us.

7          THE COURT:  All right.  And the idea from Ms. Herron

8   is that what happened before 2009, job search for instance, is

9   not relevant.

10          I have to say that I think that is correct.  That the

11   market in 2008, 2009 for job search was different than the

12   market in 2010 and 11.

13          Now 2013 we might be back to 2009.  So I'm not talking

14   about present day, but I don't know, is Ms. Herron employed

15   right now?

16          MS. BERNABEI:  Your Honor, she started her own

17   business which is starting to take off.  So.

18          THE COURT:  When did she start that?

19          MS. BERNABEI:  She started working on that, but she's

20   only been recently compensated and we've told defendants that.

21          THE COURT:  Okay.  I'm not going to address that

22   today then.

23          So the job search I think in 2008 or before 2009 is

24   really cats and dogs to after 2010 when she was separated.

25          The question of the emotional distress from her husband

1    and financial damages, let me see if I can separate this.

2    Financial damages that Ms. Herron seeks is lack of pay from

3    having been employed, right?

4          MR. KASDAN:  She's also asking for emotional

5    distress.

6          THE COURT:  Wait, wait.  Right, there are two

7    different things.  One is back pay and then the other is

8    emotional distress.

9          MR. KASDAN:  I think also, Your Honor, and I'm not

10   clear on this.  But I believe that she's asking for actual

11   money that she gave to her attorneys from her 401 K plan.

12   That's part of her damages.

13         THE COURT:  No, she says no.  She says no.

14         MS. BERNABEI:  No.

15         THE COURT:  She says her lawyers will take that money

16   happily.  That is not at all what Ms. Bernabei said.  Let the

17   record be clear about it.

18         MR. WILSON:  Emphatically.

19         THE COURT:  Emphatically, thank you, sir, that's

20   exactly what I need was the help.

21         So the back pay issue you guys can figure out what that

22   is, right, you don't need help with that.  It's a question of

23   from when to when and whether there was proper mitigation,

24   right, but all right.

25         Yes, sir.

1          MR. KASDAN:  If I may, I'm not going to belabor it.

2    I understand Your Honor's point.  I would just make two small

3    points for Your Honor's consideration.

4          First of all, what we're looking for is related to

5    information that's contained in her psychologist's notes.

6          THE COURT:  Right.

7          MR. KASDAN:  And that includes her job searches, et

8    cetera, et cetera, and the stress that she had at that time

9    even if it was before she returned to Fannie Mae.  So we think

10   that there's a relevance over there.

11         Second of all, the reason why we think that we can go

12   back a little bit is really tied to a prior ruling that Your

13   Honor made which was to allow us to get some of these

14   psychologist notes going back before she returned to Fannie

15   Mae.  So that's why we're asking about this in terms of the job

16   search.

17         We think that we should be entitled to discover her

18   means and methods in looking for a job which is something which

19   is relevant no matter when she was doing that.  It's not a

20   question of what the result was, but how she went about doing

21   it.

22         THE COURT:  You can ask about that after January of

23   2010 and get the relevant response rather than if she used an

24   entirely different approach in 2009 than she did in or

25   whenever, before 2009 than she did in 2010, that's irrelevant.

1      I mean, what matters is how she looked for a job after

2  her termination in January of 2010.  And if she didn't use wise

3  approaches, then you have a mitigation argument.  If she used

4  unwise approaches in 2008 or 9, it's not going to help you.

5      MR. KASDAN:  I understand, Your Honor.  We object for

6  the record, that's all.

7      THE COURT:  That's fine, your objection is noted and

8  taken for the record.

9      Now the next question though is the issue of monetary

10  concerns.  And one of the things you want to know is the

11  stresses and income of Ms. Herron's husband; is that right?

12      MR. KASDAN:  Dr. Kalin's notes which were provided by

13  summary while this case was ongoing and summarizes what has

14  transpired since the beginning of this case specifically

15  mention stressors in terms of her husband's job, and her

16  general finances, so it's not even going back so far, it's

17  during this time period of this case.  That's what she gave us

18  in discovery, we're entitled to follow up on that.

19      THE COURT:  Well, the question, I agree that you're

20  entitled to question her about it.  I, it's right there.  I

21  agree with that.

22      The question is whether that, nature of that discovery

23  allows you to then inquire more specifically about a non-party

24  and into very personal objective information from a non-party

25  which objective information isn't as relevant as it's impact on

1  the plaintiff.

2      You can query the plaintiff about the impact.  But can

3  you query the non-party about objective facts?

4      MR. KASDAN:  We're not trying to query her husband.

5  We have asked in interrogatories that she's not responding to.

6      THE COURT:  What is the nature?  Believe me, I've

7  read them.  I'm sorry that I don't have it boom, right here in

8  front of my face.  But give me a for instance.

9      MR. KASDAN:  A for instance would be we said describe

10  in detail your husband, her husband's financial pressure and

11  stress at work noted by Dr. Kalin in her notes.  This is part

12  of the summary that was provided by Dr. Kalin, I believe it was

13  in August of 2010.

14      THE COURT:  Believe me, I don't need you to keep

15  defending yourself.  So you want Ms. Herron to describe her

16  husband's stress at work?

17      MR. KASDAN:  Financial pressure, yes.

18      THE COURT:  So what you want is the fact of those

19  financial pressures or her perception of those financial

20  pressures as they impacted her?

21      MR. KASDAN:  Both, either, I think it's all the same.

22      THE COURT:  It's not the same.

23      MR. KASDAN:  Okay, then I stand corrected.

24      THE COURT:  One is asking her to provide information,

25  objective information about a third party which is the third

1  party being only a husband might not want to provide to you.

2  Anybody.  Me.  I mean, you know, it's not you personally, it's

3  I don't want my stuff out there.

4          MR. KASDAN:  Fine.

5          THE COURT:  I don't want my private information out

6  there.

7      But if you ask Ms. Herron what is it about your

8  husband's stressors, what is it about your husband's financial

9  situation that seems to have impacted you, that's directly

10  relevant.

11      And for her to say well, he was up late at night

12  worrying about things and I couldn't sleep, that's your answer.

13          MR. KASDAN:  That's fine, Your Honor.

14          THE COURT:  That's all.  I mean, I don't want to be

15  unfair to either side, but the fact that these are two separate

16  people maybe it would be more clear if they used separate names

17  or they weren't actually married or whatever, but in today's

18  world you kind of have to recognize that they're not the same

19  person.

20          MR. KASDAN:  That's fine, Your Honor.

21          THE COURT:  Okay.  So as modified by the Court

22  Ms. Herron is directed to respond to the questions about what

23  is it about her husband's stress at work that caused her to be

24  impacted.  And what is it about her husband's financial

25  concerns that caused her to be impacted, et cetera.  I don't

1  have all of the questions in front of me, but you understand

2  where I'm going.

3          MR. KASDAN:  Yes, Your Honor, that's fine.

4          THE COURT:  And I don't think that Ms. Herron can

5  avoid answering those.  And she can't just say well, you know,

6  he's my husband and when he's concerned I'm concerned.  That

7  sort of answer will then open up the entire thing about what

8  then is going on with your husband.

9      So we're going to need more information than just a

10 simple flip of the hand.

11         MS. BERNABEI:  Okay, thank you, Your Honor.

12         THE COURT:  Okay.

13         MS. BERNABEI:  That's clarifying and helpful.

14         MR. KASDAN:  On the same topic.

15         THE COURT:  Yes.

16         MR. KASDAN:  So I'm not confused, Your Honor.

17     We also asked her about her own financial pressure

18 so-to-speak.

19         THE COURT:  Right.

20         MR. KASDAN:  Dealing with construction of the house

21 and cashing out from her stock accounts and the like.  We think

22 that that's relevant as well in terms of what may have caused

23 her emotional distress.

24         THE COURT:  If there were, I mean, if she had

25 financial pressures as a result of both or both or more that

1  she felt, then she has to explain them to you.

2          MR. KASDAN:  Thank you, Your Honor.

3          THE COURT:  Ms. Herron says that as a result of this

4  series of events, she suffered stressful situation that caused

5  her damages and she needs to be able to explain that.

6          MR. KASDAN:  All right.  The last thing, Your Honor,

7  these are interrogatories.  I think we asked for production of

8  documents that would support any of this.

9          THE COURT:  If there are documents to support the

10  impact on Ms. Herron, then they need to be produced.

11      It may be that you're not going to get very much.  It

12  may be that you're going to have to just inquire at a

13  deposition.  But she needs to nonetheless respond with a

14  speaking response to the interrogatory because the

15  interrogatory needs an answer.

16          MR. KASDAN:  Again, just for my clarification

17  purposes, are we entitled to objective information about how

18  much the renovation cost, is it a billion dollars, a thousand

19  dollars?  Is that within the rubric of Your Honor's ruling?

20          MS. BERNABEI:  Your Honor --

21          THE COURT:  Yes, ma'am.

22          MS. BERNABEI:  Your Honor, I think the focus and this

23  is why we have objected, and we continue to object, is the

24  defendants want to know how she spends her money, she and her

25  husband spend her money, that's not really at issue.

1          THE COURT:  No, no.  That is not the question.

2          The question is and I think it is a legitimate one, the

3     psychologist says that there were financial pressures that

4     added to the stress felt by Ms. Herron.  The defendants are

5     entitled to say well, maybe those were more pressure than

6     anything we did and we need, we have a right to understand what

7     was the nature of that pressure on her.  Why was she stressed

8     by the construction, by financial issues, et cetera.  They're

9     actually entitled to ask those questions.

10          And if one of the questions is what was the extent, I

11    mean, was this an objectively reasonable stress or was it a

12    subjective stress.  That's what a million or a thousand dollars

13    would go to.

14          And it's not how this couple spends their money.  It is

15    how financial stresses and other things attributed by her

16    doctor to explain her internal sense of stress.  Those are all

17    worthy of inquiry by the defendant.

18          MS. BERNABEI:  Okay.

19          THE COURT:  Okay.

20          MS. BERNABEI:  All right.

21          MR. KASDAN:  Thank you, Your Honor.

22          THE COURT:  Okay, is there anything else?

23          MR. KASDAN:  I don't think so, Your Honor, not here.

24          MR. INTERRANTE:  Your Honor, we'll need to submit a

25    supplement to the protective order.

1           THE COURT:  Okay.

2           MR. INTERRANTE:  As part of what a discretionary

3  release is.

4           THE COURT:  The discretionary release, yes.

5           MR. INTERRANTE:  There are two basic points.

6       One, by making these discretionary releases, Treasury

7  does not want to be perceived as waiving the broader privilege.

8           THE COURT:  Right.

9           MR. INTERRANTE:  And the second one will relate to we

10  have had access to a limited number of documents those in that

11  particular electronic data base.  As the Court knows, there are

12  a large number of documents that Treasury has not had access to

13  and we don't want to be considered to have waived the privilege

14  with respect to any of those documents.

15           THE COURT:  Okay.

16           MR. INTERRANTE:  And those are the two things.

17       With those when Treasury has completed the review I

18  mentioned earlier, then we hope that we can make these

19  discretionary releases and hopefully bring this thing to

20  closure on our end as much as possible.

21           THE COURT:  As much as possible, yes.

22           MR. KASDAN:  Just on that point, I presume that

23  Treasury will give a draft in advance to everybody to review

24  and comment on or not.

25           THE COURT:  They may or may not.  Since it's their

1   own statement of their intent, that's totally up to them.

2        Both sides may consider adopting the approach of

3   Treasury and deciding well, you know, there are a few of these

4   otherwise privileged documents that plaintiff is so concerned

5   about or that we are so concerned about, we'll trade with an

6   agreement that we're not waiving anything beyond this

7   particular document.  No subject matter, nothing, just this

8   document.

9        You might consider that because it might --

10        MR. KASDAN:  Alleviate your chores.

11        THE COURT:  -- relieve some of the tension.

12        MR. WILSON:  Your Honor, if I can speak out of turn

13   would the Court consider a Rule 501 or 502 on that point, I

14   forget what it is.

15        THE COURT:  Well, I am glad you said I forget what it

16   is.  You have to explain yourself, 501 or 502, I'm not sure.

17        MR. WILSON:  I don't know if this was the appropriate

18   scope.  But agreements between parties -- let me approach.

19        Your Honor's trying to streamline this issue.  We

20   actually have been and I commend plaintiff for their efforts in

21   their respect as well.

22        But 502 or 503 Federal Rules of Evidence.

23        MS. BERNABEI:  2, 502.

24        MR. WILSON:  Thank you.  Does provide a means if an

25   agreement just between the parties on no waiver.

1           THE COURT:  No, I could --

2           MR. WILSON:  Could be attacked by third parties.

3           THE COURT:  No, no, no.  We can make it an official

4    document that I order that it's limited.

5           MR. WILSON:  If a court order is ordered there may be

6    an issue whether the Court has authority to enter a kind of

7    order for discovery, but just not clawback type purposes but

8    that's for us to deal with.

9           THE COURT:  Except that it's not a --

10          MR. WILSON:  Other concern is not so much more them

11   but against third parties.

12          THE COURT:  I appreciate that.  It's a concession for

13   purposes of this litigation only.  We can do it, you know,

14   attorney eyes only or something like that without further leave

15   of court and then if somebody really needed to use it at trial.

16   I mean, we might be able to fashion something that would be of

17   assistance to you all.

18          MR. KASDAN:  We're in agreement on that.

19          MR. WILSON:  Certainly to explore.

20          THE COURT:  Wait.

21          MR. KASDAN:  That is why we would appreciate getting

22   a draft in advance instead of having to give our comments to

23   the Court thereafter, that's the point I was trying to make,

24   Your Honor.

25          MS. BERNABEI:  And Your Honor, we will certainly, we

1  did agree to the first, with the clawback provision, the 502.

2          THE COURT:  Right, right.

3          MS. BERNABEI:  My only concern is that since these

4  are technical documents, we would not want our client not to be

5  able to review it.

6          THE COURT:  Well, that is something to be figured out

7  whether and if we can get to the point of agreement.  Okay.

8          MS. BERNABEI:  Okay.

9          THE COURT:  I'm just throwing ideas out here.

10         MR. WILSON:  We appreciate that.

11         THE COURT:  Mr. Interrante, you understand that

12  everybody is jumping at your every suggestion.  So I hope you

13  are walking away from this hearing feeling well, I really did a

14  good job today.

15         MR. INTERRANTE:  There you go.  I remain optimistic,

16  Your Honor.

17         THE COURT:  Thank you.

18         MR. INTERRANTE:  Although I will add if I'm getting

19  the final word.  We are happy not to take the lead on this.  If

20  the parties want to propose something that I can supplement

21  with some protections to Treasury, I'm certainly not adverse to

22  that.

23         THE COURT:  No, but you should, since you're out

24  ahead and you know what you want and what you're thinking of --

25         MR. INTERRANTE:  Sure.

1          THE COURT:  -- you should at least draft something

2    that protects your client in the way that you think that needs.

3          If you wish to submit it to me and to the parties, you

4    wish to submit it to them and later to me, you know, I'll let

5    you figure that one out for yourself.

6          MR. INTERRANTE:  Sure, we're fine circulating it to

7    the parties but we appreciate that.

8          THE COURT:  I thought you would be, but I wasn't

9    going to order it.

10          MR. INTERRANTE:  Thank you, Your Honor.

11          THE COURT:  Okay, thank you everybody.

12          Look forward to seeing you again.  If you come up with

13    anything that you want to talk about -- oh, wait, the 400

14    documents.  I need to review the 400, 200, 75, whatever it is,

15    documents that are subject to --

16          MS. BERNABEI:  Tab B.

17          THE COURT:  -- Tab B.

18          MR. WILSON:  If I may speak to this, Your Honor.  To

19    try to save you some work.

20          THE COURT:  There's no way to save me.  I can tell

21    already, I'm just in -- I should send it to a Magistrate Judge,

22    but we never agree, so I'm just going to do it myself.

23          MR. WILSON:  Having looked at these and I'm sure

24    Mr. Kabat has we probably feel your pain to use the clichéd

25    phrase.  We could give you all of them if you would like.  Or I

1  can tell you at this juncture under the various categories and

2  documents for most of them, not all yet, I have identified the

3  highest level.

4         THE COURT:  Okay.

5         MR. WILSON:  If you would just like those, by highest

6  level I mean, there may be one or two that would incapsulate --

7         THE COURT:  Right.

8         MR. WILSON:  -- all of the text of everything that

9  I'll refer to as the virtual duplicates.

10         THE COURT:  Right.

11         MR. WILSON:  I could give you those.

12         THE COURT:  The question is what will take ultimately

13  the least amount of time?

14         MR. WILSON:  That would do it.

15         THE COURT:  Well, okay.

16         MR. WILSON:  As much as onerous on Your Honor.

17         THE COURT:  Least amount of my time is one thing.

18  I'm thinking about least amount of your client, of your time

19  because you're billing your client.

20         MR. WILSON:  My client appreciates that.

21         THE COURT:  It's probably your time actually, I don't

22  know whose time, but anyway.

23         MR. WILSON:  As part of our drill.

24         THE COURT:  There are two of us and we can take 400

25  documents and get through them faster than you can imagine.

1         MS. BERNABEI:  And Your Honor, we would suggest you

2    read all 400.

3         THE COURT:  No, no, you always were going to suggest

4    that.  I know exactly what you were going to suggest.

5         MS. BERNABEI:  The problem is if they give you a 100

6    and say this is what everything looks like, we don't know.

7         THE COURT:  That's okay, give them all to me and we

8    won't fuss about it, okay.

9         MR. KASDAN:  Just to correct the record at the

10   outset, I would like to introduce to the Court Ms. Elizabeth

11   Johnson.  Brooke Finberg is no longer with our firm.  So that

12   should be corrected in the record that Ms. Johnson was present,

13   not Ms. Finberg.

14        THE COURT:  Ms. Johnson, you're welcome.  I hope you

15   came away from this with a great impression of great lawyering.

16        MS. JOHNSON:  Please to meet you, Your Honor.

17        THE COURT:  Thank you everybody.

18      What do you think, a week?

19        MR. KASDAN:  Yes.

20      (Proceedings concluded at 11:20 a.m.)

21                          -oOo-

22

23

24

25

1                          CERTIFICATE

2        I certify that the foregoing is a true and correct

3  transcript, to the best of my ability, of the above pages, of

4  the stenographic notes provided to me by the United States

5  District Court, of the proceedings taken on the date and time

6  previously stated in the above matter.

7        I further certify that I am neither counsel for, related

8  to, nor employed by any of the parties to the action in which

9  this hearing was taken, and further that I am not financially

10 nor otherwise interested in the outcome of the action.

11

12 _____        _____

13 /s/Crystal M. Pilgrim, RPR            Date: November 2, 2013

14

15

16

17

18

19

20

21

22

23

24

25

Case 1:10-cv-00943-RMC

'70s [1]   10/21

–

------------------------

1/7

-oOo [1]   54/21

/

/s/Crystal [1]   55/12

1

10 [1]   37/5
10-943 [2]   1/4 3/2
100 [1]   54/5
10:10 [1]   1/6
11 [3]   26/6 29/25 39/12
11:20 [1]   54/20
15 [1]   26/6
150 [2]   29/18 30/3
1775 [1]   1/14

2

200 [1]   52/14
20001 [1]   2/4
20007-5108 [1]   1/22
20009 [1]   1/15
20016 [1]   1/18
2008 [3]   39/11 39/23 42/4
2009 [6]   39/8 39/11 39/13
  39/23 41/24 41/25
2010 [7]   20/16 39/12
  39/24 41/23 41/25 42/2
  43/13
2013 [3]   1/5 39/13 55/12
20530 [1]   1/24
22 [1]   1/5
250 [1]   36/15

3

3050 [1]   1/21
333 [1]   2/4
3900 [1]   1/17

4

400 [7]   1/21 32/21 32/25
  52/13 52/14 53/24 54/2
401 [1]   40/11
4th [1]   1/24

5

500 [1]   36/11
501 [2]   49/13 49/16
502 [5]   49/13 49/16 49/22
  49/23 51/1
503 [1]   49/22
5108 [1]   1/22
555 [1]   1/24

7

75 [1]   52/14

8

80 [1]   30/4
8th [1]   20/16

9

943 [2]   1/4 3/2

A

a.m [2]   1/6 54/20

ability [2]   30/22 55/3
able [7]   24/21 34/3 37/21
  37/23 46/5 50/16 51/5
about [58]
above [2]   55/3 55/6
absence [1]   10/1
accept [2]   9/4 18/13
access [2]   48/10 48/12
according [1]   21/7
accounts [1]   45/21
action [3]   3/2 55/8 55/10
actual [2]   10/21 40/10
actually [15]   6/10 6/15
  18/5 18/7 20/13 25/14
  26/13 29/11 29/14 30/11
  31/19 44/17 47/9 49/20
  53/21
add [1]   51/18
added [1]   47/4
adding [1]   23/18
address [4]   17/4 28/10
  28/24 39/21
addressed [2]   7/21 38/20
adequate [1]   25/9
admitted [1]   28/7
adopting [1]   49/2
advance [2]   48/23 50/22
adverse [1]   51/21
advice [45]   4/14 5/7 5/9
  5/14 5/16 6/5 6/7 6/8
  7/14 9/20 9/23 10/4 10/23
  11/2 11/4 15/7 15/21
  15/22 16/7 19/6 19/25
  20/9 20/25 24/3 24/4 24/8
  24/11 24/12 24/12 25/13
  25/20 26/7 26/8 28/8 28/9
  28/14 28/17 28/18 29/4
  29/6 31/19 31/19 32/10
  32/14 38/15
advise [4]   4/5 24/1 33/22
  33/23
affirmative [17]   4/12 5/6
  5/16 6/1 7/17 8/7 10/14
  11/1 15/14 16/1 17/11
  18/11 21/16 22/6 23/13
  23/14 23/24
afield [1]   20/13
after [7]   20/16 26/21
  26/21 34/2 39/24 41/22
  42/1
again [14]   7/21 13/20
  16/24 17/1 23/25 27/15
  27/15 27/15 30/9 30/22
  30/23 32/25 46/16 52/12
against [2]   11/25 50/11
agencies [1]   34/17
agency [1]   25/2
agenda [1]   18/20
agree [7]   34/19 34/20
  35/4 42/19 42/21 51/1
  52/22
agreement [5]   25/2 49/6
  49/25 50/18 51/7
agreements [1]   49/18
ahead [6]   3/17 4/10 8/6
  12/9 34/3 51/24
aided [1]   2/6
al [2]   1/5 3/3
ALAN [2]   1/13 3/4
all [50]   3/13 4/2 4/8
  5/20 5/21 5/24 9/18 10/10

document [7]   24/21 34/3 37/21
20/3 21/7 23/3
23/23 24/16 25/21 26/3
26/5 26/7 27/1 30/7 31/16
31/22 32/8 32/9 33/3 33/3
33/12 34/15 39/7 40/16
40/24 41/4 41/11 42/6
43/21 44/14 45/1 46/6
47/16 47/20 50/17 52/25
53/2 53/8 54/2 54/7
alleged [3]   8/13 8/19
  39/4
Alleviate [1]   49/10
allow [3]   13/6 14/15
  41/13
allowing [2]   4/16 4/21
allows [1]   42/23
almost [3]   26/3 26/5 26/7
along [2]   12/15 35/13
already [2]   19/4 52/21
also [8]   13/2 17/5 22/25
  23/2 24/22 40/4 40/9
  45/17
Although [1]   51/18
always [1]   54/3
am [6]   3/14 11/13 23/1
  49/15 55/7 55/9
amazing [1]   33/23
among [2]   17/12 18/12
amount [5]   35/20 35/25
  53/13 53/17 53/18
analysis [2]   14/1 14/19
and/or [2]   8/14 8/16
another [3]   11/14 15/24
  29/14
answer [9]   7/13 15/16
  20/15 24/5 27/6 32/3
  44/12 45/7 46/15
answered [1]   23/3
answering [1]   45/5
answers [2]   21/19 22/13
any [21]   5/9 8/9 8/12
  8/12 8/19 8/19 8/21 9/10
  11/19 16/6 21/3 22/19
  22/23 24/9 25/9 29/7
  34/17 38/13 46/8 48/14
  55/8
anybody [2]   4/4 44/2
anything [11]   3/12 7/18
  15/12 19/5 21/18 21/25
  31/10 47/6 47/22 49/6
  52/13
anyway [2]   6/17 53/22
apologies [1]   6/18
apparently [2]   36/13
  36/21
APPEARANCES [2]   1/12 2/1
applicable [1]   12/8
apply [1]   4/20
appreciate [5]   7/12 50/12
  50/21 51/10 52/7
appreciated [1]   37/19
appreciates [1]   53/20
approach [3]   41/24 49/2
  49/18
approaches [2]   42/3 42/4
appropriate [19]   9/5 9/22
  10/15 10/17 11/12 15/1
  16/8 16/11 16/13 16/17
  16/20 17/14 17/20 18/14
  19/12 20/5 21/4 26/24

A    Case 1:10-cv-00943-RMC    Document 117    Filed 12/30/13    Page 1 of 68

**A**

appropriate... [1]    49/17
approve [1]    20/15
approved [2]    20/21 23/1
are [59]
area [2]    3/17 3/19
aren't [1]    15/11
arguing [1]    10/8
argument [6]    9/19 12/8
  31/15 31/16 31/17 42/3
argumentative [1]    21/22
arguments [1]    26/16
arise [1]    28/6
around [4]    14/4 14/5
  32/21 32/25
as [63]
aside [4]    28/23 34/24
  35/9 37/8
ask [5]    19/22 31/12 41/22
  44/7 47/9
asked [16]    18/25 21/10
  21/13 21/14 22/8 23/13
  23/14 23/15 23/20 24/25
  26/15 32/22 32/23 43/5
  45/17 46/7
asking [5]    5/22 40/4
  40/10 41/15 43/24
aspects [1]    28/7
assertion [1]    4/19
assistance [1]    50/17
Assistant [1]    1/23
assume [1]    13/10
attacked [1]    50/2
attorney [14]    1/23 3/25
  6/3 10/24 11/8 11/9 20/6
  21/11 25/11 28/3 28/24
  31/14 38/13 50/14
attorneys [2]    28/16 40/11
attributed [1]    47/15
August [1]    43/13
authority [1]    50/6
automatically [1]    7/8
Avenue [2]    1/17 2/4
avoid [1]    45/5
aware [1]    23/1
away [3]    12/14 51/13
  54/15
awful [1]    18/3

**B**

back [19]    6/10 6/11 7/15
  16/23 18/4 23/20 27/23
  35/15 35/21 36/11 36/16
  37/4 37/8 39/13 40/7
  40/21 41/12 41/14 42/16
backed [1]    12/14
background [1]    17/23
bad [1]    4/7
ballpark [2]    29/23 31/1
Barely [1]    32/18
barred [1]    24/8
base [1]    48/11
based [1]    9/23
bases [1]    11/1
basic [1]    48/5
basically [1]    5/5
basis [7]    9/13 12/25
  15/20 25/11 26/20 26/21
  34/17
Bate [1]    23/17

be [64]
because [24]    4/8 7/12
  8/20 10/5 10/13 10/23
  10/25 13/14 14/2 14/8
  14/12 17/12 21/1 23/8
  27/16 29/3 34/23 36/12
  36/13 36/14 36/24 46/14
  49/9 53/19
been [11]    5/1 12/16 16/9
  17/13 19/1 19/15 23/19
  35/22 39/20 40/3 49/20
before [15]    1/9 4/25 7/17
  9/6 10/15 19/6 20/17
  23/19 33/22 34/4 39/8
  39/23 41/9 41/14 41/25
beforehand [1]    19/25
beginning [2]    17/13 42/14
behavior [3]    8/17 8/22
  9/3
behind [1]    16/3
being [3]    37/15 37/16
  44/1
belabor [1]    41/1
believe [16]    5/6 7/16
  17/7 18/5 20/3 21/17
  22/23 23/19 25/4 26/23
  28/18 29/17 40/10 43/6
  43/12 43/14
BERNABEI [6]    1/13 1/14
  3/4 29/9 37/3 40/16
best [1]    55/3
better [4]    4/6 6/15 32/7
  34/5
between [7]    27/3 28/25
  34/16 34/20 38/2 49/18
  49/25
beyond [1]    49/6
BFOQ [7]    13/14 13/15
  13/21 13/25 13/25 14/1
  14/6
big [1]    6/21
billing [1]    53/19
billion [1]    46/18
bit [5]    17/23 22/1 33/20
  35/23 41/12
blah [3]    14/5 14/5 14/5
blown [1]    18/11
blush [1]    6/4
board [1]    4/9
boarded [1]    20/19
boarding [2]    4/4 18/3
bonafide [2]    13/15 13/21
boom [1]    43/7
borrower [1]    25/17
both [7]    4/12 20/22 32/20
  43/21 45/25 45/25 49/2
break [1]    31/14
briefing [1]    9/10
bring [1]    48/19
broad [1]    28/2
broader [1]    48/7
Brooke [2]    3/6 54/11
brought [1]    35/10
business [13]    8/10 8/13
  25/13 25/18 25/20 26/7
  28/17 31/8 31/16 31/19
  32/14 38/15 39/17

**C**

CA [1]    1/4
call [1]    38/21

same [8]    5/20/21 23/20
  35/15 33/21 36/11 36/16
  37/4 54/15
can [39]    3/17 3/19 6/21
  7/1 7/7 9/12 15/17 15/19
  17/3 17/18 19/19 20/18
  27/6 28/4 28/19 30/20
  30/23 30/24 31/18 38/1
  38/2 38/15 40/1 40/21
  41/11 41/22 43/2 43/2
  45/4 48/18 49/12 50/3
  50/13 51/7 51/20 52/20
  53/1 53/24 53/25
can't [15]    5/13 5/14 7/8
  14/3 14/3 14/4 14/12 16/3
  17/13 19/24 20/19 23/21
  24/12 26/4 45/5
cannot [1]    18/5
care [3]    6/11 34/11 38/2
CAROLINE [2]    1/3 3/2
case [13]    5/13 10/19
  10/20 12/17 21/3 24/21
  28/18 34/9 37/12 37/18
  42/13 42/14 42/17
cases [1]    33/23
cashing [1]    45/21
categories [2]    30/19 53/1
categorizes [1]    30/11
category [3]    24/18 29/14
  30/25
cats [1]    39/24
caused [6]    5/1 39/4 44/23
  44/25 45/22 46/4
central [1]    12/17
certain [2]    23/13 28/15
certainly [3]    50/19 50/25
  51/21
CERTIFICATE [1]    55/1
certify [2]    55/2 55/7
cetera [7]    10/1 10/1 31/5
  41/8 41/8 44/25 47/8
chains [1]    27/18
challenging [1]    35/8
chambers [2]    7/2 30/23
characterize [1]    31/7
charged [1]    13/12
check [1]    17/6
chores [1]    49/10
circulating [1]    52/6
circumstances [1]    26/24
cite [1]    10/21
citing [1]    15/11
Civil [1]    3/2
claim [3]    25/8 34/18
  34/19
claimed [6]    3/24 25/10
  28/2 28/24 29/12 34/18
clarification [1]    46/16
clarifying [1]    45/13
clawback [2]    50/7 51/1
clear [7]    8/3 13/19 18/6
  19/1 40/10 40/17 44/16
clerk [1]    6/25
clichéd [1]    52/24
client [19]    3/25 4/6
  10/24 11/9 11/10 18/3
  20/6 21/11 25/11 26/13
  28/3 28/24 31/14 38/13
  51/4 52/2 53/18 53/19
  53/20
close [1]    33/10

**C**   Case 1:10-cv-00943-RMC

closure [1]   48/20
COLLYER [3]   1/9 11/15
  12/5
COLUMBIA [2]   1/1 2/3
column [1]   30/11
come [9]   3/17 4/6 8/4
  12/9 23/14 24/2 32/3 32/19
  52/12
coming [1]   15/7
commend [1]   49/20
comment [2]   27/7 48/24
comments [1]   50/22
communications [3]   16/24
  28/3 29/4
comp [1]   29/18
compensated [1]   39/20
compensation [5]   25/1
  27/2 29/2 29/14 29/25
complaint [1]   3/20
complaints [1]   31/13
complete [1]   35/24
completed [1]   48/17
compliance [1]   35/14
comply [1]   25/4
computer [3]   2/6 7/7 7/9
computer-aided [1]   2/6
concern [6]   11/25 12/2
  12/3 25/20 50/10 51/3
concerned [4]   45/6 45/6
  49/4 49/5
concerning [2]   29/5 29/6
concerns [4]   25/17 38/12
  42/10 44/25
concession [1]   50/12
concluded [1]   54/20
conclusion [1]   12/21
CONFERENCE [1]   1/9
conflict [26]   9/6 9/14
  9/22 9/25 10/4 10/15
  10/17 11/20 11/21 12/21
  12/22 13/5 15/1 15/8 16/8
  16/11 16/14 16/17 16/21
  17/14 17/20 18/14 19/9
  19/12 20/5 21/4
conflicts [9]   4/14 4/19
  5/4 5/5 7/20 17/1 17/3
  18/19 28/7
confounded [1]   3/15
confused [1]   45/16
Congress [2]   13/4 13/4
Connecticut [1]   10/20
consider [6]   15/20 35/19
  37/6 49/2 49/9 49/13
consideration [1]   41/3
considered [1]   48/13
constituted [1]   9/20
Constitution [1]   2/4
construction [2]   45/20
  47/8
consulted [1]   15/9
contained [1]   41/5
contemporaneous [1]   11/4
contended [1]   5/2
content [1]   7/2
contention [1]   9/14
context [1]   26/14
continue [3]   8/10 8/16
  46/23
continued [1]   2/1

contract [7]   25/5 25/12
  25/24 27/2 27/4 29/1 30/1
  28/25
contractor [1]   9/7
contracts [1]   25/9
contractual [2]   8/9 8/13
conversation [1]   14/15
cool [1]   7/6
cooperate [1]   14/25
copy [1]   7/16
correct [5]   22/25 36/4
  39/10 54/9 55/2
corrected [3]   22/22 43/23
  54/12
cost [1]   46/18
couch [1]   12/7
could [14]   3/11 5/1 9/6
  10/16 11/23 12/3 12/16
  20/10 22/22 23/8 50/1
  50/2 52/25 53/11
couldn't [2]   14/8 44/12
counsel [33]   6/5 6/7 6/8
  7/16 7/19 9/20 9/23 10/23
  11/2 11/4 11/13 11/14
  11/15 12/5 14/7 15/21
  15/22 16/7 16/25 19/6
  19/25 20/9 20/25 21/7
  24/2 24/3 24/4 24/8 24/11
  24/12 28/9 28/12 55/7
counsel's [2]   7/13 24/12
counter [1]   36/10
couple [1]   47/14
course [2]   3/16 4/3
court [18]   1/1 2/2 2/2
  2/3 33/20 35/11 35/15
  37/10 37/16 44/21 48/11
  49/13 50/5 50/6 50/15
  50/23 54/10 55/5
Court's [1]   35/14
critical [1]   24/16
cry [1]   12/4
CRYSTAL [2]   2/2 55/12
cut [4]   29/20 30/4 30/5
  31/1

**D**

D.C [1]   1/5
damage [1]   5/2
damages [4]   40/1 40/2
  40/12 46/5
DAMIEN [2]   1/16 3/5
data [1]   48/11
date [2]   55/5 55/12
day [6]   12/2 20/16 20/16
  20/17 37/5 39/14
days [2]   33/16 35/23
DC [5]   1/15 1/18 1/22
  1/24 2/4
deadline [2]   35/15 37/10
deal [2]   29/17 50/8
Dealing [1]   45/20
decide [1]   12/1
deciding [1]   49/3
decisions [1]   31/16
declaration [1]   25/14
deeper [1]   14/18
defendant [2]   8/12 47/17
defendants [12]   1/7 1/16
  8/8 8/20 8/21 24/7 25/8
  25/22 26/16 39/20 46/24
  47/4

defending [1]   43/15
defense [25]   8/5 5/6 5/13
  5/16 6/1 7/17 8/7 10/14
  11/1 11/5 11/22 15/14
  16/1 16/15 17/11 17/16
  18/12 19/10 19/16 21/16
  22/6 23/14 23/16 23/18
  23/24
defenses [4]   4/12 20/22
  23/13 23/16
definitively [1]   11/24
delay [2]   7/11 35/23
demonstrative [1]   19/13
denied [1]   8/8
denying [1]   25/24
department [2]   3/7 28/13
deposition [2]   19/17
  46/13
depositions [1]   21/8
deputy [1]   28/12
describe [2]   43/9 43/15
description [1]   26/18
descriptions [2]   27/7
  27/12
designate [1]   35/11
designations [1]   36/10
desire [1]   8/15
detail [2]   17/10 43/10
detailed [1]   17/2
determination [3]   9/8
  13/25 26/4
determinations [1]   26/25
determine [1]   31/18
develop [3]   9/5 15/1
  18/14
did [25]   3/16 4/2 10/22
  12/17 13/6 13/11 14/23
  16/21 17/18 17/19 20/14
  20/14 22/5 22/10 22/15
  22/18 24/9 33/6 35/12
  39/18 41/24 41/25 47/6
  51/1 51/13
didn't [11]   4/9 9/3 16/6
  16/10 17/15 20/10 34/1
  34/23 35/1 36/22 42/2
different [5]   4/17 15/10
  39/11 40/7 41/24
difficult [1]   26/20
difficulty [1]   7/10
directed [1]   44/22
directly [1]   44/9
discharge [1]   14/11
discharged [1]   14/8
disclosures [1]   12/17
discover [2]   17/17 41/17
discoverable [2]   16/15
  16/24
discovery [23]   3/11 10/8
  14/15 15/22 17/10 19/1
  21/8 21/25 22/3 22/4 22/5
  23/5 23/9 23/25 24/11
  25/9 25/24 27/5 34/16
  38/24 42/18 42/22 50/7
discretionary [7]   35/20
  35/25 37/6 48/2 48/4 48/6
  48/19
discrimination [2]   13/13
  13/14
discussions [3]   5/8 10/16
  11/19
dispute [5]   3/12 23/6

D    Case 1:10-cv-00943-RMC    Document 117    Filed 12/30/1    during [1]   42/17

dispute... [3]   23/9 34/16
 38/23
disputed [1]   31/6
distress [5]   39/4 39/25
 40/5 40/8 45/23
DISTRICT [7]   1/1 1/1 1/10
 2/3 2/3 10/20 55/5
do [34]   3/12 3/21 7/7
 7/17 7/24 8/10 11/15 12/5
 12/25 14/5 15/4 16/25
 19/19 19/23 21/17 21/18
 22/23 23/21 24/17 25/10
 26/7 27/9 30/18 31/16
 32/3 33/8 34/18 34/19
 37/21 38/23 50/13 52/22
 53/14 54/18
Docket [1]   1/4
doctor [1]   47/16
document [17]   10/10 19/22
 22/22 23/12 23/17 23/22
 24/4 26/16 26/17 26/19
 26/21 26/21 26/22 26/25
 49/7 49/8 50/4
documents [57]
does [14]   4/19 6/6 10/23
 11/1 13/11 14/2 14/7
 14/16 20/6 21/24 28/16
 28/17 48/7 49/24
doesn't [3]   9/1 14/15
 36/14
dogs [1]   39/24
doing [3]   14/13 41/19
 41/20
dollar [1]   27/23
dollars [3]   46/18 46/19
 47/12
don't [53]   7/2 7/16 7/18
 8/4 9/10 9/16 9/18 10/21
 11/23 15/13 15/16 15/20
 16/10 16/14 16/19 16/23
 17/7 18/11 21/1 21/22
 22/19 24/4 26/9 28/2
 31/10 32/5 32/19 33/1
 33/15 34/11 34/14 34/19
 34/20 35/4 37/15 37/24
 38/1 38/13 38/21 39/14
 40/22 43/7 43/14 44/3
 44/5 44/14 44/25 45/4
 47/23 48/13 49/17 53/21
 54/6
done [6]   4/13 14/21 17/4
 25/22 27/20 37/7
door [1]   10/24
doubled [1]   37/9
doubt [3]   27/9 27/10
 27/11
dovetailed [1]   28/16
down [5]   6/13 16/11 24/9
 31/14 38/7
Dr [4]   39/5 42/12 43/11
 43/12
draft [3]   48/23 50/22
 52/1
drill [2]   6/24 53/23
Drye [1]   1/20
due [1]   8/15
dupes [1]   29/19
duplicates [5]   27/19
 32/21 32/25 36/13 53/9

E

e-mail [2]   27/18 30/24
e-mails [1]   9/17
each [3]   21/15 23/18
 27/13
earlier [1]   48/18
easily [1]   30/17
easy [1]   14/6
ECF [1]   34/2
edge [1]   26/1
effect [1]   11/4
efforts [1]   49/20
either [4]   20/16 24/2
 43/11 44/15
electronic [1]   48/11
elements [1]   16/20
elevate [1]   18/20
ELIZABETH [2]   1/20 54/10
else [4]   3/12 24/4 25/17
 47/22
emotional [5]   39/4 39/25
 40/4 40/8 45/23
emphatically [5]   20/7
 20/8 27/11 40/18 40/19
employed [3]   39/14 40/3
 55/8
employee [4]   4/23 4/24
 13/7 13/12
employer [4]   13/12 13/13
 13/24 14/11
end [3]   12/2 37/12 48/20
enjoin [1]   10/19
enlarge [1]   7/8
entail [1]   18/25
enter [1]   50/6
entire [1]   45/7
entirely [1]   41/24
entitled [8]   19/23 20/2
 41/17 42/18 42/20 46/17
 47/5 47/9
Ergo [1]   12/6
Esquire [7]   1/13 1/13
 1/16 1/19 1/19 1/20 1/23
essentially [1]   16/1
estimate [1]   29/18
et [9]   1/5 3/3 10/1 10/1
 31/5 41/7 41/8 44/25 47/8
even [5]   9/25 10/22
 10/23 10/25 20/4 26/18
 34/23 38/1 41/9 42/16
events [1]   46/4
eventually [1]   5/21
ever [1]   25/15
every [3]   10/10 30/16
 51/12
everybody [5]   17/18 48/23
 51/12 52/11 54/17
everyone [1]   3/8
everything [8]   3/14 7/23
 22/3 22/7 25/17 32/23
 53/8 54/6
evidence [3]   6/8 24/9
 49/22
exactly [4]   9/24 31/15
 40/20 54/4
exaggeration [1]   22/1
excel [2]   6/25 30/22
except [2]   6/13 50/9
exchange [1]   30/24

excuse [1]   4/24
exist [2]   16/10 17/15
exit [1]   37/13
expect [1]   35/24
expectancies [2]   8/10
 8/14
expectation [1]   35/24
expected [1]   36/10
explain [4]   46/1 46/5
 47/16 49/16
exploration [1]   18/10
explore [4]   18/19 19/3
 20/2 50/19
expressly [1]   7/18
extent [5]   6/24 7/2 9/12
 28/20 47/10
eyes [2]   6/20 50/14

F

FAA [2]   11/22 29/13
face [1]   43/8
facilitate [1]   6/23
fact [10]   5/9 6/6 9/8
 13/9 15/5 23/22 24/23
 31/6 43/18 44/15
facts [5]   5/22 11/25
 21/15 21/23 43/3
failed [1]   14/12
failure [1]   25/4
fairly [1]   17/2
fairness [1]   36/10
familiar [1]   30/15
FANNIE [57]
far [4]   12/4 20/13 38/16
 42/16
fashion [1]   50/16
faster [1]   53/25
February [1]   23/19
federal [4]   11/22 17/2
 17/8 49/22
feel [1]   52/24
feeling [1]   51/13
feels [1]   6/15
felt [2]   46/1 47/4
few [1]   49/3
fight [1]   35/2
fighting [4]   33/17 34/12
 34/14 34/23
figure [3]   10/9 40/21
 52/5
figured [3]   15/8 33/17
 51/6
filed [2]   33/19 34/2
filing [1]   33/21
filter [3]   7/1 7/3 30/22
filtered [1]   29/16
final [4]   36/2 36/5 37/10
 51/19
finances [1]   42/16
financial [15]   25/2 39/4
 40/1 40/2 43/10 43/17
 43/19 43/19 44/8 44/24
 45/17 45/25 47/3 47/8
 47/15
financially [1]   55/9
Finberg [3]   3/6 54/11
 54/13
find [2]   18/3 21/5
fine [6]   42/7 44/4 44/13
 44/20 45/3 52/6
firm [2]   11/15 54/11

F    Case 1:10-cv-00943-RMC   Document 117   Filed 12/30/13

**F**

first [7]   3/15 7/15 30/11
 31/17 34/25 41/4 51/1
five [4]   24/18 29/10 30/9
 36/12
flip [1]   45/10
flows [1]   10/2
focus [1]   46/22
follow [1]   42/18
followed [1]   23/21
font [2]   5/20 6/18
fool [1]   28/15
foolishness [1]   4/7
foregoing [1]   55/2
forget [2]   49/14 49/15
forward [6]   4/12 8/4
 19/15 24/2 32/19 52/12
found [1]   20/20
frame [2]   37/5 38/9
frankly [1]   30/5
front [3]   37/16 43/8 45/1
fully [1]   18/11
fun [2]   3/10 3/11
furlough [1]   36/19
further [3]   50/14 55/7
 55/9
fuss [1]   54/8

**G**

gave [4]   30/10 39/6 40/11
 42/17
gender [2]   13/12 13/14
general [3]   10/22 28/12
 42/16
generally [1]   7/21
get [16]   6/11 11/6 11/8
 15/17 16/2 17/6 19/24
 28/9 30/16 36/22 37/12
 41/13 41/23 46/11 51/7
 53/25
getting [4]   17/7 20/12
 50/21 51/18
gift [10]   5/4 12/12 12/13
 12/20 13/5 15/5 20/22
 22/17 22/21 31/22
give [14]   5/7 25/9 30/20
 30/23 31/8 32/2 33/19
 43/8 48/23 50/22 52/25
 53/11 54/5 54/7
given [7]   4/12 5/9 7/7
 22/7 26/23 30/23 38/25
giving [3]   25/20 28/18
 31/19
glad [1]   49/15
glean [1]   17/3
Gleefully [1]   37/14
go [20]   3/22 4/10 4/16
 4/21 6/24 8/6 12/16 13/6
 14/18 15/23 16/24 17/8
 18/4 30/6 34/1 34/3 38/3
 41/11 47/13 51/15
goes [2]   8/19 10/3
going [34]   4/18 4/22 4/24
 5/21 7/14 9/24 11/3 18/2
 18/4 20/15 28/5 28/8
 29/20 31/8 35/5 35/5 35/5
 36/23 37/4 37/23 39/21
 41/1 41/14 42/4 42/16
 45/2 45/8 45/9 46/11
 46/12 52/9 52/22 54/3

**H**

54/4
gone [2]   23/14 35/22
good [5]   3/8 3/9 11/11
 25/23 51/14
got [4]   12/4 13/23 21/16
 29/3
gotten [2]   21/14 21/25
 22/2 22/3 36/24 37/1
 38/16
Government [3]   27/20 28/5
 34/8
granular [1]   17/6
great [2]   54/15 54/15
grief [1]   18/5
guess [1]   3/16
guilty [1]   17/12
guys [1]   40/21

**H**

had [14]   5/1 6/10 7/10
 7/21 12/16 15/4 20/21
 22/22 31/16 36/12 41/8
 45/24 48/10 48/12
half [5]   29/20 30/4 30/5
 31/1 36/13
HAMP [9]   24/18 25/6 25/13
 27/3 29/1 29/5 29/5 29/9
 30/7
hand [1]   45/10
happened [4]   20/13 36/1
 37/2 39/8
happily [2]   37/13 40/16
happy [1]   51/19
has [17]   4/11 5/9 5/12
 14/21 19/1 19/15 24/17
 26/13 35/22 37/1 37/2
 42/13 46/1 48/12 48/17
 50/6 52/24
hasn't [1]   36/1
have [95]
haven't [6]   21/25 22/3
 26/18 31/25 36/2 36/24
having [8]   3/21 12/13
 17/16 19/9 29/15 40/3
 50/22 52/23
he [3]   25/20 28/18 44/11
he's [3]   5/20 45/6 45/6
head [2]   30/17 30/21
healthy [1]   3/11
heard [1]   18/6
hearing [3]   33/22 51/13
 55/9
hearts [1]   7/1
help [6]   17/24 33/2 33/22
 40/20 40/22 42/4
helpful [2]   13/19 45/13
hence [1]   7/10
her [54]   3/22 4/16 4/18
 4/21 4/23 4/25 5/2 9/24
 12/13 12/17 14/12 18/9
 18/20 24/21 24/24 25/15
 39/4 39/5 39/16 39/25
 40/11 40/11 40/12 40/15
 41/5 41/7 41/17 42/2
 42/15 42/15 42/20 43/4
 43/10 43/11 43/15 43/19
 43/20 43/24 44/11 44/23
 44/23 44/24 44/25 45/17
 45/17 45/21 45/23 46/5
 46/24 46/24 46/25 47/7
 47/15 47/16

**here** [18]   3/10 4/4 7/22
 11/7 11/12 17/23 18/8
 18/18 19/6 21/1 29/3
 29/15 36/14 37/15 38/12
 43/7 47/23 51/9
Here's [1]   33/18
HERRON [22]   1/3 3/3 3/22
 10/12 10/12 13/6 17/21
 24/22 25/15 25/21 31/2
 31/12 39/7 39/14 40/2
 43/15 44/7 44/22 45/4
 46/3 46/10 47/4
Herron's [10]   8/9 8/13
 8/15 8/16 8/22 9/3 17/24
 38/11 39/1 42/11
hey [1]   11/15
hide [1]   16/3
high [1]   30/6
highest [2]   53/3 53/5
him [2]   5/22 6/4
hips [1]   6/11
hire [1]   14/12
his [2]   25/21 28/13
hit [1]   27/6
Hold [1]   7/23
home [1]   34/1
Honor [57]
Honor's [5]   21/3 41/2
 41/3 46/19 49/19
HONORABLE [1]   1/9
hope [3]   48/18 51/12
 54/14
hopefully [1]   48/19
hoping [2]   37/7 38/8
hotly [1]   31/6
house [3]   11/13 11/14
 45/20
how [18]   6/9 10/2 18/3
 19/19 23/25 26/13 28/22
 28/23 31/24 32/3 33/8
 36/16 41/20 42/1 46/17
 46/24 47/14 47/15
how's [1]   10/12
however [4]   8/12 10/25
 12/7 19/8
hundred [1]   27/23 35/16
 35/21 36/16 36/16
husband [8]   39/25 42/11
 43/4 43/10 44/1 45/6 45/8
 46/25
husband's [8]   39/5 42/15
 43/10 43/16 44/8 44/8
 44/23 44/24
hypothetically [1]   11/7

**I**

I'll [5]   6/11 7/17 8/1
 52/4 53/9
I'm [31]   3/18 4/8 5/11
 5/18 7/6 7/21 10/8 11/6
 16/10 23/13 29/15 29/22
 36/21 37/18 38/11 39/13
 39/21 40/9 41/1 43/7 45/2
 45/6 45/16 49/16 51/9
 51/18 51/21 52/21 52/22
 52/23 53/18
I've [3]   14/7 27/20 43/6
idea [2]   29/6 39/7
ideas [1]   51/9
identified [1]   53/2
identifiers [1]   23/18

I   Case 1:10-cv-00943-RMC   Document 117   Filed 12/30/11   Page 61 of 68

identify [2]   9/19 21/15
III [1]   1/19
imagine [2]   28/4 53/25
impact [3]   42/25 43/2
46/10
impacted [4]   43/20 44/9
44/24 44/25
implement [3]   9/5 15/1
18/14
implementation [1]   25/2
implementing [1]   28/4
important [2]   3/20 24/20
impression [1]   54/15
improper [1]   12/10
in-house [2]   11/13 11/14
inappropriate [2]   8/17
9/3
incapsulate [1]   53/6
incentives [1]   37/22
includes [1]   41/7
including [4]   5/24 13/3
31/4 39/4
income [1]   42/11
individual [1]   8/21
individualized [3]   26/16
26/19 27/7
information [11]   5/7
22/18 25/1 41/5 42/24
42/25 43/24 43/25 44/5
45/9 46/17
inquire [3]   28/8 42/23
46/12
inquiries [1]   15/15
inquiring [1]   28/20
inquiry [4]   10/3 19/11
29/8 47/17
insofar [1]   13/2
instance [6]   13/11 17/7
34/25 39/8 43/8 43/9
instances [2]   28/10 28/15
instead [1]   50/22
insulted [1]   4/8
insulting [2]   4/5 4/8
intent [1]   49/1
interacted [1]   25/16
interactions [1]   25/21
interest [30]   4/15 7/21
9/6 9/14 9/22 9/25 10/4
10/15 10/17 11/20 11/21
12/22 12/22 13/5 15/1
15/9 16/8 16/11 16/14
16/18 16/21 17/1 17/4
17/14 17/20 19/9 19/12
20/5 21/5 28/8
interested [3]   1/23 3/18
55/10
interfered [2]   8/9 8/12
interference [3]   8/14
8/19 8/23
internal [7]   4/13 12/11
13/3 15/4 16/24 29/3
47/16
interpretation [1]   5/17
INTERRANTE [7]   1/23 3/6
33/4 33/9 33/11 33/11
51/11
interrogatories [4]   15/15
21/15 43/5 46/7
interrogatory [2]   46/14

46/15
interrupt [1]   5/14
interwoven [1]   32/14
introduce [1]   54/10
introducing [1]   24/8
invoked [1]   31/11
involvement [1]   34/10
IRA [2]   1/19 3/5
irrelevant [1]   41/25
is [149]
isn't [6]   10/10 12/8 19/8
19/10 19/14 42/25
issue [15]   12/24 13/1
13/9 13/9 19/6 24/16
37/20 37/22 38/6 38/19
40/21 42/9 46/25 49/19
50/6
issues [9]   4/17 8/18 28/5
28/23 29/4 31/4 38/17
39/5 47/8
it [106]
it's [46]   3/21 4/3 4/3
4/6 5/6 5/18 6/1 6/7 6/21
8/3 10/20 12/10 12/24
13/15 14/1 14/6 14/6 19/5
19/25 20/4 24/18 24/20
28/3 31/15 33/23 34/20
35/3 35/20 38/2 40/22
41/19 42/4 42/16 42/16
42/20 42/25 43/21 43/22
44/2 44/2 47/14 48/25
50/4 50/9 50/12 53/21
item [1]   38/8
its [2]   5/16 17/11
itself [1]   24/5

J

January [3]   20/15 41/22
42/2
job [12]   14/13 39/1 39/3
39/8 39/19 39/23 41/7
41/15 41/18 42/1 42/15
51/14
Joe [1]   11/13
JOHN [2]   1/23 3/6
JOHNSON [4]   1/20 54/11
54/12 54/14
JOSEPH [2]   1/19 3/5
JUDGE [3]   1/10 3/12 52/21
jumping [1]   51/12
juncture [1]   53/1
jury [1]   12/1
just [28]   7/8 9/19 10/8
12/8 13/19 15/23 18/3
20/18 24/6 24/21 26/12
28/20 33/22 34/8 41/2
45/5 45/9 46/12 46/16
48/22 49/7 49/25 50/7
51/9 52/21 52/22 53/5
54/9
justified [3]   8/15 8/20
8/24
justify [1]   11/2

K

KABAT [9]   1/13 3/4 5/20
7/23 7/25 15/13 21/24
32/20 52/24
Kalin [2]   43/11 43/12
Kalin's [2]   39/6 42/12
KASDAN [3]   1/19 3/5 18/22

keep [4]   23/5 23/9 35/4
43/18
Kelley [1]   1/20
kibitzing [1]   31/8
kind [2]   44/18 50/6
kindness [1]   18/4
knew [2]   13/18 37/17
know [35]   7/2 12/15 13/18
14/3 14/6 16/14 21/23
22/9 24/15 24/20 26/3
31/25 32/5 32/6 32/7
32/21 33/1 33/21 34/11
36/14 37/24 38/21 39/14
42/10 44/2 45/5 46/24
49/3 49/17 50/13 51/24
52/4 53/22 54/4 54/6
knowledge [1]   5/21
knows [3]   4/11 7/23 48/11

L

L.L.P [1]   1/20
lack [1]   40/2
language [2]   5/17 14/14
large [1]   48/12
last [4]   6/10 33/19 37/9
46/6
late [3]   33/19 33/21
44/11
later [2]   24/13 52/4
law [7]   7/25 9/1 9/10
10/19 28/18
lawyer [7]   9/1 14/2 14/6
14/13 14/16 14/21 31/17
lawyer's [2]   16/7 25/11
lawyering [1]   54/15
lawyers [8]   15/3 15/5
15/9 15/12 16/2 25/16
38/2 40/15
lead [2]   23/21 51/19
learn [1]   23/21
least [6]   9/12 15/20 52/1
53/13 53/17 53/18
leave [1]   50/14
left [1]   37/13
legal [32]   4/14 5/7 5/9
5/14 5/16 9/8 10/6 10/7
11/4 11/21 11/25 12/21
12/25 13/9 13/9 13/25
14/1 14/13 15/7 20/22
25/16 26/7 28/5 28/9
28/13 28/14 28/18 29/4
29/6 31/19 32/10 38/15
legally [4]   8/14 8/23
8/25 9/9
legitimacy [2]   11/19 17/3
legitimate [7]   11/25 12/2
12/2 12/18 12/20 12/25
47/2
length [1]   25/14
less [1]   30/5
let [13]   3/22 7/15 12/1
15/23 15/23 16/23 31/12
32/5 32/7 40/1 40/16
49/18 52/4
let's [5]   8/4 13/10 13/11
23/9 23/14
level [3]   30/6 53/3 53/6
like [13]   16/10 19/17
22/25 25/23 28/19 37/15
39/2 45/21 50/14 52/25
53/5 54/6 54/10

**L**

limited [2]   48/10 50/4
list [2]   17/6 23/23
listed [1]   11/9
Listen [1]   32/2
listing [1]   23/17
lists [1]   8/18
litigation [3]   16/2 35/10 50/13
little [9]   6/21 6/25 7/10 14/18 15/23 20/12 33/20 35/22 41/12
log [4]   6/19 29/16 30/10 30/25
logs [1]   35/13
longer [1]   54/11
look [9]   15/25 17/18 25/23 25/23 26/25 28/19 32/4 35/19 52/12
looked [2]   42/1 52/23
looking [5]   26/4 31/20 38/15 41/4 41/18
looks [1]   54/6
lot [9]   21/23 22/3 25/19 25/19 28/19 29/3 32/21 33/22 34/7
lots [1]   4/2
loud [1]   18/6
love [1]   37/16
lucky [2]   27/21 27/22
LYNNE [2]   1/13 3/4

**M**

ma'am [1]   46/21
machine [1]   2/6
made [11]   6/4 13/3 13/8 17/16 19/1 26/16 26/18 27/7 31/3 31/13 41/13
MAE [47]   1/5 1/17 3/3 4/4 4/11 4/23 4/24 6/6 8/16 8/21 9/4 9/7 9/22 10/14 11/13 11/14 14/21 14/25 16/21 17/9 17/11 17/17 17/19 17/19 19/2 19/10 19/11 20/20 20/25 21/8 24/24 25/1 27/2 27/3 28/25 29/1 29/17 31/3 33/16 34/8 34/12 34/24 35/4 36/6 36/9 41/9 41/15
Mae's [10]   9/13 12/15 17/16 25/3 25/4 28/1 28/13 28/25 29/25 29/25
Magistrate [1]   52/21
mail [2]   27/18 30/24
mails [1]   9/17
major [4]   38/11 38/17 38/19 38/22
make [9]   10/22 25/23 26/4 26/25 35/25 41/2 48/18 50/3 50/23
makes [1]   26/19
making [3]   11/5 37/6 48/6
male [2]   13/15 14/4
males [1]   14/4
manager [1]   14/10
managers [2]   17/19 19/11
manipulate [1]   7/1
many [6]   27/16 28/22 28/23 31/24 32/3 32/25
market [2]   39/11 39/12

married [1]   44/17
massive [1]   28/4
materials [1]   11/9
matter [6]   9/1 23/22 30/16 41/19 49/7 55/6
matters [1]   42/1
may [17]   7/3 7/16 15/14 18/23 19/13 23/10 32/13 41/1 45/22 46/11 46/12 48/25 48/25 49/2 50/5 52/18 53/6
maybe [5]   6/14 12/2 17/4 44/16 47/5
me [36]   4/9 4/24 7/4 7/7 7/15 7/17 8/3 12/1 15/11 15/23 15/23 16/4 16/23 18/4 20/3 26/20 27/22 31/12 32/3 32/7 33/2 33/15 34/8 35/3 40/1 43/6 43/8 43/14 44/2 45/1 49/18 52/3 52/4 52/20 54/7 55/4
mean [18]   3/12 3/24 9/1 13/11 13/11 14/2 14/7 28/17 28/19 29/3 36/19 42/1 44/2 44/14 45/24 47/11 50/16 53/6
means [3]   8/25 41/18 49/24
meant [2]   17/17 19/15
meet [1]   54/16
megillah [2]   3/18 3/18
memory [4]   7/22 29/15 29/22 30/18
mention [1]   42/15
mentioned [1]   48/18
menu [1]   17/6
methods [1]   41/18
midnight [2]   34/2 34/4
might [11]   16/13 16/16 19/3 30/19 34/18 37/3 39/13 44/1 49/9 49/9 50/16
million [1]   47/12
mine [1]   18/1
minimum [3]   9/4 18/13 21/6
mismanagement [2]   31/4 31/11
mistaken [1]   7/16
mitigated [1]   12/3
mitigating [1]   9/22
mitigation [32]   9/6 9/14 9/25 10/4 10/15 10/18 11/2 11/3 11/16 12/6 12/23 14/22 15/2 16/9 16/11 16/14 16/18 16/21 17/5 17/15 17/21 18/10 18/14 19/3 19/9 19/12 20/2 20/6 21/5 23/2 40/23 42/3
modified [1]   44/21
moment [2]   15/20 36/2
monetary [1]   42/9
money [5]   40/11 40/15 46/24 46/25 47/14
more [10]   3/11 18/4 24/3 30/15 42/23 44/16 45/9 45/25 47/5 50/10
morning [3]   3/8 3/9 7/11
most [6]   3/20 4/5 24/16

28/16 33/23 53/2
motivate [2]   11/8 12/17
motivation [1]   24/24
move [1]   10/16
Mr [1]   5/20
Mr. [15]   7/23 7/25 15/13 18/22 21/24 25/19 26/13 28/12 31/19 32/20 33/4 33/11 33/11 51/11 52/24
Mr. Interrante [4]   33/4 33/11 33/11 51/11
Mr. Kabat [6]   7/23 7/25 15/13 21/24 32/20 52/24
Mr. Kasdan [1]   18/22
Mr. Wilhelm [4]   25/19 26/13 28/12 31/19
Ms [3]   13/6 25/15 25/21
Ms. [28]   3/22 10/12 10/12 17/21 17/24 22/24 29/9 31/2 31/12 37/3 38/11 39/1 39/7 39/14 40/2 40/16 42/11 43/15 44/7 44/22 45/4 46/3 46/10 47/4 54/10 54/12 54/13 54/14
Ms. Bernabei [3]   29/9 37/3 40/16
Ms. Elizabeth [1]   54/10
Ms. Finberg [1]   54/13
Ms. Herron [17]   3/22 10/12 10/12 17/21 24/22 31/2 31/12 39/7 39/14 40/2 43/15 44/7 44/22 45/4 46/3 46/10 47/4
Ms. Herron's [4]   17/24 38/11 39/1 42/11
Ms. Johnson [2]   54/12 54/14
much [8]   9/24 36/16 46/11 46/18 48/20 48/21 50/10 53/16
multiple [1]   13/8
must [3]   3/14 3/14 22/10
my [23]   6/11 6/20 7/3 8/23 12/4 14/2 14/15 17/9 19/8 19/8 30/17 30/21 32/24 36/17 43/8 44/3 44/5 45/6 46/16 51/3 53/17 53/20 55/3
myself [2]   5/24 52/22

**N**

name [2]   33/6 33/8
Named [1]   26/1
names [1]   44/16
narrowed [1]   38/7
nascent [1]   18/9
nature [6]   10/17 28/20 30/24 42/22 43/6 47/7
necessarily [2]   11/24 26/5
necessary [10]   9/15 9/16 9/25 10/5 14/22 16/9 16/9 17/13 17/20 21/5
necessity [2]   19/9 20/5
need [23]   6/25 9/18 9/19 10/16 11/2 11/15 12/5 12/6 12/19 12/22 14/18 20/25 24/2 28/8 32/4 40/20 40/22 43/14 45/9 46/10 47/6 47/24 52/14

**N**

needed [9]   9/5 9/22 10/14 14/25 16/13 16/16 16/22 18/13 50/15
needs [5]   38/20 46/5 46/13 46/15 52/2
neighborhood [1]   10/25
neither [3]   8/20 34/7 55/7
never [2]   23/2 52/22
nevertheless [1]   8/19
new [1]   29/5
next [1]   42/9
night [4]   33/19 33/21 34/1 44/11
no [51]   1/4 5/4 5/12 6/15 11/8 11/10 12/3 13/13 13/13 13/13 13/18 13/18 13/24 13/24 13/25 14/7 14/17 19/7 19/7 22/2 22/2 22/9 22/9 26/11 26/18 27/9 27/10 27/11 29/6 33/2 34/13 35/2 36/7 40/13 40/13 40/13 40/14 41/19 47/1 47/1 49/7 49/25 50/1 50/3 50/3 50/3 51/23 52/20 54/3 54/3 54/11
Nobody [1]   37/1
nod [1]   30/17
non [3]   42/23 42/24 43/3
non-party [3]   42/23 42/24 43/3
nonetheless [1]   46/13
not [97]
noted [2]   42/7 43/11
notes [5]   41/5 41/14 42/12 43/11 55/4
nothing [4]   21/14 21/16 23/1 49/7
November [2]   37/9 55/12
now [14]   6/7 12/13 14/19 15/14 21/4 24/17 25/4 30/19 32/21 32/25 38/10 39/13 39/15 42/9
number [13]   5/4 5/5 8/18 23/17 29/11 29/12 29/20 29/24 30/20 30/20 30/25 48/10 48/12
numbers [1]   30/23
NW [5]   1/14 1/17 1/21 1/24 2/4

**O**

object [2]   42/5 46/23
objected [1]   46/23
objection [1]   42/7
objective [5]   42/24 42/25 43/3 43/25 46/17
objectively [1]   47/11
obtain [1]   19/14
Obviously [1]   22/2
occupational [2]   13/15 13/21
occurred [1]   18/9
October [1]   1/5
off [8]   4/3 4/9 7/15 18/3 20/19 29/15 29/22 39/17
offer [2]   6/24 7/5
offering [1]   29/5

official [2]   2/2 50/3
oh [4]   3/17 3/4 13/18 20/8 52/13
okay [55]   3/24 5/15 6/5 6/17 7/13 12/9 13/10 15/11 19/1 20/11 20/16 20/24 22/17 23/4 23/4 23/4 24/1 24/5 24/14 24/19 26/9 28/18 29/21 30/7 31/9 31/12 32/12 32/15 32/19 34/9 36/1 36/5 36/8 36/24 37/2 37/25 38/10 38/19 39/21 43/23 44/21 45/11 45/12 47/18 47/19 47/22 48/1 48/15 51/7 51/8 52/11 53/4 53/15 54/7 54/8
old [1]   6/20
one [34]   3/17 3/19 3/19 3/20 4/18 4/25 6/21 10/20 11/23 17/3 19/19 23/12 23/15 23/22 29/7 29/10 29/19 30/10 30/19 36/21 37/20 38/6 38/8 38/13 40/7 42/10 43/24 47/2 47/10 48/6 48/9 52/5 53/6 53/17
onerous [1]   53/16
ones [3]   3/24 26/2 35/12
ongoing [1]   42/13
only [14]   8/25 10/8 16/11 22/21 25/15 26/24 31/18 36/21 38/15 39/20 44/1 50/13 50/14 51/3
oOo [1]   54/21
open [5]   10/23 15/22 20/6 21/8 45/7
opens [1]   10/16
operated [1]   26/13
operating [1]   26/12
opinion [2]   12/4 20/7
opposing [1]   7/16
optimistic [3]   33/13 33/15 51/15
order [8]   16/22 35/11 35/14 47/25 50/4 50/5 50/7 52/9
ordered [1]   50/5
other [24]   4/18 7/3 11/11 12/21 15/3 15/14 15/15 15/17 16/3 17/12 17/17 18/12 21/18 21/19 23/17 27/13 28/7 33/23 38/14 38/20 38/20 40/7 47/15 50/10
others [1]   25/25
otherwise [4]   18/12 21/9 49/4 55/10
our [24]   6/18 7/10 7/17 9/9 10/6 10/25 11/15 11/22 14/21 16/2 18/11 20/7 24/17 24/20 24/20 24/25 27/7 27/11 34/9 48/20 50/22 51/4 53/23 54/11
ourselves [1]   15/8
out [26]   7/8 10/9 11/22 15/8 17/2 17/24 18/19 20/20 21/5 24/18 29/10 29/19 30/8 33/14 33/17 36/10 36/17 40/21 44/3

official [2]   2/2 50/3
44/5 45/21 49/12 51/6 51/9 51/23 52/5
outcome [1]   55/10
outset [1]   54/10
outside [3]   11/14 11/15 12/5
over [6]   13/6 19/5 19/6 20/14 25/16 34/24 38/24 41/10
own [6]   8/16 9/3 18/20 39/16 45/17 49/1

**P**

P-R-O-C-E-E-D-I-N-G-S [1]   3/1
pages [1]   55/3
paid [3]   36/22 36/25 37/1
pain [1]   52/24
paper [1]   7/7
pare [1]   29/19
parse [1]   12/11
part [17]   9/2 16/15 17/16 19/15 24/25 25/15 29/10 29/10 29/15 29/17 30/9 34/5 39/5 40/12 43/11 48/2 53/23
partially [1]   25/10
participate [1]   32/16
particular [8]   25/5 25/12 28/12 30/25 33/2 38/8 48/11 49/7
parties [9]   35/3 49/18 49/25 50/2 50/11 51/20 52/3 52/7 55/8
parts [1]   30/6
party [7]   1/23 37/18 42/23 42/24 43/3 43/25 44/1
pay [3]   40/2 40/7 40/21
people [5]   5/21 7/4 15/9 34/7 44/16
perceived [1]   48/7
perception [1]   43/19
perfectly [1]   21/8
performance [9]   25/3 25/8 25/12 27/4 28/1 29/1 29/13 29/18 30/1
performing [1]   25/24
perhaps [1]   21/24
perimeters [1]   11/21
period [1]   42/17
person [4]   14/8 18/7 19/18 44/19
personal [2]   18/20 42/24
personally [1]   44/2
perspective [1]   8/9
pertained [1]   10/11
phrase [3]   15/23 15/25 52/25
PILGRIM [2]   2/2 55/12
plaintiff [10]   1/4 1/13 35/14 35/15 35/19 36/12 43/1 43/2 49/4 49/20
plaintiff's [1]   24/1
plaintiffs [3]   3/4 36/3 38/7
plan [35]   9/6 9/9 9/14 9/22 9/25 10/4 10/15 10/18 11/3 11/16 12/6 12/23 14/22 15/2 16/2 16/9 16/12 16/14 16/18

**P**

plan... [16]   16/21 17/15
17/21 18/10 18/15 18/25
19/3 19/10 19/12 20/2
20/6 20/15 20/21 21/5
23/2 40/11
planned [2]   5/1 12/16
plans [1]   17/5
please [2]   23/23 54/16
PLLC [1]   1/14
point [6]   37/7 41/2 48/22
49/13 50/23 51/7
points [3]   29/7 41/3 48/5
portal [1]   25/17
position [5]   20/4 32/9
32/16 36/2 36/5
possible [4]   17/17 19/14
48/20 48/21
potential [1]   29/5
precisely [1]   22/9
predominantly [1]   32/13
prepared [1]   32/3
present [2]   39/14 54/12
pressure [5]   43/10 43/17
45/17 47/5 47/7
pressures [5]   39/5 43/19
43/20 45/25 47/3
presume [1]   48/22
pretend [2]   11/13 23/15
pretends [1]   4/7
pretty [2]   5/18 33/10
prevented [4]   4/15 4/15
4/23 17/21
previously [1]   55/6
principal [1]   28/13
print [1]   7/8
prior [3]   9/10 20/23
41/12
prison [3]   13/15 14/4
14/5
privacy [3]   25/16 28/6
28/23
private [1]   44/5
privilege [18]   6/19 16/25
20/6 21/12 25/11 26/20
26/21 28/2 28/24 29/11
29/16 30/10 31/14 34/18
35/9 38/14 48/7 48/13
privileged [13]   8/14 8/20
8/24 8/25 11/9 19/23 28/3
34/17 34/24 34/25 35/12
35/13 49/4
privileges [4]   10/24
34/19 34/20 35/8
probably [11]   9/9 11/23
28/16 29/12 29/18 29/19
30/5 30/17 30/24 52/24
53/21
probe [1]   12/19
problem [3]   25/6 36/14
54/5
problems [3]   24/23 24/23
25/7
proceed [1]   16/22
proceedings [3]   2/6 54/20
55/5
process [1]   37/8
procurement [2]   28/6
28/21
produced [3]   2/6 5/12

production [2]   34/12 46/7
program [4]   25/6 25/13
27/3 28/5
programs [1]   31/4
pronounce [1]   33/8
proof [1]   38/13
proper [1]   40/23
properly [1]   33/6
propose [1]   51/20
propounded [1]   38/24
protections [1]   51/21
protective [1]   47/25
protects [1]   52/2
prove [1]   11/24
provide [7]   6/7 9/13 22/5
28/14 43/24 44/1 49/24
provided [5]   23/21 35/13
42/12 43/12 55/4
providing [2]   24/11 25/13
provision [2]   29/6 51/1
psychologist [3]   39/6
41/14 47/3
psychologist's [1]   41/5
publicly [1]   13/3
purpose [1]   28/17
purposes [3]   46/17 50/7
50/13
pursuant [1]   4/13
pursuing [1]   18/20
put [5]   4/12 11/23 13/1
19/9 19/15
putting [1]   28/22

**Q**

qualification [3]   13/16
13/17 13/22
query [3]   43/2 43/3 43/4
question [25]   10/10 10/13
17/9 17/10 19/8 19/8 22/5
27/1 27/6 27/24 31/2 32/2
35/6 38/14 39/1 39/25
40/22 41/20 42/9 42/19
42/20 42/22 47/1 47/2
53/12
questions [17]   19/2 19/5
19/13 19/22 19/22 20/14
21/13 21/17 21/19 22/10
23/3 23/3 23/19 44/22
45/1 47/9 47/10
quite [3]   6/21 19/8 30/17
quote [1]   31/11

**R**

raised [1]   25/6
rather [1]   41/23
reach [1]   37/10
reached [2]   36/2 36/5
read [10]   3/14 6/20 6/21
7/9 8/4 9/3 16/4 16/7
43/7 54/2
real [1]   18/7
really [11]   3/11 4/6 10/3
23/5 26/4 31/22 39/24
41/12 46/25 50/15 51/13
realm [1]   17/1
reason [5]   12/18 12/20
18/16 18/18 41/11
reasonable [2]   35/20
47/11
reasons [2]   4/12 17/12

recall [1]   22/21
received [1]   9/8
recently [1]   39/20
recognize [1]   44/18
record [8]   8/5 19/1 22/25
40/17 42/6 42/8 54/9
54/12
recorded [1]   2/6
red [4]   25/25 26/2 26/2
32/20
reduced [1]   36/15
refer [1]   53/9
reference [1]   16/6
refusal [1]   3/22
refused [2]   25/9 25/10
refuses [1]   6/7
regarding [2]   23/13 29/4
regs [3]   17/2 17/8 28/21
regulations [3]   11/22
17/18 17/18
relate [1]   48/9
related [2]   41/4 55/7
relationship [1]   33/16
relationships [2]   8/10
8/13
relay [1]   32/16
release [2]   48/3 48/4
released [1]   25/23
releases [5]   35/20 35/25
37/6 48/6 48/19
relevance [2]   12/7 41/10
relevant [8]   5/9 25/6
39/9 41/19 41/23 42/25
44/10 45/22
reliance [4]   5/16 7/13
7/19 24/3
relied [8]   6/7 10/23 11/2
14/7 15/21 20/25 23/23
28/11
relieve [1]   49/11
rely [4]   7/18 11/3 23/16
24/12
relying [4]   11/19 15/7
24/7 24/10
remain [2]   33/13 51/15
remaining [2]   9/7 38/6
remember [3]   9/9 12/11
17/13
remembers [1]   4/22
renovation [1]   46/18
repeat [1]   27/13
report [6]   12/11 13/3
13/4 15/4 33/19 39/6
reported [1]   24/22
Reporter [2]   2/2 2/2
reports [4]   4/13 5/3 31/3
31/7
representing [2]   3/6 24/7
request [2]   23/25 24/6
requests [2]   23/12 23/22
require [1]   9/11
required [3]   8/21 9/9
16/18
requirements [2]   25/5
29/5
research [1]   10/6
resolve [6]   37/21 37/24
38/1 38/2 38/8 38/15
resolved [2]   38/10 38/11
respect [4]   15/13 30/23
48/14 49/21

respond [3]   32/4 44/22
 46/13
responded [2]   23/17 23/25
responding [1]   43/5
responds [1]   13/13
response [4]   15/15 15/15
 41/23 46/14
result [4]   19/3 41/20
 45/25 46/3
retaliation [1]   5/2
returned [2]   41/9 41/14
review [8]   26/20 35/10
 35/24 37/5 48/17 48/23
 51/5 52/14
reviewed [1]   34/15
reviewing [2]   36/18 37/8
right [55]   3/10 3/13 3/17
 4/2 4/8 4/10 5/25 9/18
 10/9 10/10 11/17 12/9
 13/23 13/24 14/19 14/20
 14/20 18/2 18/3 18/7 21/1
 21/2 24/16 26/10 27/1
 27/8 27/25 29/24 29/24
 30/2 30/7 31/22 32/8 33/3
 38/5 39/7 39/15 40/3 40/6
 40/22 40/24 40/24 41/6
 46/6 47/6 47/20 48/8 51/2
 51/2 53/7 53/10
road [1]   24/9
role [4]   25/11 25/13
 28/13 34/9
roll [3]   24/18 29/10 30/7
room [1]   5/21
ROSEMARY [1]   1/9
RPR [2]   2/2 55/12
rubric [1]   46/19
Rule [1]   49/13
Rules [1]   49/22
ruling [2]   41/12 46/19

S

said [20]   7/18 7/20 12/12
 12/20 14/3 14/21 14/21
 14/24 14/24 15/5 15/19
 16/8 17/11 20/23 35/19
 36/9 36/15 40/16 43/9
 49/15
same [10]   4/25 12/24
 26/21 29/6 37/5 38/9
 43/21 43/22 44/18 45/14
save [2]   52/19 52/20
say [29]   3/14 3/14 5/4
 6/6 6/13 11/10 13/11
 14/23 15/3 15/20 16/4
 18/4 20/9 21/25 23/2
 23/15 23/21 28/15 29/3
 31/8 33/6 35/1 35/23 38/3
 39/10 44/11 45/5 47/5
 54/6
saying [14]   9/21 10/5
 12/4 12/5 15/8 15/9 15/12
 16/1 19/24 21/4 30/3 35/4
 35/17 35/18
says [18]   8/15 9/2 9/3
 9/17 13/24 14/6 14/25
 17/15 18/12 18/12 23/1
 31/2 32/20 40/13 40/13
 40/15 46/3 47/3

scale [1]   18/21
schooling [1]   17/25
SCM [1]   10/20
scope [1]   49/18
search [6]   39/2 39/3 39/8
 39/11 39/23 41/16
searches [1]   41/7
second [3]   24/16 41/11
 48/9
see [12]   4/2 5/14 15/13
 15/16 16/6 21/1 27/9
 27/11 30/16 34/2 34/10
 40/1
seeing [1]   52/12
seek [1]   28/9
seeks [1]   40/2
seems [1]   44/9
seen [2]   28/7 31/25
selective [1]   3/19
selectively [1]   25/22
send [3]   6/25 20/14 52/21
sense [3]   21/4 33/20
 47/16
sent [2]   19/2 19/5
sentence [2]   17/14 17/15
separate [3]   40/1 44/15
 44/16
separated [3]   18/17 20/17
 39/24
separating [1]   24/24
separation [6]   10/11
 10/11 10/12 17/24 17/25
 18/9
series [1]   46/4
serious [1]   25/7
servicer [1]   31/4
services [10]   5/5 12/12
 12/13 12/20 13/5 15/5
 20/22 22/17 22/21 29/4
set [5]   17/2 34/24 35/8
 35/15 37/8
seven [1]   35/23
several [2]   23/13 29/16
she [50]   4/22 4/25 9/6
 10/15 12/16 14/4 14/24
 15/6 18/16 18/19 18/20
 20/17 20/18 20/18 25/6
 25/15 29/13 31/3 31/13
 39/6 39/16 39/18 39/19
 39/24 40/11 40/13 40/13
 40/15 41/8 41/9 41/14
 41/19 41/20 41/23 41/24
 41/25 42/1 42/2 42/3
 42/17 45/5 45/24 46/1
 46/1 46/4 46/5 46/13
 46/24 46/24 47/7
she's [4]   39/19 40/4
 40/10 43/5
sheer [1]   3/10
shield [2]   11/10 12/6
shorthand [1]   2/6
should [9]   6/13 6/14 18/5
 21/5 41/17 51/23 52/1
 52/21 54/12
show [1]   20/25 24/21
showing [1]   25/6
side [2]   38/20 44/15
sides [1]   49/2
similar [1]   23/19
simple [4]   19/25 32/2
 32/3 45/10

since [8]   15 16/15 17/9
 17/10 19/13 42/14 48/25
 51/3 51/23
sir [4]   33/11 38/4 40/19
 40/25
sit [1]   6/13
sits [1]   30/21
situation [3]   11/12 44/9
 46/4
size [2]   6/18 37/9
sleep [1]   44/12
small [1]   41/2
smaller [1]   30/19
smallest [1]   29/12
so [61]
so-to-speak [1]   45/18
some [10]   6/11 12/21
 25/23 28/15 32/14 36/10
 41/13 49/11 51/21 52/19
somebody [1]   50/15
somehow [1]   28/17
something [14]   4/6 7/20
 12/3 15/16 16/10 24/2
 33/21 38/14 41/18 50/14
 50/16 51/6 51/20 52/1
soon [1]   32/7
sorry [4]   5/11 21/21
 38/11 43/7
sort [4]   4/25 12/14 30/13
 45/7
speak [3]   45/18 49/12
 52/18
speaking [3]   11/6 11/14
 46/14
specific [4]   5/16 6/1
 19/2 24/3
specifically [8]   5/18
 12/12 17/5 17/11 19/10
 20/10 42/14 42/23
spend [1]   46/25
spends [2]   46/24 47/14
stage [1]   37/13
stages [1]   18/10
stand [4]   22/22 33/18
 37/11 43/23
standards [1]   12/1
standing [2]   6/15 7/5
start [6]   3/15 3/15 3/17
 3/19 9/6 39/18
started [4]   29/9 29/13
 39/16 39/19
starting [1]   39/17
state [1]   11/1
stated [3]   8/15 11/21
 55/6
statement [5]   9/21 10/13
 10/22 20/4 49/1
statements [3]   12/15 13/3
 13/8
STATES [5]   1/1 1/10 1/23
 2/3 55/4
status [2]   1/9 33/19
stenographic [1]   55/4
STEWART [2]   1/16 3/5
still [5]   33/17 34/12
 36/15 36/24 38/24
stock [1]   45/21
stop [3]   10/7 11/10 21/20
streamline [1]   49/19
Street [3]   1/14 1/21 1/24
stress [8]   41/8 43/11

**S**   Case 1:10-cv-00943-RMC

stress... [6]  43/16 44/23
 47/4 47/11 47/12 47/16
stressed [1]  47/7
stresses [3]  39/3 42/11
 47/15
stressful [1]  46/4
stressors [2]  42/15 44/8
strikes [1]  12/1
stuff [3]  6/12 23/23 44/3
subject [7]  19/11 27/4
 28/24 29/8 30/16 49/7
 52/15
subjective [1]  47/12
submit [3]  47/24 52/3
 52/4
submitted [2]  25/14 38/23
subpoena [1]  38/7
substantial [2]  35/25
 37/6
such [4]  8/14 9/8 12/22
 31/13
suffered [1]  46/4
sufficient [1]  31/14
suggest [3]  54/1 54/3
 54/4
suggestion [1]  51/12
Suite [1]  1/21
summarizes [1]  42/13
summary [2]  42/13 43/12
supplement [2]  47/25
 51/20
supplied [2]  22/10 22/23
supply [3]  22/10 22/15
 22/18
support [7]  11/19 21/15
 22/6 23/16 23/23 46/8
 46/9
supposed [2]  8/18 13/5
supposedly [2]  5/7 9/13
sure [7]  5/18 23/7 34/22
 49/16 51/25 52/6 52/23
surgery [1]  6/10
surprised [1]  35/7
sword [2]  11/10 12/6

**T**

tab [14]  24/17 24/25 26/6
 29/10 29/14 29/24 30/10
 32/4 32/15 32/22 32/23
 32/24 52/16 52/17
tabbed [1]  26/2
tactics [1]  31/17
take [11]  15/25 18/21
 19/17 30/24 31/8 35/23
 39/17 40/15 51/19 53/12
 53/24
taken [4]  6/11 42/8 55/5
 55/9
talk [4]  9/1 17/5 33/15
 52/13
talking [3]  29/9 29/13
 39/13
tarp [1]  17/1
technical [1]  51/4
tell [7]  4/5 5/13 7/14
 18/2 34/8 52/20 53/1
ten [1]  35/23
tension [1]  49/11
tenth [13]  5/6 5/15 6/1
 7/17 8/7 10/14 15/13
 15/24 18/4 17/11 22/6
 23/14 23/24

term [4]  4/5 10/11 13/25
 17/25
terminated [2]  20/17
 20/18
terminating [1]  24/24
termination [7]  3/22 4/3
 4/18 4/23 4/25 9/24 42/2
terminology [1]  18/1
terms [5]  16/13 24/3
 41/15 42/15 45/22
testimony [1]  24/22
text [1]  53/8
than [14]  3/11 14/19
 17/17 21/18 21/19 30/5
 38/20 39/11 41/23 41/24
 41/25 45/9 47/5 53/25
thank [10]  7/6 40/19
 45/11 46/2 47/21 49/24
 51/17 52/10 52/11 54/17
Thanks [1]  30/14
that [323]
that's [56]
their [19]  5/6 12/7 12/15
 13/3 19/13 23/12 23/22
 25/8 28/9 28/9 29/10 30/9
 30/10 30/12 47/14 48/25
 49/1 49/20 49/21
them [26]  4/3 4/15 4/15
 11/9 19/2 19/14 21/1 21/1
 21/13 21/14 22/7 23/20
 25/23 26/7 32/25 35/2
 38/24 43/7 46/1 49/1
 50/10 52/4 52/25 53/2
 53/25 54/7
themselves [3]  26/5 31/20
 38/3
then [29]  5/13 8/15 8/18
 8/18 15/19 15/22 17/17
 18/20 20/21 20/25 24/8
 24/12 29/13 30/7 30/16
 36/13 37/24 38/1 39/22
 40/7 42/3 42/23 43/23
 45/7 45/8 46/1 46/10
 48/18 50/15
there [45]  3/11 4/2 4/14
 4/17 5/4 7/20 11/22 11/24
 12/12 12/13 12/19 12/21
 12/23 12/24 13/4 15/8
 22/19 23/5 24/23 28/5
 28/22 28/23 29/22 32/13
 34/16 37/9 38/6 38/19
 40/6 40/23 41/10 42/20
 44/3 44/6 45/24 46/9 47/3
 47/22 48/5 48/11 49/3
 50/5 51/15 53/6 53/24
there's [14]  4/4 9/10
 10/19 13/2 18/7 22/23
 22/25 30/20 31/10 35/22
 37/20 37/21 41/10 52/20
thereafter [1]  50/23
therefore [1]  9/23
these [18]  18/21 19/5
 20/22 25/19 25/19 26/25
 27/16 29/7 31/17 33/16
 41/13 44/15 46/7 48/6
 48/18 49/3 51/3 52/23
they [89]
they're [17]  4/25 11/8

11/22 15/7 15/7 15/9 17/2
 19/19 20/9 23/4 24/7
 24/10 24/11 37/4 37/9
 44/18 47/8
they've [6]  5/5 12/13
 12/20 13/2 13/8 20/23
thing [7]  6/21 7/3 33/24
 45/7 46/6 48/19 53/17
things [12]  10/9 11/11
 18/12 18/21 28/10 38/2
 39/2 40/7 42/10 44/12
 47/15 48/16
think [51]  3/21 5/8 5/24
 7/18 9/10 9/16 9/19 11/23
 12/10 13/2 13/8 16/22
 16/23 17/3 17/19 18/10
 18/11 21/3 22/19 26/3
 28/2 29/11 30/18 31/10
 31/21 31/23 32/4 34/14
 34/23 35/12 35/18 35/24
 37/21 37/23 38/5 38/17
 39/10 39/23 40/9 41/9
 41/11 41/17 43/21 45/4
 45/21 46/7 46/22 47/2
 47/23 52/2 54/18
thinking [2]  51/24 53/18
thinks [1]  31/12
third [6]  29/20 30/11
 43/25 43/25 50/2 50/11
this [71]
those [30]  4/19 11/11
 11/19 15/17 20/15 23/3
 25/10 25/25 26/9 28/10
 28/10 35/10 35/22 36/13
 36/18 37/5 38/17 38/20
 43/18 43/19 45/5 47/5
 47/9 47/16 48/10 48/14
 48/16 48/17 53/5 53/11
though [1]  42/9
thought [8]  7/20 9/16
 14/8 14/12 19/11 19/15
 36/11 52/8
thoughts [1]  28/9
thousand [3]  27/23 46/18
 47/12
thread [1]  30/6
three [2]  29/7 34/6
through [8]  6/24 21/8
 21/11 24/21 24/22 26/6
 35/22 53/25
throwing [2]  11/25 51/9
tied [2]  12/24 41/12
time [13]  6/25 30/16 37/5
 37/10 38/9 41/8 42/17
 53/13 53/17 53/18 53/21
 53/22 55/5
times [2]  29/16 36/12
tiny [1]  6/20
today [5]  18/5 21/1 32/16
 39/22 51/14
today's [1]  44/17
told [8]  15/4 15/5 15/10
 15/12 16/2 26/13 35/3
 39/20
tolerate [1]  8/22
too [6]  6/20 8/3 20/18
 21/22 36/16
took [1]  18/4
topic [2]  30/12 45/14
tortiously [1]  8/8
totally [2]  38/2 49/1

Case 1:10-cv-00943-RMC

**T**

trade [2]   18/20 49/5
tranche [1]   23/24
transcript [3]   1/9 2/6
  55/3
transcription [1]   2/6
transfer [2]   5/1 17/21
translated [1]   14/13
transpired [1]   42/14
Treasury [55]   3/7 3/23
  4/16 4/18 4/21 4/22 4/24
  5/1 9/5 9/7 9/16 9/17
  10/16 12/16 13/6 14/25
  15/6 17/22 18/13 19/3
  19/13 20/14 20/14 20/21
  21/17 21/19 22/11 22/13
  23/1 23/2 25/8 27/2 27/3
  28/25 31/3 31/4 32/15
  32/16 33/3 33/11 35/4
  35/22 36/14 36/15 36/17
  37/21 37/24 38/7 38/11
  48/6 48/12 48/17 48/23
  49/3 51/21
Treasury's [4]   25/1 27/4
  29/2 29/25
treats [1]   29/7
trial [1]   50/15
trouble [1]   6/9
true [4]   5/23 31/24 31/24
  55/2
trust [1]   5/14
try [2]   23/9 52/19
trying [7]   10/8 11/6 11/8
  33/19 43/4 49/19 50/23
Tuesday [1]   1/5
turn [1]   49/12
turned [1]   14/2
two [12]   4/17 4/19 34/17
  34/21 38/20 40/6 41/2
  44/15 48/5 48/16 53/6
  53/24
type [1]   50/7
types [2]   4/14 28/10
typical [1]   11/12

**U**

U.S [1]   3/7
ultimately [2]   6/11 53/12
under [14]   9/2 23/18 25/3
  25/5 25/5 25/12 25/24
  27/4 28/1 28/18 29/12
  29/13 37/5 53/1
underlying [1]   10/24
understand [10]   9/13 10/1
  14/9 19/7 20/3 41/2 42/5
  45/1 47/6 51/11
understanding [3]   8/23
  32/24 36/17
unfair [1]   44/15
unfortunately [2]   33/25
  34/5
UNITED [5]   1/1 1/10 1/23
  2/3 55/4
unquote [1]   31/11
unreasonable [1]   36/12
unwilling [1]   18/19
unwillingness [2]   9/4
  18/13
unwise [1]   42/4
up [17]   4/6 6/16 7/15

10/16 11/23 11/25 12/24
13/22 18/25 18/25 20/8
20/21 42/18 44/11 45/7
49/1 52/12
upon [1]   23/16
us [19]   5/7 5/13 5/14
  15/4 15/5 15/10 15/12
  16/2 22/23 23/20 24/21
  25/9 35/15 38/25 39/6
  41/13 42/17 50/8 53/24
use [5]   5/13 10/11 42/2
  50/15 52/24
used [4]   5/5 41/23 42/3
  44/16
using [1]   17/25

**V**

various [4]   4/14 23/18
  28/5 53/1
version [1]   7/1
versus [1]   3/3
very [5]   8/3 26/19 35/7
  42/24 46/11
via [1]   30/22
virtual [3]   27/19 29/19
  53/9
vis [4]   36/3 36/3 36/6
  36/6
vis-a-vis [2]   36/3 36/6
volume [1]   30/20
vouch [1]   8/1

**W**

Wachtel [1]   1/14
wait [9]   4/17 11/10 13/11
  21/20 21/20 40/6 40/6
  50/20 52/13
waived [1]   48/13
waiver [3]   13/2 19/4
  49/25
waiving [2]   48/7 49/6
walking [3]   6/9 14/4
  51/13
want [29]   3/12 4/4 6/22
  11/18 12/7 14/19 19/22
  20/9 22/9 23/5 33/22
  34/11 34/18 34/19 37/24
  42/10 43/15 43/18 44/1
  44/3 44/5 44/14 46/24
  48/7 48/13 51/4 51/20
  51/24 52/13
wanted [1]   13/19
wants [1]   3/15
Warren [1]   1/20
was [85]
Washington [6]   1/5 1/15
  1/18 1/22 1/24 2/4
wasn't [5]   12/23 13/14
  23/24 28/18 52/8
way [14]   4/13 7/14 12/11
  12/16 14/5 15/21 15/24
  15/25 25/16 26/24 31/6
  31/18 52/2 52/20
we [132]
we'll [5]   10/11 32/5
  35/19 47/24 49/5
we're [27]   7/14 10/7 10/8
  10/25 11/18 12/4 17/12
  17/25 19/24 23/4 34/14
  34/22 35/5 35/5 35/5 37/7
  37/7 37/21 38/8 41/4

41/15 42/18 43/4 45/9
49/8 50/18 52/6
we've [11]   21/10 21/13
  21/14 21/14 22/7 23/18
  26/15 28/2 28/11 38/16
  39/20
week [1]   54/18
weeks [1]   34/6
welcome [1]   54/14
well [40]   5/13 7/15 9/2
  10/7 13/10 13/25 14/6
  15/19 17/3 17/9 17/23
  20/18 20/24 21/7 21/10
  21/13 21/18 21/24 22/14
  24/10 30/15 31/2 32/7
  33/13 33/25 34/22 35/5
  36/1 37/3 42/19 44/11
  45/5 45/22 47/5 49/3
  49/15 49/21 51/6 51/13
  53/15
went [6]   7/25 13/4 15/6
  35/18 35/19 41/20
were [29]   4/14 5/4 7/20
  10/22 16/20 19/2 20/15
  22/19 24/23 25/7 29/19
  30/6 30/15 31/17 34/7
  34/23 35/1 35/10 35/12
  35/12 36/13 37/8 39/3
  42/12 45/24 47/3 47/5
  54/3 54/4
weren't [2]   36/19 44/17
what [82]
what's [7]   3/20 7/7 7/9
  7/13 24/16 33/16 34/17
whatever [4]   17/15 30/24
  44/17 52/14
when [14]   14/23 26/20
  28/4 28/20 36/17 37/12
  38/2 39/18 39/24 40/23
  40/23 41/19 45/6 48/17
whenever [1]   41/25
where [13]   3/15 9/17 12/6
  25/15 28/8 33/3 33/11
  33/18 33/20 34/8 37/10
  37/18 45/2
whether [16]   9/8 9/24
  10/3 10/9 10/13 17/5 27/1
  29/7 31/13 31/18 34/20
  38/14 40/23 42/22 50/6
  51/7
which [32]   4/4 4/7 4/19
  7/8 10/1 12/21 13/5 15/12
  17/15 23/16 24/23 26/19
  28/6 28/11 29/10 29/10
  29/11 35/11 35/12 37/12
  38/15 38/25 39/5 39/6
  39/17 41/13 41/18 41/18
  42/12 42/25 43/25 55/8
while [3]   9/7 25/24 42/13
who [4]   3/15 14/4 25/19
  36/21
whole [3]   3/18 3/18 37/22
whose [1]   53/22
why [32]   3/12 8/4 12/16
  12/25 13/6 18/16 31/12
  41/11 41/15 46/23 47/7
  50/21
Wilhelm [4]   25/19 26/13
  28/12 31/19
will [15]   6/23 6/25 16/2
  27/6 27/11 33/14 35/23

will... [8]   37/13 40/15
 45/7 48/9 48/23 50/25
 51/18 53/12
WILSON [3]   1/19 3/6 11/13
Wisconsin [1]   1/17
wise [1]   42/2
wish [3]   6/24 52/3 52/4
withheld [1]   26/6
within [4]   28/12 31/3
 38/8 46/19
without [3]   19/19 26/4
 50/14
Woe [1]   20/8
woman [3]   14/3 14/11
 14/12
won't [2]   5/7 54/8
wonder [1]   23/8
word [1]   51/19
work [13]   12/13 13/14
 14/3 18/19 25/15 29/1
 34/1 34/5 39/5 43/11
 43/16 44/23 52/19
working [8]   7/22 8/16 9/7
 14/3 29/15 29/22 30/18
 39/19
world [1]   44/18
worrying [1]   44/12
worthy [1]   47/17
would [45]   3/12 4/5 6/13
 9/10 12/13 13/18 15/5
 15/21 16/9 16/17 16/25
 17/12 17/19 18/25 19/17
 22/25 23/2 23/25 28/15
 28/19 29/18 29/21 29/24
 30/16 31/7 31/7 31/13
 35/7 35/8 41/2 43/9 44/16
 46/8 47/13 49/13 50/16
 50/21 51/4 52/8 52/25
 53/5 53/6 53/14 54/1
 54/10
wouldn't [1]   14/25
write [2]   20/10 20/10
wrote [1]   16/11

Y

yeah [2]   12/1 24/10
year [1]   37/9
years [1]   23/9
yellow [1]   32/20
yes [32]   4/1 5/24 6/2
 7/12 8/3 8/25 16/5 17/25
 18/24 22/12 22/16 23/11
 25/6 26/15 27/14 27/22
 30/13 30/18 32/11 32/13
 33/5 33/7 34/13 38/4
 40/25 43/17 45/3 45/15
 46/21 48/4 48/21 54/19
yet [8]   23/5 30/17 32/19
 33/17 35/6 36/2 37/1 53/2
you [171]
you're [17]   6/9 6/9 9/21
 14/20 14/20 18/2 18/4
 28/4 36/23 37/23 42/19
 46/11 46/12 51/23 51/24
 53/19 54/14
you've [2]   7/6 11/9
your [103]
yourself [3]   43/15 49/16
 52/5