# BERNABEI & WACHTEL, PLLC

ATTORNEYS AT LAW

1775 T STREET, N.W.

WASHINGTON, D.C. 20009

202.745.1942

FAX: 202.745.2627

WWW.BERNABEIPLLC.COM

LYNNE BERNABEI
DAVID WACHTEL
ALAN R. KABAT

PETER M. WHELAN
LAUREN R. S. MENDONSA
MATTHEW E. RADLER ▲
KAREN TANENBAUM

▲ ADMITTED IN VA ONLY

By Electronic Mail
January 30, 2015

Honorable Rosemary M. Collyer
U.S. District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001

   Re:   Herron v. Fannie Mae, et al., No. 1:10-cv-00943-RMC

Dear Judge Collyer:

   I write to request a conference call to address a pending discovery dispute concerning (1) Fannie Mae's refusal to respond to Ms. Herron's supplemental document requests; and (2) the scope and timing of the Rule 30(b)(6) deposition of Fannie Mae, noticed three weeks ago.

   Counsel for Fannie Mae and we have conferred, both in writing and by telephone, pursuant to Local Civil Rule 7(m), and while we were able to agree on several areas, we were unable to reach agreement on several other topics. Counsel for the parties are available for a conference call on Monday, February 2, 2015, at or after 11 a.m.

   Ms. Herron noticed a Rule 30(b)(6) deposition of Fannie Mae (attached hereto as Exhibit 1), and served supplemental document requests on December 16, 2014, to which defendants refused to produce any documents in response. See Def. Objections (Jan. 15, 2015) (attached hereto as Exhibit 2). Defendants also objected to the majority of the Rule 30(b)(6) deposition topics. The parties' positions are set forth in the letters dated Jan. 23, 2015 (defendants) and Jan. 26, 2015 (plaintiff) (attached hereto as Exhibits 3 and 4), and are summarized below.

   1.   **The Process at Fannie Mae for Calculating Bonuses.**

   Ms. Herron is seeking to obtain information from defendant Fannie Mae about the bonuses provided to senior executives, such as defendant Eric Schuppenhauer and others at the

Senior Vice President to CEO level as well as bonuses provided to persons at the VP and Director levels and below. Specifically, she is seeking information about the process for awarding bonuses for 2009, the year that she worked at Fannie Mae, and the basis for those bonuses. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ms. Herron's claim is that Fannie Mae officials terminated her because she complained to Treasury that the trial modifications, based on stated income, were a gross waste of public funds, and that this is the reason that Fannie Mae and the other defendants stopped her from going to Treasury.

It has been obvious throughout this case that Ms. Herron has argued that bonuses and long term incentives provided to Fannie Mae executives and employees, including defendants Schuppenhauer, Jardini, and Brown, were the reason that they worked together to prohibit her from going to Treasury and later stopped her from working elsewhere at Fannie Mae.

Ms. Herron sought and obtained an order to compel defendants to produce information about the bonuses provided to defendants Schuppenhauer and Brown, and in ESI discovery received some, incomplete information a▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ms. Herron specifically testified in her deposition on two days of deposition (on November 10 and 11, 2014) about ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Therefore, Ms. Herron is seeking both documents and testimony from a Fannie Mae representative about the following:

1) The process by which bonuses were awarded to Fannie Mae executives and employees, including
    (a) the management presentation to the Compensation Committee, with the scorecard of how Fannie Mae performed on the corporate goals related to the MHA Program (including HAMP trial modifications used in the workouts and housing goals);

       (b) the recommendation of the Compensation Committee of the Board and the full Board on bonuses;

       (c) the actions taken by FHFA and Treasury with regard to the bonuses; and

       (d) the size of the bonus pool or pools.

2) The criteria used by management to support a scorecard showing how the corporate goals regarding the MHA Program (including HAMP trial modifications used in the workouts and housing goals) were met, including specifically the use of the number of trial modifications, and the number of servicer enrollments before the end of the year, to meet corporate goals and boost bonuses.

Both Mr. Williams (Fannie Mae's CEO in 2009) and Rich McGhee, a senior vice president who worked on HAMP at the time, ███████████████████████████████
██████████████████████████████████
███████.

These are the information and documents requested in Topics 7, 8 and 9 listed in the 30(b)(6) Notice of Deposition, as narrowed during the meet and confer between the parties yesterday, January 29, 2014. These are also the documents sought in Plaintiff's Supplemental Document Request Nos. 1, 2, and 3.

### 2. Contracting Policies and Procedures at Fannie Mae from 2009 through 2011.

Ms. Herron contends that her contract would have continued through at least 2011, but for Fannie Mae's termination based on her whistleblowing. Defendants contend that the end of April 2010 was a hard end date for her contract, no matter how much work remained for her to do on the MHA Program or other Fannie Mae projects. T███████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

Therefore, Fannie Mae's usual contracting policies, including its implementation during the period of 2009 through 2011, when Ms. Herron could have reasonably expected to remain at

Honorable Rosemary M. Collyer
January 30, 2015
Page 4 of 6

Fannie Mae as a contractor, is directly relevant to her damages claim, and Fannie Mae's objection to her damages claim. Hence, Ms. Herron, in her Rule 30(b)(6) deposition notice, identified deposition topics relating to the policies and practices governing the review and renewal of contracts for individuals. *See* Exhibit 1, Topic 1.

In response, defendants restricted this deposition topic to the time period from June 2009 to April 2010, and limited its scope to contractors on the MHA program. *See* Exhibit 3, at 2. These restrictions are improper, particularly given that Ms. Herron sought work as a contractor elsewhere at Fannie Mae, and t█████████████████████████████████████████████████████████████████████████████████████. The scope restriction is also improper since Fannie Mae had company-wide policies and procedures governing the use of contractors, including the periodic renewals, the on-boarding and off-boarding of contractors, and the placement of contractors on the do not hire list.

### 3. Policies and Procedures Governing Contractors and Employees at Fannie Mae Working on the MHA/HAMP Program.

These policies and procedures are relevant because defendants contended, both in this lawsuit and to Treasury, that ethical policies prevented, or would have prevented, Ms. Herron from going to work at Treasury as a Fannie Mae contractor. However, because no witness has testified as to what those policies are, or how they relate to Ms. Herron's proposed work for Treasury as a Fannie Mae contractor, plaintiff seeks testimony from a Fannie Mae corporate representative as to what policies and procedures related to Ms. Herron, either as a contractor or as a potential employee, during 2009 and 2010.

Fannie Mae has responded that Ms. Jardini has testified █████████████████████ F█████████████████████████████████████ Plaintiff offered Fannie Mae the opportunity to designate portions of Ms. Jardini's deposition testimony as Fannie Mae's testimony, but it has refused to do so, on the basis that it is up to plaintiff to propose what portions should be designated. In fact, Fannie Mae has the responsibility to designate any portion of the deposition that it wishes to adopt as its corporate position. Plaintiff cannot be forced to guess what portions might be relevant and then seek approval from defendant.

### 4. Fannie Mae's 2009 SEC Form 10K and reporting of trial modifications.

Ms. Herron seeks to depose a Fannie Mae representative concerning Fannie Mae's 2009 SEC Form 10K on the basis that its reporting of different numbers of workouts for bonuses purposes and Credit Risk Management demonstrates its intention to implement the

MHA/HAMP program in a way to drive the higher bonuses to Fannie Mae executives and officers. In its 2009 10K, Fannie Mae reported one number for "workouts" that is the accurate report to shareholders and investors of 200,339. (This portion of the 10K is SOX controlled.) In contrast, in the portion of the 10K that reports on the number of workouts used to justify executive bonuses, the number 600,000 is used and it includes trial modifications. In other words, Fannie Mae used from 300,000 to 400,000 HAMP trial modifications only as a basis for executive compensation, and not to accurately describe the financial condition of the company.

If, as we understand from the deposition testimony of Terry Edwards (Executive Vice President for Credit and Portfolio Management during the relevant time period, and current Chief Operating Officer), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that would tend to prove that the reason Fannie Mae insisted that trial modifications be increased to the maximum level possible was to boost executive bonuses, even though it was clear that such actions impaired the success of the program and would hurt homeowners. This, in turn, tends to demonstrate that Fannie Mae's refusal to let Ms. Herron work on site at Treasury, and its termination (off-boarding) of her was related to their unhappiness that she was telling Treasury about the gross waste of public funds and gross mismanagement because of Fannie Mae's push to increase stated income trial modifications.

Ms. Herron suggested that Fannie Mae designate the testimony of Terry Edwards (which is not yet transcribed) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as Fannie Mae's testimony, but Fannie Mae's counsel refused to do so.

### 5. Scheduling of the Rule 30(b)(6) deposition.

Finally, while defendants proposed scheduling the Rule 30(b)(6) deposition on February 26, 2015 (the penultimate day of the discovery period), we have requested that it be scheduled on February 9, 2015 (a day on which all counsel are available), because the testimony to be elicited at that deposition should help narrow the scope of what would need to be covered at the ensuing depositions of the expert witnesses. The original scheduling order provided for all fact depositions to be done before most of the expert depositions, which is the usual practice. However, the new scheduling order does not make that distinction, but plaintiff assumed that the usual custom would be followed.

Here, testimony about Fannie Mae's contracting processes will be necessary before deposition of the expert witnesses regarding economic damages. Similarly, testimony about the ethics policies that Fannie Mae believes were relevant to Ms. Herron as a contractor or to Fannie Mae employees will be necessary to depose Kathleen Clark, Fannie Mae's expert on government

Honorable Rosemary M. Collyer
January 30, 2015
Page 6 of 6

ethics issues. Since Ms. Herron noticed the Rule 30(b)(6) deposition three weeks ago, it should be ordered to go forward on February 9, 2015.

Therefore, we respectfully request a telephonic status conference to address these issues. All counsel are available on Monday, February 2, 2015, at or after 11 a.m. for a call.

                              Sincerely,

                              */s/ Lynne Bernabei*

                              Lynne Bernabei

Enc.

cc:    Ms. Caroline Herron
       Ira Kasdan, Esquire
       Damien Stewart, Esquire
       Joseph Wilson, Esquire